Michael S. Davis
Anthony I. Giacobbe, Jr.
Greg M. Bernhard
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York  10022
(212) 223-0400

*Attorneys for Petitioners*
*American Home Assurance Company and*
*National Union Fire Insurance Company of Pittsburgh, Pa.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., <br><br> Petitioners, <br><br> - and - <br><br> ALTMAN SPECIALTY PLANTS, INC., <br><br> Respondent. | Case No.: <br><br> **DECLARATION IN SUPPORT OF ORDER TO SHOW CAUSE** |

STATE OF NEW YORK,
COUNTY OF NEW YORK.

ANTHONY I. GIACOBBE, JR., pursuant to 28 U.S.C. § 1746, declares:

1.     I am an attorney admitted to practice before this Court and associated with Zeichner Ellman & Krause LLP, attorneys for Petitioner National Union Fire Insurance Company of Pittsburgh, Pa. and American Home Assurance Company (collectively, the "AIG Companies"), on behalf of themselves and each of the related

insurers that provided coverage to Respondent.  I make this Declaration in support of the AIG Companies' request for an Order to Show Cause to compel Respondent to arbitrate the disputes asserted in the Complaint.[1]

2.    Submitted herewith is the AIG Companies' petition (the "Petition") to compel arbitration of the disputes alleged in the Complaint, together with a Memorandum of Law in support thereof.

3.    Annexed to the Petition as Exhibit A are the Payment Agreement between National Union and Respondent effective as of January 1, 2003, a 2004 Addendum to the Payment Agreement, and certain addenda and schedules to the Payment Agreement.

4.    The 2003 Payment Agreement further provides that the arbitrators "will have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability."  See, Exhibit A at A 0009.

5.    Annexed to the Petition as Exhibit B is the Complaint dated February 13, 2008, served by Respondent, together with the Exhibits A to D annexed thereto.

## REASON FOR MOVING BY ORDER TO SHOW CAUSE

6.    The AIG Companies move by order to show cause for two reasons.

---

[1]    Capitalized terms herein have the defined same meaning as set forth in the Petition.

7.    First, Section 4 of the Federal Arbitration Act (9 U.S.C. § 4) provides that a motion to compel arbitration be heard on five days' notice.

8.    Second, the AIG Companies are due to respond to the Complaint Respondent commenced in California on or about August 28, 2008, and the AIG Companies seek to have this motion to compel arbitration heard in this Court before any substantive proceedings take place in the California action.

## NO PRIOR APPLICATION

9.    No prior application has been made for the relief requested herein.

10.    I declare under penalties of perjury that the foregoing is true and correct.

Dated:    August 25, 2008

By: _____
ANTHONY I. GIACOBBE, JR.

JUDGE McMAHON



08 CV 7504

Michael S. Davis
Anthony I. Giacobbe, Jr.
Greg M. Bernhard
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York  10022
(212) 223-0400
*Attorneys for Petitioners*
*American Home Assurance Company and*
*National Union Fire Insurance Company of Pittsburgh, Pa.*

RECEIVED

AUG 2 5 2008

U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN HOME ASSURANCE COMPANY and
NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA.,

                                        Petitioners,

                    - and -

ALTMAN SPECIALTY PLANTS, INC.,

                                        Respondent.

Case No.:

**PETITION TO
COMPEL ARBITRATION**

---

American Home Assurance Company ("American Home") and National

Union Fire Insurance Company of Pittsburgh Pa. ("National Union") (collectively, the

"AIG Companies"), on behalf of themselves and each of the related insurers that

provided coverage to Respondent, by their attorneys, Zeichner Ellman & Krause LLP, as

and for its petition to compel Altman Specialty Plants, Inc. ("Respondent") to arbitrate,

aver upon information and belief, as follows:

1.      This Court has subject matter jurisdiction over this matter due to the diversity of citizenship of the parties, under 28 U.S.C. § 1332(a)(1). It is a dispute between citizens of different states and the amount in controversy is more than $75,000.

2.      Petitioner American Home is an insurance company licensed under the laws of New York, with its principal place of business in the Southern District of New York.

3.      Petitioner National Union is an insurance company licensed under the laws of Pennsylvania with its principal place of business in the Southern District of New York.

4.      Upon information and belief, Respondent is a corporation organized and existing under the laws of California with its principal place of business in the State of California.

5.      Respondent is subject to the personal jurisdiction of this Court.

6.      Respondent expressly agreed that "any action or proceeding concerning arbitrability, including motions to compel or to stay arbitration, may be brought only in a court of competent jurisdiction in the City, County, and State of New York." See, Exhibit A at A 0027.

7.      Respondent filed a complaint, dated February 13, 2008 (the "Complaint"), in the Superior Court of California, County of Orange. The response of the

AIG Companies to the Complaint is due on or about August 28, 2008. A copy of the Complaint with exhibits is attached as Exhibit B.

8.     The parties entered into a Payment Agreement between National Union and Respondent effective as of January 1, 2003 (the "2003 Payment Agreement"), a 2004 addendum to the Payment Agreement (the "2004 Addendum"), and certain addenda and schedules to the Payment Agreement (together with the policy, these documents establish the "Insurance Program" and these documents are referred to as the "Insurance Program Agreements") which, by their terms, govern Respondent's payment obligations and collateral requirements under the Insurance Program. Fully executed copies of the 2003 Payment Agreement and the 2004 Addendum are attached at Exhibit A.

9.     The 2003 Payment Agreement contains a broad arbitration clause (the "Arbitration Clause") by which the parties agreed that all unresolved disputes, including the dispute underlying Respondent's Complaint, "must be submitted to arbitration." See, Exhibit A at A 0008. The Arbitration Clause, found under a bolded and capitalized heading which reads **"HOW WILL DISAGREEMENTS BE RESOLVED?,"** is extremely expansive. It encompasses the instant dispute because it governs disputes related specifically to payment obligations, as well as "[a]ny other unresolved dispute arising out of this Agreement . . ." Id. Even though Respondent filed its Complaint in the Superior Court of California, County of Orange, the AIG Companies bring this motion to this Court pursuant to the terms of the 2004 Addendum which states "any action or proceeding concerning arbitrability, including motions to compel or to stay

3

arbitration, may be brought only in a court . . . of competent jurisdiction in the City, County, and State of New York." See, Exhibit A at A 0027.

        10.    The Arbitration Clause provides:

## HOW WILL DISAGREEMENTS BE RESOLVED?

### What if we disagree about payment due?

If *You* disagree with us about any amount of *Your Payment Obligation* that we have asked *You* to pay, within the time allowed for payment *You* must:

- give us written particulars about the items with which *You* disagree; and

- pay those items with which *You* do not disagree.

We will review the disputed items promptly and provide *You* with further explanations, details, or corrections. *You* must pay us the correct amounts for the disputed items within 10 days of agreement between *You* and us about their correct amounts. **Any disputed items not resolved within 60 days after our response to *Your* written particulars must immediately be submitted to arbitration** as set forth below. With our written consent, which shall not be unreasonably withheld, *You* may have reasonable additional time to evaluate our response to *Your* written particulars.

So long as *You* are not otherwise in default under this Agreement, we will not exercise our rights set forth under "What May We Do in Case of Default?", pending the outcome of the arbitration on the disputed amount of *Your Payment Obligation*.

### What about disputes other than disputes about payment due?

**Any other unresolved dispute arising out of this Agreement must be submitted to arbitration.** *You* must

notify us in writing as soon as *You* have submitted a dispute to arbitration. We must notify *You* in writing as soon as we have submitted a dispute to arbitration.

**Arbitration Procedures**

...

**Qualifications of arbitrators:** Unless *You* and we agree otherwise, all arbitrators must be executive officers or former executive officers of property or casualty insurance or reinsurance companies or insurance brokerage companies, or risk management officials in an industry similar to *Yours*, domiciled in the United States of America not under the control of either party to this Agreement.

**How the arbitration must proceed:** The arbitrators shall determine where the arbitration shall take place. The arbitration must be governed by the United States Arbitration Act, Title 9 U.S.C. Section 1, et seq. Judgment upon the award rendered by the arbitrators may be entered by a court having jurisdiction thereof.

*You* and we must both submit our respective cases to the arbitrators within 30 days of the appointment of the third arbitrator. The arbitrators must make their decision within 60 days following the termination of the hearing, unless *You* and we consent to an extension. The majority decision of any two arbitrators, when filed with *You* and us will be final and binding on *You* and on us.

The arbitrators must interpret this Agreement as an honorable engagement and not merely a legal obligation. They are relieved of all judicial formalities. They may abstain from following the strict rules of law. They must make their award to effect the general purpose of this Agreement in a reasonable manner.

The arbitrators must render their decision in writing, based upon a hearing in which evidence may be introduced without following strict rules of evidence, but in which cross-examination and rebuttal must be allowed.

The arbitrators may award compensatory money damages and interest thereupon. They may order *You* to provide collateral to the extent required by this Agreement. **They will have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability**. However, they will not have the power to award exemplary damages or punitive damages, however denominated, whether or not multiplied, whether imposed by law or otherwise.

**Expenses of Arbitration:** *You* and we must each bear the expense of our respective arbitrator and must jointly and equally bear with each other the expense of the third arbitrator and of the arbitration.

This Section will apply whether that dispute arises before or after termination of this Agreement.

Exhibit A at A 0008 - A 0009 (emphasis added).  The 2004 Addendum provides:

**How arbitrators must be chosen:** You must choose one arbitrator and we must choose another. They will choose the third.  If you or we refuse or neglect to appoint an arbitrator within 30 days after written notice from the other party requesting it to do so, or if the two arbitrators fail to agree on a third arbitrator within 30 days of their appointment, either party may make application only to a court of competent jurisdiction in the City, County, and State of New York. **Similarly, any action or proceeding concerning arbitrability, including motions to compel or to stay arbitration, may be brought only in a court of competent jurisdiction in the City, County, and State of New York.**

Exhibit A at A 0027 (emphasis added).

11.    Respondent filed the Complaint asserting claims of improper reserving for claims and claims mishandling, which it alleges caused excessive collateral

6

needs. Collateral is expressly governed by the 2003 Payment Agreement containing the broad Arbitration Clause.

12.    The allegations in the Complaint relate entirely to Respondent's claims that American Home has breached its agreement with Respondent with respect to setting reserves, investigating claims, and failing or refusing to adjust collateral. In Count I, Respondent seeks damages for breach of Contract. In Count II, Respondent seeks damages for tortious breach of the implied covenant of good faith and fair dealing. Count III seeks declaratory relief regarding the parties agreement and Respondent's ability to review and/or audit claims. Count IV asserts a claim of unfair business practices and seeks to enjoin American Home from limiting Respondent's review and/or audit of claim files. The disputes alleged in the Complaint are subject to the broad Arbitration Clause.

13.    To the extent Respondent contests that the disputes alleged in the Complaint are subject to arbitration, the Arbitration Clause expressly provides that: "They [the arbitrators] shall have exclusive jurisdiction over the entire matter in dispute, including any questions as to arbitrability." Exhibit A at A 0009.

7

14.    No previous request has been made for the relief requested herein.

WHEREFORE, the AIG Companies respectfully request that this Court compel Respondent to arbitrate the disputes asserted in the Complaint.

Dated:    New York, New York
          August 25, 2008

                                        ZEICHNER ELLMAN & KRAUSE LLP

                                        By: _____
                                            Michael S. Davis
                                            Anthony I. Giacobbe, Jr.
                                            Greg M. Bernhard
                                             Attorneys for Petitioners
                                            575 Lexington Avenue
                                            New York, New York 10022
                                            (212) 223-0400

**EXHIBIT A**

# PAYMENT AGREEMENT

For

## Insurance and Risk Management Services

effective on the **01** day of **January, 2003**

by and between us,

**National Union Fire Insurance Company of Pittsburgh, Pa.**

On behalf of itself and all its affiliates including, but not limited to:

American Home Assurance Company
The Insurance Company of the State of Pennsylvania
National Union Fire Insurance Company of Pittsburgh, Pa.
Commerce and Industry Insurance Company
Birmingham Fire Insurance Company
Illinois National Insurance Company
American International South Insurance Company
AIU Insurance Company
American International Pacific Insurance Company
Granite State Insurance Company
Landmark Insurance Company
National Union Fire Insurance Company of Louisiana
New Hampshire Insurance Company

And **You**, our Client

*ALTMAN SPECIALTY PLANTS, INC*
*3742 BLUE BIRD CANYON ROAD*
*VISTA CA 92084-*

In consultation with *Your* representative

*G S LEVINE INSURANCE SERVICES*
*3377 CARMEL MOUNTAIN ROAD*
*SAN DIEGO CA 92121-*

PAYMENT AGREEMENT

## TABLE of CONTENTS

Title Page                                                                          1

Table of Contents                                                                   2

Who Has Agreed To This Agreement?                                                   3

What *You* And We Agreed To?                                                         3

When Does This Agreement Begin?                                                     3

When Will This Agreement End?                                                       3

Which Words Have Special Meanings In This Agreement?                                3

What Else Should *You* Know About *Your Payment Obligation*?                        4

When Must *You* Pay *Your Payment Obligation*?                                      4

What Is the Payment Plan?                                                           4

What Is the Billing Method?                                                         5

What About Collateral?                                                              6

What Is Default?                                                                    7

What May We Do In Case Of Default?                                                  7

How Will Disagreements Be Resolved?                                                 8

To Whom Must *You* and We Give Notices?                                             9

May Rights or Obligations be Assigned?                                             9

Will Past Forbearance Waive Rights under This Agreement?                           9

Who Must Pay to Enforce This Agreement?                                            9

How May This Agreement Be Changed?                                                 9

What If the Law Changes?                                                           9

Are *You* Authorized to Make This Agreement?                                       9

Signatures                                                                        10

Schedule of Policies and Payments                                          Appended

A 0002

# PAYMENT AGREEMENT

## WHO HAS AGREED TO THIS AGREEMENT?

This Agreement is between:

- *You*, the organization(s) named as "our Client" in the *Schedule*, and
- us, the insurer(s) named in the *Schedule*.

The words "we", "us" and "our" in this Agreement refer to the insurer(s) named in the *Schedule*.

## WHAT HAVE *YOU* AND WE AGREED TO?

We have agreed to the following:

- to provide *You* insurance and services according to the *Policies* and other agreements; and
- to extend credit to *You* by deferring our demand for full payment of the entire amount of *Your Payment Obligation* if *You* make partial payments according to this Agreement.

To induce us to agree as above,

*You* have agreed to the following:

- to pay us all *Your Payment Obligation* and to perform all *Your* other obligations according to this Agreement and *Schedule* for all entities covered by the *Policies*;
- to provide us with collateral according to this Agreement and *Schedule*;

## WHEN DOES THIS AGREEMENT BEGIN?

This Agreement begins on the Effective Date shown in the first page (the title page) of this Agreement. Unless otherwise agreed in writing, this Agreement will also apply to any *Policies* and *Schedules* that we may issue as renewals, revisions, replacements or additions to the attached *Schedule* and the *Policies* listed there.

## WHEN WILL THIS AGREEMENT END?

This Agreement will end only after *You* and we have settled and paid all obligations between *You* and us relating to this Agreement. Neither *You* nor we may cancel this Agreement without the other's consent.

## WHICH WORDS HAVE SPECIAL MEANINGS IN THIS AGREEMENT?

Words with special meanings in the *Policies* have the same meanings in this Agreement as they have in the *Policies*. Non-italicized capitalized words in this Agreement are defined in the *Policies*, or their meanings are otherwise described in this Agreement.

The following are definitions of other special words. Terms printed in this Agreement in italic typeface have the meanings described below.

1. **"ALAE"** means Allocated Loss Adjustment Expense as defined in the *Policies*.

2. **"Deductible Loss Reimbursements"** means the portion of any *Loss* and *ALAE* we pay that *You* must reimburse us for under any "Deductible" or "Loss Reimbursement" provisions of a *Policy*.

3. **"Loss"** or **"Losses"** means damages, benefits or indemnity that we become obligated under the terms of the *Policies* to pay to claimants.

4. **"Policy"** or **"Policies"** means:

   - any of the insurance *Policies* described by their *Policy* numbers in the *Schedule*, and their replacements and renewals;
   - any additional insurance *Policies* that we may issue to *You* that *You* and we agree to make subject to this Agreement.

5. **"Retained Amount"** or **"Retention"** means one of the following:

   - **Self-Insured Retention:** the amount specified in the applicable *Policy* as *Your* Self-Insured Retention per occurrence, accident, offense, claim or suit; or
   - **Deductible:** the amount specified in the applicable *Policy* as the Reimbursable or Deductible portion of *Loss* per occurrence, accident, offense, claim or suit; or
   - **Loss Limit:** the portion of any *Loss* we pay because of an occurrence, offense, accident, claim or suit, that we will include in the computation of the premiums.

# PAYMENT AGREEMENT



The *Policies* show the type of *Retention* that applies to any specific occurrence, offense, accident, claim or suit.

6. **"Schedule"** means each of the attachments to this Agreement that describes specific elements of the Agreement for a specified period of time. Each *Schedule* is a part of this Agreement. Additional *Schedules* or amendments to *Schedules* may be attached to this Agreement from time to time by mutual agreement between *You* and us.

7. **"You"** or **"Your"** means the person or organization named as our Client in the title page of this Agreement, its predecessor and successor organizations, and each of its subsidiary, affiliated or associated organizations that are included as Named Insureds under any of the *Policies*. Each is jointly and severally liable to us for the entire amount of *Your Payment Obligation*.

8. **"Your Payment Obligation"** means the amounts that *You* must pay us for the insurance and services in accordance with the terms of the *Policies*, this Agreement, and any similar primary casualty insurance *Policies* and agreements with us incurred before the inception date hereof. Such amounts shall include, but are not limited to, any of the following, including any portions thereof not yet due and payable:

   - the premiums and premium surcharges,
   - *Deductible Loss Reimbursements*,
   - any amount that we may have paid on *Your* behalf because of any occurrence, accident, offense, claim or suit with respect to which *You* are a self-insurer,
   - any other fees, charges, or obligations as shown in the *Schedule* or as may arise as *You* and we may agree from time to time.

**Loss Reserves:** *Your Payment Obligation* includes any portion of the premiums, premium surcharges, *Deductible Loss Reimbursements* or other obligations that we shall have calculated on the basis of our reserves for *Loss* and *ALAE*. Those reserves shall include specific reserves on known *Losses* and *ALAE*, reserves for incurred but not reported *Losses* and *ALAE*, and reserves for statistically expected development on *Losses* and *ALAE* that have been reported to us. Any *Loss* development factors we apply in determining such reserves will be based on our actuarial evaluation of relevant statistical data including, to the extent available and credible, statistical data based upon *Your* cumulative *Loss* and *ALAE* history.

## WHAT ELSE SHOULD *YOU* KNOW ABOUT *YOUR PAYMENT OBLIGATION*?

**Amounts:** We will calculate *Your Payment Obligation* according to the methods stated in the *Policies* and any other similar primary casualty insurance *Policies* and agreements between us.

*You* must abide by the results under this Agreement of any payment of *Loss* or *ALAE* that the claims service provider or we shall have made in the absence of negligence and in good faith under any of the *Policies*.

**Credit:** Credit is extended to *You* whenever *Your* payment of some or all of *Your Payment Obligation* is postponed beyond the effective date of the insurance *Policies* to which such obligations pertain. Any extension of unsecured credit to *You* under this Agreement is extended only for the duration of the *Policy* year for which it is extended. It is subject to review and revision or withdrawal at each anniversary of this Agreement or at other times in accordance with the terms of this Agreement. Any extension of credit to *You* under this Agreement, including any deferral or waiver of the collection of collateral from *You* is not an assumption by us of any of *Your* obligations to us. Any extension of credit to *You* does not limit our right to enforce *Your* performance under this Agreement.

A Credit Fee may be charged for any unsecured credit extended to *You*. The Credit Fee, if any, is shown in the *Schedule*. Any such Credit Fee is an annual fee and applies only to the *Policy* year to which such *Schedule* applies. A renewal Credit Fee may be charged for the period of any renewed extension of unsecured credit, and shall be shown in the *Schedule* pertaining thereto.

Payment of the Credit Fee, if any, is neither payment of premium for insurance of any kind nor payment of *Deductible Loss Reimbursements*.

## WHEN MUST *YOU* PAY *YOUR PAYMENT OBLIGATION*?

All payments are due by the due date stated in the *Schedule*, or as respects Additional Payments, within 30 days of the later of the Invoice, Notice or Bill date or *Your* evidenced receipt date of the Invoice, Notice or Bill for each such Additional Payment.

## WHAT IS THE PAYMENT PLAN?

A 0004

# PAYMENT AGREEMENT

## Deposit and Installments

*You* must pay us a Deposit and Installments in the amounts and by the dates shown in the *Schedule* for the *Policies* described in the *Schedule*.

**Claims Payment Deposit:** If so shown in the *Schedule*, the Deposit includes a Claims Payment Deposit. The Claims Payment Deposit will not bear interest. We will return the amount of the Claim Payment Deposit to *You* when *You* have paid us all amounts due us.

If the total amount of claims we shall have paid on *Your* behalf exceeds the sum of the Claims Payment Deposit for three (3) consecutive billing periods, we may require *You* to pay us additional funds for the Claims Payment Deposit. However, the entire Claims Payment Deposit shall not exceed 250% of the average amount of the claims we had paid in each of the prior 3 periods.

## Additional Payments

*You* must also make payments in addition to the Deposit and Installments according to the Payment Method described under "Additional Payments" in the *Schedule*.

# WHAT IS THE BILLING METHOD?

**Deposit and Installments:** *You* must pay us the amounts shown in the *Schedule* as "Installments". *You* must pay us those amounts by their Due Dates shown there.

**Additional Payments:** *You* have chosen the Direct Billing Method or the Automatic Withdrawal Method, or a combination of both. *Your* choice is shown in the *Schedule*.

## Direct Billing Method

For the Additional Payments described under "WHAT IS THE PAYMENT PLAN?", we will further bill *You* as necessary for the payment of *Losses* we must pay or have paid within *Your* Retention and *Your* share of *ALAE* covered by the *Policies*. We will not bill more than permitted under any Aggregate Stop or Maximum Premium or Maximum Insurance Cost provisions that apply to the *Policies*.

## Automatic Withdrawal Method

For the Additional Payments described under "WHAT IS THE PAYMENT PLAN?", we will draw funds from the "Automatic Withdrawal Account" described in the *Schedule* as necessary for the payment of *Losses* within *Your* Retention and *Your* share of *ALAE* covered by the *Policies*. We will not withdraw more than permitted under any Aggregate Stop or Maximum Premium or Maximum Insurance Cost provisions that apply to the *Policies*. *You* hereby authorize us to withdraw funds from that Account upon our demand.

*You* must pay enough cash into that "Automatic Withdrawal Account" to cover our expected payments of *Loss* within *Your* Retention and *Your* share of *ALAE* during the next Claims Payment Fund Coverage Period shown in the *Schedule*. The minimum amount of such cash funds is shown in the *Schedule* as "Minimum Amount". *You* must make a payment in that amount into that Account immediately whenever its balance falls below 25% of that amount. Interest earned on that Account belongs to *You*.

A 0005

## .PAYMENT AGREEMENT

## WHAT ABOUT COLLATERAL?

### Collateral is Required

*You* must deliver collateral acceptable to us to secure *Your Payment Obligation* at the time(s), in the form(s) and in the amount(s) shown in the *Schedule*. Subject to the terms of this Agreement, we may apply any collateral we hold in connection with this or any other similar primary casualty insurance *Policies* or agreements to *Your Payment Obligation.*

### Grant of Security Interest and Right to Offset

*You* grant us a possessory security interest in any property *You* deliver to us to secure *Your Payment Obligation.* *You* also grant us a continuing first-priority security interest and right of offset with respect to all premiums, surcharges, dividends, cash, accounts, or funds that are payable to *You* and are now or may in the future come into our possession in connection with *Your Payment Obligation*. *You* agree to assist us in any reasonable way to enable us to perfect our interest. *You* direct us to hold all such sums as collateral for *Your Payment Obligation* as they may be payable now or may become payable in the future.

### Letter of Credit

Any letter of credit must be clean, unconditional, irrevocable and evergreen. It must be from a bank that we and the Securities Valuation Office of the National Association of Insurance Commissioners have approved and in a form acceptable to us. It must be in the amount shown in the *Schedule.*

If any letter of credit is canceled, no later than 30 days before that letter of credit expires, *You* must deliver to us a substitute letter of credit that complies with the requirements set forth above. Upon *Your* written request, we will not unreasonably withhold our consent to a reasonable extension of the time within which *You* must deliver such a substitute letter of credit to us. The substitute letter of credit must take effect no later than the date of termination of the expiring letter of credit. *Your* duty to deliver such a letter of credit will continue until *You* have satisfied all *Your* obligations under this Agreement and the *Policies*. If *You* fail to provide us with a qualifying substitute letter of credit as indicated above, we may draw upon the existing letter of credit in full.

### Other Collateral

With respect to any collateral we accept other than a letter of credit, including but not limited to any collateral we hold in trust or escrow, any agreements between *You* and us about our respective rights and obligations with respect to such collateral are incorporated by reference into this Agreement. Nothing in those agreements will limit or modify any of our rights under this Agreement.

### Collateral Reviews

The collateral we require to secure *Your Payment Obligation* is subject to reviews and revisions as described below.

We will review our collateral requirement annually. In addition, we may review our collateral requirement at any time that we may deem reasonably necessary, including at any time after an event such as but not limited to the following:

1. the non-renewal or cancellation of any *Policy* to which this Agreement applies,

2. the failure or violation of any financial covenants or tests, or minimum financial rating (if any) specified in the *Schedule,*

3. the occurrence of any direct or indirect transaction for the merger or consolidation, or the conveyance, sale, transfer, dividend, spin-off, lease, or sale and lease back, of all or any material portion of *Your* property, assets, business or equity to any other entity,

4. any material adverse change in the financial condition of *You, Your* subsidiaries or affiliates taken separately or in combination, or any other entity on which we rely for security or guarantee in connection with this Agreement.

*You* and we will cooperate with each other and each other's designated consultants in the conduct of such reviews.

If as a result of any review we find that we require additional collateral, *You* will provide us such additional collateral within 30 days of our written request, which shall be accompanied by a worksheet showing our calculation of the amount thereof. If a return of collateral to *You* is indicated, we will return annually the indicated amount to *You* within 30 days of our written acknowledgement thereof.

---

Edition 12/98 A                        01/06/2003 002/01 9429947                        Page 6 of 10

A 0006

## ·PAYMENT AGREEMENT

### Collateral Adjustment Procedure

The additional collateral that *You* must provide us will be in the amount of the difference between the total unpaid amount of *Your Payment Obligation* and the total amount of *Your* collateral that we then hold. We may adjust the collateral requirement relating to the unexpired term of the *Policies* on the basis of our evaluation of *Your* financial condition. If such difference is a negative sum, that sum is the amount that we will return to *You*. However, we are not obligated to return collateral to *You* if *You* are in default of any provision of this Agreement or any other similar agreement relating to *Your* primary casualty insurance with us.

### Financial Information

*You* must provide financial information to us as a basis for our collateral reviews within 14 days after our request. If *You* are not subject to the reporting requirements of the Securities and Exchange Act of 1934, *You* must provide us copies of *Your* audited annual financial statements.

If we so request, *You* must provide us such financial information as we may reasonably deem necessary to determine *Your* financial condition, including but not limited to copies of *Your* completed quarterly financial statements. Those statements must include the following:

- balance sheet,
- income statement,
- statement of retained earnings,
- cash flow statement,
- notes to the statements, and
- any supplemental schedules.

### Reporting Requirement

Give us prompt notice of the event of any default as described in the section titled "What is a Default", or any event described in the section titled "Collateral Reviews" in this Agreement, that has happened or is about to happen.

As an alternative to the above, at *Your* option, provide us with the same notices at the same time that *You* provide such notices to any other creditor regarding any material financial or operational condition that *You* are obligated to report to such other creditor.

## WHAT IS DEFAULT?

Default is any of the following:

1. failure by *You* or any of *Your* subsidiaries or affiliates to perform within 5 days after its due date any obligation *You* or any of *Your* subsidiaries or affiliates have under this Agreement or any other agreement with us.

2. *Your* insolvency, or the occurrence of any of the following:
   - the commencement of liquidation or dissolution proceedings, *Your* general failure to pay debts as they become due, general assignment by *You* for the benefit of creditors, the filing by or against *You* of any petition, proceeding, case or action under the provisions of the United States Bankruptcy Code or other such law relating to debtors, the appointment of, or the voluntary or involuntary filing for a petition for the appointment of, a receiver, liquidator, rehabilitator, trustee, custodian or similar official to take possession or control of any of *Your* property; or
   - *Your* default on any material outstanding debt not cured within its applicable cure period, if any.

3. the cancellation by *You*, without our prior consent, of any *Policy* material to this agreement. However, *Your* concurrent cancellation of all the unexpired *Policies* shall not constitute default.

4. the discovery of any material inaccuracy or incompleteness in any representation, warranty or condition precedent *You* make in connection with this Agreement, the insurance afforded by any of the *Policies* or *Your Payment Obligation*.

## WHAT MAY WE DO IN CASE OF DEFAULT?

If default occurs, we may take reasonable and appropriate steps that are necessary to protect our interest. We will exercise good faith consistent with usual and customary commercial and credit practice in selecting and exercising such steps. We may take steps such as the following:

## PAYMENT AGREEMENT 

1. We may declare the entire unpaid amount of *Your Payment Obligation* immediately due and payable.

2. We may change any or all unexpired *Policies* under Loss Reimbursement or Deductible plans to Non-Deductible plans for the remaining term of any such *Policy*, to become effective after ten days written notice to *You*. We will therewith increase the premiums for those *Policies* in accordance with our applicable rating plan.

3. We may draw upon, liquidate, or take ownership of any or all collateral we hold regardless of the form, and hold or apply such amounts to any of *Your Payment Obligations* under this Agreement or any other premium, surcharge or deductible financing agreement between *You* and us, or under any *Policies*. However we will not draw upon, liquidate, or take ownership of more collateral than is reasonably necessary to protect our interest.

4. We may require *You* to deliver to us additional collateral, including an amendment to the letter of credit or an additional letter of credit or other additional collateral. The other additional collateral, letter of credit or its amendment must conform to the requirements described above. *You* must deliver it within 15 days of *Your* receipt of a written notice from us.

5. We may cancel any or all unexpired *Policies* as if for non-payment of premium or *Deductible Loss Reimbursements*. We may apply any return of premium resulting from the cancellation to remedy any default.

6. We may withhold payment of claims to *You* or any of *Your* subsidiaries or affiliates.

7. We may satisfy *Your* obligations to us in whole or in part by set-off against any moneys, securities, collateral, consideration or property of *yours* received by, pledged to, held by or otherwise available to us in connection with *Your Payment Obligation*. *You* authorize us after any default to charge any account that *You* maintain with us in connection with *Your Payment Obligation* in order to satisfy any of *Your* obligations.

## HOW WILL DISAGREEMENTS BE RESOLVED?

### What if we disagree about payment due?

If *You* disagree with us about any amount of *Your Payment Obligation* that we have asked *You* to pay, within the time allowed for payment *You* must:

- give us written particulars about the items with which *You* disagree; and
- pay those items with which *You* do not disagree.

We will review the disputed items promptly and provide *You* with further explanations, details, or corrections. *You* must pay us the correct amounts for the disputed items within 10 days of agreement between *You* and us about their correct amounts. Any disputed items not resolved within 60 days after our response to *Your* written particulars must immediately be submitted to arbitration as set forth below. With our written consent, which shall not be unreasonably withheld, *You* may have reasonable additional time to evaluate our response to *Your* written particulars.

So long as *You* are not otherwise in default under this Agreement, we will not exercise our rights set forth under "What May We Do in Case of Default?", pending the outcome of the arbitration on the disputed amount of *Your Payment Obligation*.

### What about disputes other than disputes about payment due?

Any other unresolved dispute arising out of this Agreement must be submitted to arbitration. *You* must notify us in writing as soon as *You* have submitted a dispute to arbitration. We must notify *You* in writing as soon as we have submitted a dispute to arbitration.

### Arbitration Procedures

**How arbitrators must be chosen:** *You* must choose one arbitrator and we must choose another. They will choose the third. If *You* or we refuse or neglect to appoint an arbitrator within 30 days after written notice from the other party requesting it to do so, or if the two arbitrators fail to agree on a third arbitrator within 30 days of their appointment, either party may make an application to a Justice of the Supreme Court of the State of New York, County of New York and the Court will appoint the additional arbitrator or arbitrators.

**Qualifications of arbitrators:** Unless *You* and we agree otherwise, all arbitrators must be executive officers or former executive officers of property or casualty insurance or reinsurance companies or insurance brokerage companies, or risk management officials in an industry similar to *Yours*, domiciled in the United States of America not under the control of either party to this Agreement.

A 0008

**PAYMENT AGREEMENT** 

How the arbitration must proceed: The arbitrators shall determine where the arbitration shall take place. The arbitration must be governed by the United States Arbitration Act, Title 9 U.S.C. Section 1, et seq. Judgment upon the award rendered by the arbitrators may be entered by a court having jurisdiction thereof.

*You* and we must both submit our respective cases to the arbitrators within 30 days of the appointment of the third arbitrator. The arbitrators must make their decision within 60 days following the termination of the hearing, unless *You* and we consent to an extension. The majority decision of any two arbitrators, when filed with *You* and us will be final and binding on *You* and on us.

The arbitrators must interpret this Agreement as an honorable engagement and not merely a legal obligation. They are relieved of all judicial formalities. They may abstain from following the strict rules of law. They must make their award to effect the general purpose of this Agreement in a reasonable manner.

The arbitrators must render their decision in writing, based upon a hearing in which evidence may be introduced without following strict rules of evidence, but in which cross-examination and rebuttal must be allowed.

The arbitrators may award compensatory money damages and interest thereupon. They may order *You* to provide collateral to the extent required by this Agreement. They will have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability. However, they will not have the power to award exemplary damages or punitive damages, however denominated, whether or not multiplied, whether imposed by law or otherwise.

*Expenses of Arbitration: You* and we must each bear the expense of our respective arbitrator and must jointly and equally bear with each other the expense of the third arbitrator and of the arbitration.

This Section will apply whether that dispute arises before or after termination of this Agreement.

## TO WHOM MUST *YOU* AND WE GIVE NOTICES?

We will mail or deliver all notices to *You* at *Your* address in the *Schedule. You* must mail or deliver all notices to our Law Representative with a copy to our Account Executive at the address specified in the *Schedule.* All notices must be in writing.

## MAY RIGHTS OR OBLIGATIONS UNDER THIS AGREEMENT BE ASSIGNED?

Neither *You* nor we may assign our rights or obligations under this Agreement without the written consent of the other, which shall not be unreasonably withheld.

## WILL PAST FORBEARANCE WAIVE RIGHTS UNDER THIS AGREEMENT?

Past forbearance, neglect or failure to enforce any or all provisions of this Agreement, or to give notice of insistence upon strict compliance with it, will not be a waiver of any rights. A waiver of rights in a past circumstance will not be a course of conduct that waives any rights in any subsequent circumstance.

## WHO MUST PAY TO ENFORCE THIS AGREEMENT?

If *You* or we fail to perform or observe any provisions under this Agreement, the other may incur reasonable additional expenses to enforce or exercise its remedies. Either *You* or we must reimburse the other upon demand and presentation of clear and convincing supporting evidence for any and all such additional expenses.

## HOW MAY THIS AGREEMENT BE CHANGED?

This Agreement may be changed only by agreement by *You* and us, as evidenced by a written addendum to this Agreement, duly executed by the authorized representatives of each.

## WHAT IF THE LAW CHANGES?

If any part of this Agreement should become unenforceable because of any change in law, the remainder of this Agreement will remain in full force and effect.

## ARE *YOU* AUTHORIZED TO MAKE THIS AGREEMENT?

*You* hereby represent and warrant that *Your* execution, delivery and performance of this Agreement have been authorized by all necessary corporate actions. The individual executing this agreement on *Your* behalf has full right and authority to execute and deliver this agreement and to bind *You* jointly and severally.

A 0009

## PAYMENT AGREEMENT

## SIGNATURES

TO SIGNIFY AGREEMENT, *You* and we have caused this Agreement to be executed by the duly authorized representatives of each.

For National Union Fire Insurance Company of Pittsburgh, Pa.,

On behalf of itself and its affiliates first listed above:

In New York, New York,

This 16 day of February 2003

Signed by _____

Typed Name Deborah Cuevas

Title **Vice President / Western Zone Executive**

For *You*, our Client

**ALTMAN SPECIALTY PLANTS, INC**

In _____, _____,

This 11th day of Feb , 2003

Signed by Robert Forrest

Typed Name _____

Title CFO

Edition 12/98 A                 01/16/2003 002/01 9429947                 Page 10 of 10

A 0010

# ADDENDUM to the PAYMENT AGREEMENT

## COLLATERAL ADJUSTMENT PROCEDURE

This Addendum changes the Payment Agreement. Please read it carefully.

This Addendum is effective 01/01/2003, and

forms a part of the Payment Agreement effective 01/01/2003 between

You, ALTMAN SPECIALTY PLANTS, INC, and

Us, National Union Fire Insurance Company of Pittsburgh, Pa. and all its affiliates.

The section of said Payment Agreement titled COLLATERAL ADJUSTMENT PROCEDURE is replaced by the following.

## COLLATERAL ADJUSTMENT PROCEDURE

The additional collateral that *You* must provide us will be in the amount of the difference between the total unpaid amount of *Your Payment Obligation* as described below, and the total amount of *Your* collateral that we then hold. We will determine the total unpaid amount of *Your Payment Obligation* as described below.

A. We will determine as follows the amount of *Loss* and *ALAE* to be included in calculating *Your Payment Obligation*:

   1. **Total *Loss* and *ALAE* Incurred under Expired *Policies*:** Determine the amount of *Loss* and *ALAE* that we have incurred on each covered claim which occurred in any expired *Policy* year under primary casualty insurance *Policies* issued to *You* by us (except *Policies* under which the final amount of *Your Payment Obligation* has been agreed on and fully paid).

   2. **Loss Capping:** Subtract from each such *Loss* and *ALAE* amounts the portions thereof (if any) that exceed respectively *Your* applicable *Retention* of *Loss* and *Your* applicable share of the *ALAE*. Sum the remainder by *Policy* year.

   3. **Loss Development:** Apply loss development factors to adjust such sums to recognize the statistically expected change in the sum thereof upon their final settlement. The loss development factors shall be our customary loss development factors unless *You* and we have agreed upon another set of such factors and made them a part of said Payment Agreement in writing.

   4. **Total *Loss* and *ALAE* Expected in Unexpired *Policies*:** Determine the amount of *Loss* within *Your Retention* and *Your* share of the *ALAE* that we expect to incur on all covered claims under the unexpired *Policies*. We will apply our Credit Risk Factor to such *Loss* and *ALAE* to adjust for *Your* financial condition.

   5. **Aggregate Limits:** Compare the sums of such developed, limited and adjusted *Loss* and *ALAE* within each *Policy* year to the aggregate *Loss* and *ALAE* limits (if any) in applicable rating plans or deductible or loss reimbursement plans. Subtract the amount (if any) by which such sums exceed such limits, and sum the remainder for all applicable *Policy* years. Add to such sum the amount of *Your* largest *Retention* that applied during the period covered by any *Policies* included in this computation.

B. ***Your Payment Obligation*:** We will determine the total amount of *Your Payment Obligation* under such *Policies*, taking into account the applicable amount of *Loss* and *ALAE* from step A above, in accordance with the methods stated in the *Policies* and any other similar primary casualty insurance *Policies* and agreements between us.

C. ***Payments*:** We will determine the amount *You* have paid us in cash in satisfaction of *Your Payment Obligation* under those *Policies*, excluding any amounts *You* may have paid us in excess of Aggregate Limits described in A5 above.

D. The total unpaid amount of *Your Payment Obligation* will be the amount from Step B less the amount from Step C.

E. The additional collateral that *You* must deliver to us will be the difference between the total unpaid amount of *Your Payment Obligation* in item D and the sum total of all *Your* collateral that we then hold, provided that the total unpaid amount of *Your Payment Obligation* in item D is greater than the sum total of all *Your* collateral that we then hold.

   If such difference is a negative sum, that sum is the amount that we may return to *You*. However, we are not obligated to return collateral to *You* if *You* are in default of any provision of this Agreement or any other similar

Edition 1/99                                    01/06/2003 ID201 J429747

agreement relating to *Your* primary casualty insurance with us.

We may from time to time agree with *You* in writing to adjustments in this method or to its results, contingent upon specified conditions. Such agreements will not preclude us from applying the procedure described above if such specified conditions change materially.

_Robert Forrest_ 2/11/03
Authorized Signature for *You*, and Date

_[signature]_ 2/11/2003
Authorized Signature for *us*, and Date

Edition 1/99

01/06/2003 00201 9429947

# Schedule of Policies and Payments

## Paid Loss Payments Plan

Effective from 01/01/2003 to 01/01/2004

Annexed to the PAYMENT AGREEMENT

effective on 01/01/2003

by and between us,

National Union Fire Insurance Company of Pittsburgh, Pa.

On behalf of itself and all its affiliates including, but not limited to:

American Home Assurance Company
The Insurance Company of the State of Pennsylvania
National Union Fire Insurance Company of Pittsburgh, Pa.
Commerce and Industry Insurance Company
Birmingham Fire Insurance Company
Illinois National Insurance Company
American International South Insurance Company
AIU Insurance Company
American International Pacific Insurance Company
Granite State Insurance Company
Landmark Insurance Company
National Union Fire Insurance Company of Louisiana
New Hampshire Insurance Company
and You, our Client

ALTMAN SPECIALTY PLANTS, INC
3742 BLUE BIRD CANYON ROAD
VISTA CA 92084-

on behalf of You and all Your subsidiaries or affiliates except those listed below:

For our use only: 525260

---

Edition 1/99

Paid Loss Payments Method
℮ 01/06/2003 00Z019429947

Page 1 of 5

A 0013

## List of Addressees for Notices and Other Purposes

**Your Address:**

Contact Name: Bob Forrest
Company Name: ALTMAN SPECIALTY PLANTS, INC
Street: 3742 BLUE BIRD CANYON ROAD

| City: VISTA | State: CA | Zip: 92084- | Phone: |
|---|---|---|---|

**Your Representative:**

Contact Name: Gary Levine
Company Name: G S LEVINE INSURANCE SERVICES
Street: 3377 CARMEL MOUNTAIN ROAD

| City: SAN DIEGO | State: CA | Zip: 92121- | Phone: 8585237550 |
|---|---|---|---|

**Our Account Executive:**

Contact Name: Michael Duman
Company Name: American Home Assurance Company
Street: 777 S. Figueroa Street

| City: Los Angeles | State: Ca. | Zip: 90017 | Phone: 213-689-3820 |
|---|---|---|---|

**Our Law Representative:**

Contact Name: Ms. Virginia Doty
Company Name: American International Companies
Street: 175 Water Stret

| City: New York | State: NY | Zip: 10038 | Phone: 212-458-7015 |
|---|---|---|---|

**Remit Payments to:**

Contact Name: Collections
Company Name: American International Companies
Street: PO Box 10472

| City: Newark | State: NJ | Zip: 07193 | Phone: |
|---|---|---|---|

**Remit Collateral to:**

Contact Name: Attn: Mr. Art Stillwell
Company Name: American International Group Inc.
Street: P.O.Box 923 Wall Street Station

| City: New York | State: NY | Zip: 10268 | Phone: |
|---|---|---|---|

Contact Name:
Company Name:
Street:

| City: | State: | Zip: | Phone: |
|---|---|---|---|

Contact Name:
Company Name:
Street:

| City: | State: | Zip: | Phone: |
|---|---|---|---|

A 0014



## A. Policies and Other Agreements

Workers Compensation and Employers Liability Insurance

**WC 1241496 , WC 1241497.**

Commercial General Liability Insurance

Automobile Liability Insurance

Other Insurance

Other Agreements (Describe)

## B. Payment Plan:

### 1. Cash Deposit, Installments and Estimated Deferred Amounts

| Payment No. | Due Date | Provision for Expenses And Excess Losses(1) | Special Taxes and Surcharges | Annual Credit Fee | Provision for Limited Losses(2) | Your Estimated Payment Obligation |
|---|---|---|---|---|---|---|
| 1 | 01/01/2003 | $641,113 | $40,358 | $0 | $60,000 | $741,471 |
| | Subtotals | $641,113 | $40,358 | $0 | $60,000 | $741,471 |
| | DLP* | N/A | N/A | N/A | $1,080,720 | $1,080,720 |
| | DEP* | $0 | $0 | $0 | N/A | $0 |
| | Totals | $641,113 | $40,358 | $0 | $1,140,720 | $1,822,191 |

**DLP** means "Deferred Loss Provision". This is the estimated amount *You* must pay us as "Regular Loss Payments" and "Sizable Loss Payments" described below.

**DEP** means "Deferred Expense Provision". This is an estimated amount that *You* must pay us as follows:

| Date | Type | Amount |
|---|---|---|
| N/A | N/A | N/A |

**Notes**
(1) "Provision for Expenses and Excess Losses" is a part of the Premium.

(2) "Provision for Limited Losses" includes provision for *Loss* within *Your Retention* (both Deductible and Loss Limit) and *Your* share of *ALAE*. Any "Deposit" in this column is the Claims Payment Deposit. Refer to definitions in the Payment Agreement.

### 2. Adjustments

The sums shown above are only estimated amounts. If *Your Payment Obligation* changes under the terms of the *Policies*, we will promptly notify *You* as such changes become known to us. All additional or return amounts relating thereto shall be payable in accordance with the terms of the Payment Agreement.

### 3. Additional Payments

On a **Monthly** basis, we will report to *You* the amounts of *Loss* and *ALAE* that we have paid under the *Policies*. *You* must subsequently pay us as described below.

**Regular Loss Payments:** Regular Loss Payments apply in addition to the amounts shown with Due Dates in Section B above.

We will bill *You* or withdraw funds from the Automatic Withdrawal Account (whichever Billing Method applies as shown below) at the periodic intervals stated above for the amounts of *Loss* within *Your Retention* and *Your* share of *ALAE* that we will have paid under the *Policies*, less all amounts *You* will have paid us to date as such Regular Loss Payments and the Sizable Loss Payments described below.

**Sizable Loss Payments:** If we must make payment for any *Loss* within *Your Retention* and *Your* share of *ALAE* arising out of a single accident, occurrence, offense, claim or suit that in combination exceeds the Sizable Loss Payment Amount of **$0**, *You* must pay us the amount of that payment of *Loss* within 10 days after *You*

A 0015

receive our bill.

**Billing Method:**

☒ Billing to

☒ *You* at *Your* address shown in the *Schedule*, or

☒ *Your* Representative at its address shown in the *Schedule*; or

☐ Automatic Withdrawal from the account described below.

If Automatic Withdrawal Account applies: Minimum Amount:

Name of Depository Institution: **Chase Manhattan Bank, New York, NY**

Address:

aba No.: **021000021**

Account Number: **323160387**

### 4. Conversion

The **Conversion Date** for each *Policy* described in section A above shall be the date **TBD** months after the inception of such *Policy*.

On or shortly after the Conversion Date upon the presentation of our invoice, *You* must pay in cash the entire unpaid amount of *Your Payment Obligation* for such *Policies*.

## C. Security Plan

### 1. Collateral

| Collateral on Hand (by Type) | Amount of Collateral |
|---|---|
| N/A | N/A |
| **Total Collateral on Hand** | $0 |

| Additional Collateral Required (by Type) | Amount of Collateral | Due Date |
|---|---|---|
| CLAIMS PAYMENT FUND | $60,000 | 01/01/2003 |
| STEP-UP LOC | $1,080,720 | 01/01/2003 |
| **Total Additional Collateral Required** | **$1,140,720** | |
| **Total Collateral Required** | **$1,140,720** | |

### 2. Financial Covenants, Tests, or Minimum Credit Ratings

We may require additional collateral from *You* in the event of the following:

a. **Credit Trigger:**

i. If the credit rating of the entity named below and for the type of debt described below, promulgated by Standard & Poor's Corporation ("S&P") or by Moody's Investors Services, Inc. ("Moody's"), drops below the grade shown respectively under S&P or Moody's, or

ii. If S&P or Moody's withdraws any such rating.

We may require and *You* must deliver such additional collateral according to the Payment Agreement up to an amount such that our unsecured exposure will not exceed the amount shown as the Maximum Unsecured Exposure next to such rating in the grid below.

"Unsecured exposure" is the difference between the total unpaid amount of *Your Payment Obligation* (including any similar obligation incurred before the inception of the Payment Agreement and including any portion of *Your Payment Obligation* that has been deferred and is not yet due) and the total amount of *Your* collateral that we hold.

A 0016

Name of Entity:  Type of Debt Rated:

**Ratings at Effective Date**

| S&P | Moody's | Unsecured Exposure at Effective Date |
|-----|---------|--------------------------------------|
|     |         |                                      |

**Potential Future Ratings**

| S&P | Moody's | Maximum Unsecured Exposure |
|-----|---------|----------------------------|
| AA- | Aa3     |                            |
| A-  | A3      |                            |
| BBB | Baa2    |                            |
| BB  | Ba2     |                            |

b.  Other Financial Tests or Covenants:

## 3.  Adjustment of Credit Fee

If the amount of unsecured exposure is changed because of *Your* delivery of additional collateral to us due to the requirements under item 2 above, the Credit Fee shall be adjusted on a pro-rata basis from the date of such delivery.

## SIGNATURES

IN WITNESS WHEREOF, *You* and we have caused this *Schedule* to be executed by the duly authorized representatives of each.

For us, **National Union Fire Insurance Company of Pittsburgh Pa.,** on behalf of itself and all its affiliates, this  day of , ~~February~~ 2003
Signed by
Typed Name Deborah Cuevas
Title **Vice President / Western Zone Executive**

For You: **ALTMAN SPECIALTY PLANTS, INC**

this 13th day of *Feb* 2003
Signed by *Robert Torrret*
Typed Name
Title *CFO*

Edition 1/99

Paid Loss Payments Method
81/06/2003 002001 9429947

Page 5 of 5

A 0017

 

## ADDENDUM to the PAYMENT AGREEMENT

## COLLATERAL ADJUSTMENT PROCEDURE

This Addendum changes the Payment Agreement. Please read it carefully.

This Addendum is effective **01/01/2004,** and

forms a part of the Payment Agreement effective <u>**01/01/2003**</u> between

**You, ALTMAN SPECIALTY PLANTS INC,** and

**Us, National Union Fire Insurance Company of Pittsburgh, Pa.** and all its affiliates.

The section of said Payment Agreement titled COLLATERAL ADJUSTMENT PROCEDURE is replaced by the following.

## COLLATERAL ADJUSTMENT PROCEDURE

The additional collateral that *You* must provide us will be in the amount of the difference between the total unpaid amount of *Your Payment Obligation* as described here, and the total amount of *Your* collateral that we then hold. We will determine the total unpaid amount of *Your Payment Obligation* as described below.

A.  We will determine as follows the amount of *Loss* and *ALAE* to be included in calculating *Your Payment Obligation:*

1.  **Total *Loss* and *ALAE* Incurred under Expired Policies:** Determine the amount of *Loss* and *ALAE* that we have incurred on each covered claim which occurred in any expired *Policy* year under primary casualty insurance *Policies* issued to *You* by us (except *Policies* under which the final amount of *Your Payment Obligation* has been agreed on and fully paid).

2.  **Loss Capping:** Subtract from each such *Loss* and *ALAE* amounts the portions thereof (if any) that exceed respectively *Your* applicable *Retention* of *Loss* and *Your* applicable share of the *ALAE.* Sum the remainder by *Policy* year.

3.  **Loss Development:** Apply loss development factors to adjust such sums to recognize the statistically expected change in the sum thereof upon their final settlement. The loss development factors shall be our customary loss development factors unless *You* and we have agreed upon another set of such factors and made them a part of said Payment Agreement in writing.

4.  **Total *Loss* and *ALAE* Expected in Unexpired *Policies:*** Determine the amount of *Loss* within *Your Retention* and *Your* share of the *ALAE* that we expect to incur on all covered claims under the unexpired *Policies.* We will apply our Credit Risk Factor to such *Loss* and *ALAE* to adjust for *Your* financial condition.

5.  **Aggregate Limits:** Compare the sums of such developed, limited and adjusted *Loss* and *ALAE* within each *Policy* year to the aggregate *Loss* and *ALAE* limits (if any) in applicable rating plans or deductible or loss reimbursement plans. Subtract the amount (if any) by which such sums exceed such limits, and sum the remainder for all applicable *Policy* years. Add to such sum the amount of *Your* largest *Retention* that applied during the period covered by any *Policies* included in this computation.

B.  ***Your Payment Obligation:*** We will determine the total amount of *Your Payment Obligation* under such *Policies,* taking into account the applicable amount of *Loss* and *ALAE* from step A above, in accordance with the methods stated in the *Policies* and any other similar primary casualty insurance *Policies* and agreements between us.

C.  ***Payments:*** We will determine the amount *You* have paid us in cash in satisfaction of *Your Payment Obligation* under those *Policies,* excluding any amounts *You* may have paid us in excess of Aggregate Limits described in A5 above.

D.  **The total unpaid amount of *Your Payment Obligation*** will be the amount from Step B less the amount from Step C.

E.  **The additional collateral** that *You* must deliver to us will be the difference between the total unpaid amount of *Your Payment Obligation* in item D and the sum total of all *Your* collateral that we then hold, provided that the total unpaid amount of *Your Payment Obligation* in item D is greater than the sum total of all *Your* collateral that we then hold.

If such difference is a negative sum, that sum is the amount that we may return to *You.* However, we are not obligated to return collateral to *You* if *You* are in default of any provision of this Agreement or any other similar

Edition 1/99                                    ⊕ 12/31/2003 004/01 9436671



agreement relating to *Your* primary casualty insurance with us.

We may from time to time agree with *You* in writing to adjustments in this method or to its results, contingent upon specified conditions. Such agreements will not preclude us from applying the procedure described above if such specified conditions change materially.

_Robert Forrest_
**Authorized Signature for *You*, and Date**

_1/17/04_
**Authorized Signature for us, and Date**

Edition 1/99

12/31/2003 004/01 9436671

 

# Schedule of Policies and Payments

## Paid Loss Payments Plan

Effective from 01/01/2004 to 01/01/2005

Annexed to the PAYMENT AGREEMENT

effective on <u>01/01/2003</u>

by and between us,

**National Union Fire Insurance Company of Pittsburgh, Pa.**

On behalf of itself and all its affiliates including, but not limited to:

**American Home Assurance Company**
**The Insurance Company of the State of Pennsylvania**
**National Union Fire Insurance Company of Pittsburgh, Pa.**
**Commerce and Industry Insurance Company**
**Birmingham Fire Insurance Company**
**Illinois National Insurance Company**
**American International South Insurance Company**
**AIU Insurance Company**
**American International Pacific Insurance Company**
**Granite State Insurance Company**
**Landmark Insurance Company**
**National Union Fire Insurance Company of Louisiana**
**New Hampshire Insurance Company**
and *You*, our Client

**ALTMAN SPECIALTY PLANTS INC**
**3742 BLUE BIRD CANYON ROAD**
**VISTA CA  92084**

on behalf of *You* and all *Your* subsidiaries or affiliates except those listed below:

For our use only: 925201

---

A 0020

## List of Addressees for Notices and Other Purposes

### Your Address:

**Contact Name:** Bob Forrest
**Company Name:** ALTMAN SPECIALTY PLANTS INC
**Street:** 3742 BLUE BIRD CANYON ROAD
**City:** VISTA          **State:** CA          **Zip:** 92084          **Phone:**

### Your Representative:

**Contact Name:** Gary Levine
**Company Name:** G S LEVINE INSURANCE SERVICES
**Street:** 3377 CARMEL MOUNTAIN ROAD
**City:** SAN DIEGO          **State:** CA          **Zip:** 92121          **Phone:** (858) 523-7550

### Our Account Executive:

**Contact Name:** Michael Duman
**Company Name:** American International Companies
**Street:** 777 S Figueroa Street
**City:** Los Angeles          **State:** Ca          **Zip:** 90017          **Phone:** 213-689-3820

### Our Law Representative:

**Contact Name:** Virginia Doty
**Company Name:** American International Group
**Street:** 175 Water Street
**City:** New York          **State:** NY          **Zip:** 10038          **Phone:** 212-458-7015

### Remit Payments to:

**Contact Name:** Collections
**Company Name:** American International Companies
**Street:** PO Box 10472
**City:** Newark          **State:** NJ          **Zip:** 07193          **Phone:**

### Remit Collateral to:

**Contact Name:** Attn: Mr. Art Stillwell
**Company Name:** American International Group Inc.
**Street:** P.O.Box 923 Wall Street Station
**City:** New York          **State:** NY          **Zip:** 10268          **Phone:**

**Contact Name:**
**Company Name:**
**Street:**
**City:**          **State:**          **Zip:**          **Phone:**

**Contact Name:**
**Company Name:**
**Street:**
**City:**          **State:**          **Zip:**          **Phone:**

Paid Loss Payments Method
12/31/2003 004/01 9436671

A 0021

 

## A. *Policies* and Other Agreements

Workers Compensation and Employers Liability Insurance

**WC 1241496 , WC 1241497.**

Commercial General Liability Insurance

Automobile Liability Insurance

Other Insurance

Other Agreements (Describe)

## B. Payment Plan:

### 1. Cash Deposit, Installments and Estimated Deferred Amounts

| Payment No. | Due Date | Provision for Expenses And Excess Losses(1) | Special Taxes and Surcharges | Annual Credit Fee | Provision for Limited Losses(2) | *Your Estimated Payment Obligation* |
|---|---|---|---|---|---|---|
| 1 | 01/01/2004 | $761,915 | $52,498 | $0 | $40,000 | $854,413 |
| | Subtotals | $761,915 | $52,498 | $0 | $40,000 | $854,413 |
| | DLP* | N/A | N/A | N/A | $2,180,000 | $2,180,000 |
| | DEP* | $0 | $0 | $0 | N/A | $0 |
| | Totals | $761,915 | $52,498 | $0 | $2,220,000 | $3,034,413 |

DLP means "Deferred Loss Provision". This is the estimated amount *You* must pay us as "Regular Loss Payments" and "Sizeable Loss Payments" described below.

DEP means "Deferred Expense Provision". This is an estimated amount that *You* must pay us as follows:

| Date | Type | Amount |
|---|---|---|
| N/A | N/A | N/A |

**Notes**

(1) "Provision for Expenses and Excess Losses" is a part of the Premium.

(2) "Provision for Limited Losses" includes provision for *Loss* within *Your Retention* (both Deductible and Loss Limit) and *Your* share of *ALAE*. Any "Deposit" in this column is the Claims Payment Deposit. Refer to definitions in the Payment Agreement.

### 2. Adjustments

The sums shown above are only estimated amounts. If *Your Payment Obligation* changes under the terms of the *Policies*, we will promptly notify *You* as such changes become known to us. All additional or return amounts relating thereto shall be payable in accordance with the terms of the Payment Agreement.

### 3. Additional Payments

On a <u>Monthly</u> basis, we will report to *You* the amounts of *Loss* and *ALAE* that we have paid under the *Policies*. *You* must subsequently pay us as described below.

**Regular Loss Payments:** Regular Loss Payments apply in addition to the amounts shown with Due Dates in Section B above.

We will bill *You* or withdraw funds from the Automatic Withdrawal Account (whichever Billing Method applies as shown below) at the periodic intervals stated above for the amounts of *Loss* within *Your Retention* and *Your* share of *ALAE* that we will have paid under the *Policies*, less all amounts *You* will have paid us to date as such Regular Loss Payments and the Sizable Loss Payments described below.

**Sizable Loss Payments:** If we must make payment for any *Loss* within *Your Retention* and *Your* share of *ALAE* arising out of a single accident, occurrence, offense, claim or suit that in combination exceeds the Sizable Loss Payment Amount of <u>$25,000</u>, *You* must pay us the amount of that payment of *Loss* within 10 days after

A 0022



*You* receive our bill.

**Billing Method:**

☒ Billing to

☒ *You* at *Your* address shown in the *Schedule*, or

☒ *Your* Representative at its address shown in the *Schedule*; or

☐ Automatic Withdrawal from the account described below.

If Automatic Withdrawal Account applies: Minimum Amount:

Name of Depository Institution:

Address:

Account Number:

## 4. Conversion

The **Conversion Date** for each *Policy* described in section A above shall be the date **TBD** months after the inception of such *Policy*.

On or shortly after the Conversion Date upon the presentation of our invoice, *You* must pay in cash the entire unpaid amount of *Your Payment Obligation* for such *Policies*.

## C. Security Plan

### 1. Collateral

| Collateral on Hand (by Type) | Amount of Collateral |
|---|---|
| Escrow | $60,000 |
| LOCs | $1,080,720 |
| **Total Collateral on Hand** | $1,140,720 |

| Additional Collateral Required (by Type) | Amount of Collateral | Due Date |
|---|---|---|
| CLAIMS PAYMENT FUND | $40,000 | 01/01/2004 |
| STEP-UP LOC | $1,956,533 | 01/01/2004 |
| **Total Additional Collateral Required** | **$1,996,533** | |
| **Total Collateral Required** | **$3,137,253** | |

### 2. Financial Covenants, Tests, or Minimum Credit Ratings

We may require additional collateral from *You* in the event of the following:

a. Credit Trigger:

   i. If the credit rating of the entity named below and for the type of debt described below, promulgated by Standard & Poor's Corporation ("S&P") or by Moody's Investors Services, Inc. ("Moody's"), drops below the grade shown respectively under S&P or Moody's, or

   ii. If S&P or Moody's withdraws any such rating.

We may require and *You* must deliver such additional collateral according to the Payment Agreement up to an amount such that our unsecured exposure will not exceed the amount shown as the Maximum Unsecured Exposure next to such rating in the grid below.

"Unsecured exposure" is the difference between the total unpaid amount of *Your Payment Obligation* (including any similar obligation incurred before the inception of the Payment Agreement and including any portion of *Your Payment Obligation* that has been deferred and is not yet due) and the total amount of *Your* collateral that we hold.

A 0023



**Name of Entity: Type of Debt Rated:**

### Ratings at Effective Date

| S&P | Moody's | Unsecured Exposure at Effective Date |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

### Potential Future Ratings

| S&P | Moody's | Maximum Unsecured Exposure |
|---|---|---|
| AA- | Aa3 |  |
| A- | A3 |  |
| BBB | Baa2 |  |
| BB | Ba2 |  |

b. Other Financial Tests or Covenants:

## 3. Adjustment of Credit Fee

If the amount of unsecured exposure is changed because of *Your* delivery of additional collateral to us due to the requirements under item 2 above, the Credit Fee shall be adjusted on a pro-rata basis from the date of such delivery.

## SIGNATURES

IN WITNESS WHEREOF, *You* and we have caused this *Schedule* to be executed by the duly authorized representatives of each.

For us, **National Union Fire Insurance Company of Pittsburgh Pa.,** on behalf of itself and all its affiliates,

this **27** day of **January, 2004**

Signed by _____

Typed Name **Deborah Cuevas**

Title **Attorney - In - Fact**

For *You:* **ALTMAN SPECIALTY PLANTS INC**

this **27** day of *February* **2004**

Signed by *Robert Torrent*

Typed Name _____

Title *CFO*

A 0024

**2004 Addendum**

**to**

**PAYMENT AGREEMENT**

**By and between us**

**National Union Fire Insurance Company of Pittsburgh, Pa.**

On behalf of itself and all its affiliates including, but not limited to:

**American Home Assurance Company
The Insurance Company of the State of Pennsylvania
National Union Fire Insurance Company of Vermont
National Union Fire Insurance Company of Pittsburgh, Pa.
Commerce and Industry Insurance Company
Birmingham Fire Insurance Company
Illinois National Insurance Company
American International South Insurance Company
AIU Insurance Company
American International Pacific Insurance Company
Granite State Insurance Company
Landmark Insurance Company
National Union Fire Insurance Company of Louisiana
New Hampshire Insurance Company**

**(Company, "we", "us" or "our")**

**and *You*, our Client**

**Altman Specialty Plants, Inc.**

This Addendum is attached to and forms a part of the Payment Agreement entered into between Company and Client as of the 1st day of January 2005   .

1. The section entitled **WHICH WORDS HAVE SPECIAL MEANINGS IN THIS AGREEMENT?, 8. - Your Payment Obligation,** is deleted and replaced with the following:

   "**Your Payment Obligation**" means the amounts that *You* must pay us for the insurance and services in accordance with the terms of the *Policies*, this Agreement, and any similar primary casualty insurance policies and agreements with us incurred before the inception date hereof.  Such amounts shall include, but are not limited to, any of the following, including any portions thereof not yet due and payable:

   - the premiums and premium surcharges, taxes and assessments,
   - *Deductible Loss Reimbursements,*
   - any amount that we may have paid on *Your* behalf because of any occurrence, accident, offense, claim or suit with respect to which *you* are a self-insurer,
   - any other fees, charges, or obligations as shown in the *Schedule* or as may arise as *You* and we may agree from time to time.
   - costs and expenses incurred by any third party administrator.

2004 Addendum to Pmt. Agrmt.Doc



**Loss Reserves:** *Your Payment Obligation* includes any portion of the premiums, premium surcharges, *Deductible Loss Reimbursements* or other obligations that we shall have calculated on the basis of our reserves for *Loss* and *ALAE*. Those reserves shall include specific reserves on known *Losses* and *ALAE*, reserves for incurred but not reported *Losses* and *ALAE*, and reserves for statistically expected development on *Losses* and *ALAE* that have been reported to us. Any *Loss* development factors we apply in determining such reserves will be based on our actuarial evaluation of relevant statistical data including, to the extent available and credible, statistical data based upon *Your* cumulative *Loss* and *ALAE* history.

**Premium Tax on Deductibles:** If any claim is made by any state regulatory authority that the amounts which *You* have paid us as deductible reimbursements hereunder are premium, and thus subject to premium taxes and/or assessments, we will notify *You* of the existence of such claim. We will give *You* the opportunity of joining with us in any proceeding to contest such claim at *Your* own expense, or to contest such claim independently at *Your* own expense, or to pay *Us* the premium taxes and assessments. In the event a determination is made that said reimbursed amounts are taxable as premium or subject to assessments and *You* have not paid *Us* for these taxes and assessments in advance, *You* agree to pay the premium taxes and/or assessments and any related fines, penalties or interest that may be imposed as a result of the non-payment of premium taxes and/or assessments applicable to the *Policies*. If *You* have paid *Us* the taxes and/or assessments and *We* unsuccessfully contest the claim, *You* will not be liable to *Us* for any related fines, penalties or interest. If *We* successfully contest the claim, the taxes and/or assessments *You* paid in advance will be refunded to *You*. Any state in which premium tax on deductible reimbursements is already included in the premium charged hereunder will be identified on the *Schedule*.

2.  The section entitled: **WHAT ELSE SHOULD YOU KNOW ABOUT YOUR PAYMENT OBLIGATION?** is amended to include the following:

    We will contract with a Third Party Administrator (TPA) that you select for the adjustment of your claims under the Policies provided that we consent to your selection in advance. Our relationship with the TPA will be governed by a claims service agreement between us and the TPA, a copy of which will be made available to you upon your request. Any TPA you select must meet all of our licensing requirements. You will be responsible for any costs associated with any change from one TPA to another TPA that we or you make at any time. We will exercise good faith consistent with usual and customary commercial practice before we change one TPA to another TPA. Any amounts we pay to any TPA on your behalf shall be considered part of Your Payment Obligation, and shall include, but not be limited to the following: cost of adjusting expense at new TPA; costs or losses incurred as a result of claims handling conduct of prior TPA, including fines and penalties; fines and penalties for failure to submit accurate data to regulatory bureaus; data transfer expense; costs to retrieve or recreate information not properly maintained by prior TPA; and costs to set up new escrow account.

3.  The section entitled: **WHEN MUST *YOU* PAY *YOUR* PAYMENT OBLIGATION?** is amended to include the following:

2004 Addendum to Pmt. Agrmt.Doc

All payments are due by the due date stated in the *Schedule*, or as respects Additional Payments, within 30 days of the later of the Invoice, Notice or Bill date or *Your* evidenced receipt date of the Invoice, Notice or Bill for each such Additional Payment. If payment is not made when due, interest will accrue on the unpaid balance daily after the due date at the Prime Rate then in effect at Citibank, N.A., NY, NY, plus 150 basis points.

4. The section entitled: **WHAT ABOUT COLLATERAL?** is amended to include the following:

   Collateral Exchange:

   At our sole discretion we may approve Your substitution or exchange of one form or instrument of collateral for another. Any replacement collateral must be in a form and drawn on a bank or insurer acceptable to us. If the original collateral was in the form of cash on which interest was being earned, a substitution may result in a change to the interest rate. We will not approve your substitution or exchange of collateral if you are in Default of any of the terms of this Agreement or have triggered any applicable Financial Covenants, Tests or Minimum Credit Ratings shown in the Schedule.

5. The section entitled: **HOW WILL DISAGREEMENTS BE RESOLVED?, ARBITRATION PROCEDURES – How arbitrators must be chosen,** is deleted and replaced by the following:

   **How arbitrators must be chosen:** You must chose one arbitrator and we must choose another. They will choose the third. If you or we refuse or neglect to appoint an arbitrator within 30 days after written notice from the other party requesting it to do so, or if the two arbitrators fail to agree on a third arbitrator within 30 days of their appointment, either party may make application only to a court of competent jurisdiction in the City, County, and State of New York. Similarly, any action or proceeding concerning arbitrability, including motions to compel or to stay arbitration, may be brought only in a court of competent jurisdiction in the City, County, and State of New York.

   **IN WITNESS WHEREOF,** the parties hereto have caused this Addendum to be executed by their duly authorized representatives in _____, _____ this _____ day of _____, _____.

For **National Union Fire Insurance Company of Pittsburgh, Pa.,**

On behalf of itself and its affiliates first listed above:

In New York, New York,

This *8th* day of *April*, *2005*,

Signed by _~~signature~~_____

Typed Name: Howard Mead

Title: Attorney in Fact

2004 Addendum to Pmt. Agrmt.Doc

**For *You*, our Client**

In _____

This _14_ day of _February_ , _2005_

Signed by _Robert Forrest_

Typed Name/ _ROBERT FORREST_

Title _C.FO_

2004 Addendum to Pmt. Agrmt.Doc



# Schedule of Policies and Payments

## Paid Loss Payments Plan

Effective from 01/01/2005 to 01/01/2006

Annexed to the PAYMENT AGREEMENT

effective on <u>01/01/2005</u>

by and between us,

**National Union Fire Insurance Company of Pittsburgh, Pa.**

On behalf of itself and all its affiliates including, but not limited to:

**American Home Assurance Company**
**The Insurance Company of the State of Pennsylvania**
**National Union Fire Insurance Company of Pittsburgh, Pa.**
**Commerce and Industry Insurance Company**
**Birmingham Fire Insurance Company**
**Illinois National Insurance Company**
**American International South Insurance Company**
**AIU Insurance Company**
**American International Pacific Insurance Company**
**Granite State Insurance Company**
**Landmark Insurance Company**
**National Union Fire Insurance Company of Louisiana**
**New Hampshire Insurance Company**
and *You*, our Client

**ALTMAN SPECIALTY PLANTS INC**
**3742 BLUE BIRD CANYON ROAD**
**VISTA   CA  92084**

on behalf of *You* and all *Your* subsidiaries or affiliates except those listed below:

---

For our use only: 925202

---

Edition 1/99                  Paid Loss Payments Method                  Page 1 of 5
                              00/00/0000 004/03 9446791

A 0029

## List of Addressees for Notices and Other Purposes

### Your Address:

**Contact Name:** Ken Altman
**Company Name:** ALTMAN SPECIALTY PLANTS INC
**Street:** 3742 BLUE BIRD CANYON ROAD
**City:** VISTA          **State:** CA          **Zip:** 92084          **Phone:**

### Your Representative:

**Contact Name:** Jeanne Glidewell
**Company Name:** G S LEVINE INSURANCE SERVICES
**Street:** 3377 CARMEL MOUNTAIN ROAD
**City:** SAN DIEGO          **State:** CA          **Zip:** 92121          **Phone:** (858) 523-7512

### Our Account Executive:

**Contact Name:** Donna McAtee
**Company Name:** American International Companies
**Street:** 777 South Figueroa Street
**City:** Los Angeles          **State:** CA          **Zip:** 90017          **Phone:** 213-689-3745

### Our Law Representative:

**Contact Name:** Virgina Doty
**Company Name:** American International Companies
**Street:** 175 Water Street
**City:** New York          **State:** NY          **Zip:** 10038          **Phone:** 212-458-7015

### Remit Payments to:

**Contact Name:** Collections
**Company Name:** American International Companies
**Street:** PO Box 10472
**City:** Newark          **State:** NJ          **Zip:** 07193          **Phone:**

### Remit Collateral to:

**Contact Name:** Attn: Mr. Art Stillwell
**Company Name:** American International Group Inc.
**Street:** P.O.Box 923 Wall Street Station
**City:** New York          **State:** NY          **Zip:** 10268          **Phone:**

**Contact Name:**
**Company Name:**
**Street:**
**City:**          **State:**          **Zip:**          **Phone:**

**Contact Name:**
**Company Name:**
**Street:**
**City:**          **State:**          **Zip:**          **Phone:**

A 0030




## A. *Policies* and Other Agreements

Workers Compensation and Employers Liability Insurance

**WC 1241496 , WC 1241497.**

Commercial General Liability Insurance

Automobile Liability Insurance

Other Insurance

Other Agreements (Describe)

## B. Payment Plan:

### 1. Cash Deposit, Installments and Estimated Deferred Amounts

| Payment No. | Due Date | Provision for Expenses And Excess Losses(1) | Special Taxes and Surcharges | Annual Credit Fee | Provision for Limited Losses(2) | *Your Estimated Payment Obligation* |
|---|---|---|---|---|---|---|
| 1 | 01/01/2005 | $754,802 | $53,720 | $0 | $50,000 | $858,522 |
| | Subtotals | $754,802 | $53,720 | $0 | $50,000 | $858,522 |
| | DLP* | N/A | N/A | N/A | $2,323,000 | $2,323,000 |
| | DEP* | $0 | $0 | $0 | N/A | $0 |
| | Totals | $754,802 | $53,720 | $0 | $2,373,000 | $3,181,522 |

DLP means "Deferred Loss Provision". This is the estimated amount *You* must pay us as "Regular Loss Payments" and "Sizeable Loss Payments" described below.

DEP means "Deferred Expense Provision". This is an estimated amount that *You* must pay us as follows:

| Date | Type | Amount |
|---|---|---|
| N/A | N/A | N/A |

**Notes**

(1) "Provision for Expenses and Excess Losses" is a part of the Premium.

(2) "Provision for Limited Losses" includes provision for *Loss* within *Your Retention* (both Deductible and Loss Limit) and *Your* share of *ALAE*. Any "Deposit" in this column is the Claims Payment Deposit. Refer to definitions in the Payment Agreement.

### 2. Adjustments

The sums shown above are only estimated amounts. If *Your Payment Obligation* changes under the terms of the *Policies*, we will promptly notify *You* as such changes become known to us. All additional or return amounts relating thereto shall be payable in accordance with the terms of the Payment Agreement.

### 3. Additional Payments

On a **Monthly** basis, we will report to *You* the amounts of *Loss* and *ALAE* that we have paid under the *Policies*. *You* must subsequently pay us as described below.

**Regular Loss Payments:** Regular Loss Payments apply in addition to the amounts shown with Due Dates in Section B above.

We will bill *You* or withdraw funds from the Automatic Withdrawal Account (whichever Billing Method applies as shown below) at the periodic intervals stated above for the amounts of *Loss* within *Your Retention* and *Your* share of *ALAE* that we will have paid under the *Policies*, less all amounts *You* will have paid us to date as such Regular Loss Payments and the Sizable Loss Payments described below.

**Sizable Loss Payments:** If we must make payment for any *Loss* within *Your Retention* and *Your* share of *ALAE* arising out of a single accident, occurrence, offense, claim or suit that in combination exceeds the Sizable Loss Payment Amount of **$25,000**, *You* must pay us the amount of that payment of *Loss* within 10 days after

A 0031

 

*You* receive our bill.

**Billing Method:**

    ☒ Billing to

        ☒ *You* at *Your* address shown in the *Schedule*, or

        ☐ *Your* Representative at its address shown in the *Schedule*; or

    ☐ Automatic Withdrawal from the account described below.

If Automatic Withdrawal Account applies: Minimum Amount:

Name of Depository Institution:

Address:

Account Number:

## 4. Conversion

The **Conversion Date** for each *Policy* described in section A above shall be the date <u>66</u> months after the inception of such *Policy*.

On or shortly after the Conversion Date upon the presentation of our Invoice, *You* must pay in cash the entire unpaid amount of *Your Payment Obligation* for such *Policies*.

## C. Security Plan

### 1. Collateral

| Collateral on Hand (by Type) | Amount of Collateral |
|---|---|
| Escrow | $100,000 |
| LOCs | $3,037,252 |
| **Total Collateral on Hand** | $3,137,252 |

| Additional Collateral Required (by Type) | Amount of Collateral | Due Date |
|---|---|---|
| CLAIMS PAYMENT FUND | $50,000 | 01/01/2005 |
| STEP-UP LOC | $1,350,000 | 01/01/2005 |
| **Total Additional Collateral Required** | **$1,400,000** | |
| **Total Collateral Required** | **$4,537,252** | |

## 2. Financial Covenants, Tests, or Minimum Credit Ratings

We may require additional collateral from *You* in the event of the following:

a. Credit Trigger:

    i.   If the credit rating of the entity named below and for the type of debt described below, promulgated by Standard & Poor's Corporation ("S&P") or by Moody's Investors Services, Inc. ("Moody's"), drops below the grade shown respectively under S&P or Moody's, or

    ii.  If S&P or Moody's withdraws any such rating.

We may require and *You* must deliver such additional collateral according to the Payment Agreement up to an amount such that our unsecured exposure will not exceed the amount shown as the Maximum Unsecured Exposure next to such rating in the grid below.

"Unsecured exposure" is the difference between the total unpaid amount of *Your Payment Obligation* (including any similar obligation incurred before the inception of the Payment Agreement and including any portion of *Your Payment Obligation* that has been deferred and is not yet due) and the total amount of *Your* collateral that we hold.

A 0032

**Name of Entity: Type of Debt Rated:**

### Ratings at Effective Date

| S&P | Moody's | Unsecured Exposure at Effective Date |
|-----|---------|--------------------------------------|
|     |         |                                      |
|     |         |                                      |
|     |         |                                      |

### Potential Future Ratings

| S&P | Moody's | Maximum Unsecured Exposure |
|-----|---------|----------------------------|
| AA- | Aa3     |                            |
| A-  | A3      |                            |
| BBB | Baa2    |                            |
| BB  | Ba2     |                            |

b. Other Financial Tests or Covenants:

## 3. Adjustment of Credit Fee

If the amount of unsecured exposure is changed because of *Your* delivery of additional collateral to us due to the requirements under item 2 above, the Credit Fee shall be adjusted on a pro-rata basis from the date of such delivery.

## SIGNATURES

IN WITNESS WHEREOF, *You* and we have caused this *Schedule* to be executed by the duly authorized representatives of each.

For us, **National Union Fire Insurance Company of Pittsburgh Pa.,** on behalf of itself and all its affiliates,

this 25th day of *March*, 2005

Signed by _____

Typed Name **Howard Mead**

Title **Attorney In Fact**

For *You:* **ALTMAN SPECIALTY PLANTS INC**

this 22 day of MARCH, 2005

Signed by *Robert Forrest*

Typed Name ROBERT FORREST

Title CFO

A 0033

# Schedule of Policies and Payments

## Paid Loss Payments Plan

Effective from 01/01/2006 to 01/01/2007

Annexed to the PAYMENT AGREEMENT

effective on <u>01/01/2003</u>

by and between us,

**National Union Fire Insurance Company of Pittsburgh, Pa.**

On behalf of itself and all its affiliates including, but not limited to:

**American Home Assurance Company**
**The Insurance Company of the State of Pennsylvania**
**National Union Fire Insurance Company of Pittsburgh, Pa.**
**Commerce and Industry Insurance Company**
**Birmingham Fire Insurance Company**
**Illinois National Insurance Company**
**American International South Insurance Company**
**AIU Insurance Company**
**American International Pacific Insurance Company**
**Granite State Insurance Company**
**Landmark Insurance Company**
**National Union Fire Insurance Company of Louisiana**
**New Hampshire Insurance Company**
and *You*, our Client

**ALTMAN SPECIALTY PLANTS INC**
**3742 BLUE BIRD CANYON ROAD**
**VISTA   CA   92084**

on behalf of *You* and all *Your* subsidiaries or affiliates except those listed below:

For our use only: 928203

Edition 1/99

Paid Loss Payments Method

Page 1 of 5

A 0034

## List of Addressees for Notices and Other Purposes

**Your Address:**

Contact Name:
Company Name: ALTMAN SPECIALTY PLANTS INC
Street: 3742 BLUE BIRD CANYON ROAD
City: VISTA          State: CA          Zip: 92084     Phone:

**Your Representative:**

Contact Name: Jeanne Glidewell
Company Name: G S LEVINE INSURANCE SERVICES
Street: 3377 CARMEL MOUNTAIN ROAD
City: SAN DIEGO      State: CA          Zip: 92121     Phone: (858) 523-7512

**Our Account Executive:**

Contact Name: Donna R. McAtee
Company Name: American International Companies
Street: 777 S. Figueroa Street
City: Los Angeles    State: CA          Zip: 90017     Phone: 213-689-3746

**Our Law Representative:**

Contact Name: Virginia Doty
Company Name: American International Companies
Street: 175 Water Street
City: New York       State: NY          Zip: 10058     Phone: 212-458-7083

**Remit Payments to:**

Contact Name: Collections
Company Name: American International Companies
Street: PO Box 10472
City: Newark         State: NJ          Zip: 07193     Phone:

**Remit Collateral to:**

Contact Name: Attn: Mr. Art Stillwell
Company Name: American International Group Inc.
Street: P.O.Box 923 Wall Street Station
City: New York       State: NY          Zip: 10268     Phone:

Contact Name:
Company Name:
Street:
City:                State:             Zip:           Phone:

Contact Name:
Company Name:
Street:
City:                State:             Zip:           Phone:

A 0035

## A. *Policies* and Other Agreements

Workers Compensation and Employers Liability Insurance

**WC 1241496 , WC 1241497 , WC 5728746.**

Commercial General Liability Insurance

Automobile Liability Insurance

Other Insurance

Other Agreements (Describe)

## B. Payment Plan:

### 1. Cash Deposit, Installments and Estimated Deferred Amounts

| Payment No. | Due Date | Provision for Expenses And Excess Losses(1) | Special Taxes and Surcharges | Annual Credit Fee | Provision for Limited Losses(2) | *Your Estimated Payment Obligation* |
|---|---|---|---|---|---|---|
| 1 | 01/01/2008 | $638,904 | $44,920 | $0 | $0 | $683,824 |
| | Subtotals | $638,904 | $44,920 | $0 | $0 | $683,824 |
| | DLP* | N/A | N/A | N/A | $1,300,000 | $1,300,000 |
| | DEP* | $0 | $0 | $0 | N/A | $0 |
| | Totals | $638,904 | $44,920 | $0 | $1,300,000 | $1,983,824 |

DLP means "Deferred Loss Provision". This is the estimated amount *You* must pay us as "Regular Loss Payments" and "Sizable Loss Payments" described below.

DEP means "Deferred Expense Provision". This is an estimated amount that *You* must pay us as follows:

| Date | Type | Amount |
|---|---|---|
| N/A | N/A | |
| | | N/A |

**Notes**

(1) "Provision for Expenses and Excess Losses" is a part of the Premium.

(2) "Provision for Limited Losses" includes provision for *Loss* within *Your Retention* (both Deductible and Loss Limit) and *Your* share of *ALAE*. Any "Deposit" in this column is the Claims Payment Deposit. Refer to definitions in the Payment Agreement.

### 2. Adjustments

The sums shown above are only estimated amounts. If *Your Payment Obligation* changes under the terms of the *Policies*, we will promptly notify *You* as such changes become known to us. All additional or return amounts relating thereto shall be payable in accordance with the terms of the Payment Agreement.

### 3. Additional Payments

On a __Monthly__ basis, we will report to *You* the amounts of *Loss* and *ALAE* that we have paid under the *Policies*. *You* must subsequently pay us as described below.

**Regular Loss Payments:** Regular Loss Payments apply in addition to the amounts shown with Due Dates in Section B above.

We will bill *You* or withdraw funds from the Automatic Withdrawal Account (whichever Billing Method applies as shown below) at the periodic intervals stated above for the amounts of *Loss* within *Your Retention* and *Your* share of *ALAE* that we will have paid under the *Policies*, less all amounts *You* will have paid us to date as such Regular Loss Payments and the Sizable Loss Payments described below.

**Sizable Loss Payments:** If we must make payment for any *Loss* within *Your Retention* and *Your* share of *ALAE* arising out of a single accident, occurrence, offense, claim or suit that in combination exceeds the Sizable Loss Payment Amount of __$25,000.__, *You* must pay us the amount of that payment of *Loss* within 10 days after

A 0036

*You receive our bill.*

**Billing Method:**

☒ Billing to

☒ You at *Your* address shown in the *Schedule*, or

☐ *Your* Representative at its address shown in the *Schedule*; or

☐ Automatic Withdrawal from the account described below.

If Automatic Withdrawal Account applies: Minimum Amount:

Name of Depository Institution:

Address:

Account Number:

## 4. Conversion

The **Conversion Date** for each *Policy* described in section A above shall be the date __66__ months after the inception of such *Policy*.

On or shortly after the Conversion Date upon the presentation of our invoice, *You* must pay in cash the entire unpaid amount of *Your Payment Obligation* for such *Policies*.

## C. Security Plan

### 1. Collateral

| Collateral on Hand (by Type) | Amount of Collateral |
|---|---|
| Escrow | $150,000 |
| LOCs | $4,724,752 |
| Total Collateral on Hand | $4,874,752 |

| Additional Collateral Required (by Type) | Amount of Collateral | Due Date |
|---|---|---|
| N/A | N/A | |
| Total Additional Collateral Required | $0 | |
| Total Collateral Required | $4,874,752 | |

### 2. Financial Covenants, Tests, or Minimum Credit Ratings

We may require additional collateral from *You* in the event of the following:

a. Credit Trigger:

   i. If the credit rating of the entity named below and for the type of debt described below, promulgated by Standard & Poor's Corporation ("S&P") or by Moody's Investors Services, Inc. ("Moody's"), drops below the grade shown respectively under S&P or Moody's, or

   ii. If S&P or Moody's withdraws any such rating.

We may require and *You* must deliver such additional collateral according to the Payment Agreement up to an amount such that our unsecured exposure will not exceed the amount shown as the Maximum Unsecured Exposure next to such rating in the grid below.

"Unsecured exposure" is the difference between the total unpaid amount of *Your Payment Obligation* (including any similar obligation incurred before the inception of the Payment Agreement and including any portion of *Your Payment Obligation* that has been deferred and is not yet due) and the total amount of *Your* collateral that we hold.

Name of Entity:  Type of Debt Rated:

A 0037

### Ratings at Effective Date

| S&P | Moody's | Unsecured Exposure at Effective Date |
|-----|---------|--------------------------------------|
|     |         |                                      |
|     |         |                                      |
|     |         |                                      |

### Potential Future Ratings

| S&P | Moody's | Maximum Unsecured Exposure |
|-----|---------|----------------------------|
| AA- | Aa3     |                            |
| A-  | A3      |                            |
| BBB | Baa2    |                            |
| BB  | Ba2     |                            |

b.  Other Financial Tests or Covenants:

### 3. Adjustment of Credit Fee

.If the amount of unsecured exposure is changed because of *Your* delivery of additional collateral to us due to .the requirements under Item 2 above, the Credit Fee shall be adjusted on a pro-rata basis from the date of such delivery.

## SIGNATURES

IN WITNESS WHEREOF, *You* and we have caused this *Schedule* to be executed by the duly authorized representatives of each.

For us, **National Union Fire Insurance Company of Pittsburgh Pa.,** on behalf of itself and all its affiliates, this _10th_ day of _April_ , _2006_
Signed by _[signature]_
Typed Name **Howard Mead**
Title **Attorney In Fact**

For You: **ALTMAN SPECIALTY PLANTS INC**

this _10_ day of _April_ , _2006_
Signed by _Robert Forrest_
Typed Name _)_
Title _CFO_

A 0038

**EXHIBIT B**

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
AMERICAN HOME ASSURANCE COMPANY

and DOES 1 through 50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ALTMAN SPECIALTY PLANTS, INC.

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

FEB 14 2008

ALAN SLATER, Clerk of the Court

BY: D. DUNNING , DEPUTY

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

30-2008

| The name and address of the court is: *(El nombre y dirección de la corte es):* | **CASE NUMBER:** *(Número del Caso):* 00 102696 |
|---|---|
| ORANGE COUNTY SUPERIOR COURT | |
| 700 Civic Center Drive West | |
| same as above | |
| Santa Ana, CA 92701 | |
| CENTRAL JUSTICE CENTER | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
NICHOLAS P. ROXBOROUGH, ESQ. (SBN 113540)    (818) 992-9999    (818) 992-9991
ROXBOROUGH, POMERANCE & NYE LLP
5820 Canoga Avenue, Suite 250
Woodland Hills, CA 91367

**JUDGE KIRK H. NAKAMURA**
DEPT. C56

| DATE: FEB 14 2008 | ALAN SLATER | |
| *(Fecha)* | Clerk, by DANIELLE DUNNING | , Deputy |
| | *(Secretario)* | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED: You are served**
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [✗] on behalf of *(specify):* American Home Assurance Company

    under: [✗] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
    [ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
    [ ] CCP 416.40 (association or partnership)    [ ] CCP 416.90 (authorized person)
    [ ] other *(specify):*
4. [✗] by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions
Plus

Page 1 of 1
Code of Civil Procedure §§ 412.20, 465

COMP 0001

1 | Nicholas P. Roxborough, Esq. (SBN. 113540)
2 | Erin M. LaBrache, Esq. (SBN 195655)
  | Anthony S. Khoury, Esq. (SBN 236326)
3 | **ROXBOROUGH, POMERANCE & NYE LLP**
  | 5820 Canoga Avenue, Suite 250
  | Woodland Hills, California 91367
4 | Telephone: (818) 992-9999

5 | Attorneys for Plaintiff,
6 | ALTMAN SPECIALTY PLANTS, INC.

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

FEB 14 2008

ALAN SLATER, Clerk of the Court

BY: _D. DUNNING_ , DEPUTY

7

8

9 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

10 | COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

30-2008

11 | ALTMAN SPECIALTY PLANTS, INC.

12 |                       Plaintiff,          CASE NO. 0 0 1 0 2 6 9 6

13 | vs.                                        **COMPLAINT FOR:**

14 | AMERICAN HOME ASSURANCE               1. **BREACH OF CONTRACT;**
15 | COMPANY, and DOES 1 through 50,
   | inclusive                              2. **TORTIOUS BREACH OF THE
16 |                                            IMPLIED COVENANT OF GOOD
   |                                            FAITH AND FAIR DEALING;**
17 |                       Defendants.
   |                                         3. **DECLARATORY RELIEF; AND**
18
   |                                         4. **UNFAIR BUSINESS PRACTICES
19 |                                            IN VIOLATION OF BUSINESS &
   |                                            PROFESSIONS CODE SECTION
20 |                                            17200, ET SEQ.**

21

22 |                                         **JUDGE KIRK H. NAKAMURA
   |                                         DEPT. C56**

23 | Plaintiff ALTMAN SPECIALTY PLANTS, INC. alleges against defendants
24 | AMERICAN HOME ASSURANCE COMPANY and DOES 1 through 50, inclusive, as follows:
25 | ///
26 | ///
27 | ///
28 | ///

1
**COMPLAINT**

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

1.     Plaintiff ALTMAN SPECIALTY PLANTS, INC., a California corporation., (hereinafter referred to as "ALTMAN") is, and at all times relevant to this action was, a corporation organized and existing under the laws of the State of California, and is, and at all times relevant to this action was, operating in the State of California, County of San Diego.

2.     ALTMAN is informed and believes and thereon alleges that, defendant, AMERICAN HOME ASSURANCE COMPANY (hereinafter referred to as "AMERICAN HOME") is a member company of American International Group, Inc. ("AIG"), is a New York corporation authorized to conduct and conducting business in the State of California. AMERICAN HOME is engaged in the business of writing workers' compensation insurance. AMERICAN HOME is a nationwide AIG corporation and has a substantial presence in California, subjecting it to the jurisdiction of the California courts. Out of approximately 225 insurers that wrote workers' compensation insurance in California during 2003, AMERICAN HOME ranked as the 4th top seller with earned premium in excess of $278,985,476. AMERICAN HOME's California market share rose to 2nd out of 204 insurers by 2006, with earned premium in excess of $608,091,626.

3.     Furthermore, AIG has at least 90 different offices across California. In fact, AMERICAN HOME managed and/or administered most, if not all, of the workers' compensation claims made under ALTMAN's workers' compensation insurance policies in its South Coast Metro office, located in Orange County, California.

4.     Based on the shear volume of premium written in California, and its noticeable physical presence, AMERICAN HOME has clearly availed itself to the jurisdiction of California.

5.     Except as otherwise alleged, ALTMAN is not currently aware of the true names and capacities of the Defendants designated herein as DOES 1 through 50, inclusive. As such, ALTMAN will hereafter seek leave of court to amend this Complaint in order to allege the true names and capacities of each such Defendant when such information is ascertained.

6.     ALTMAN is informed and believes and thereon alleges that at all times herein mentioned AMERICAN HOME and DOES 1 through 50, inclusive (hereinafter jointly referred

COMP 0003

1   to as "DEFENDANTS" unless specified otherwise), are each responsible in some manner for the
2   transactions, events and occurrences herein alleged and that damages herein alleged were
3   proximately caused thereby.

4       7.    ALTMAN is informed and believes and thereon alleges that at all times herein
5   mentioned, DEFENDANTS, and each of them, were the agents, joint venturers, trustees,
6   servants, partners, alter-egos, parent corporations, subsidiaries, affiliates, contractors, and/or
7   employees of each of the remaining DEFENDANTS, and that the acts and/or omissions herein
8   alleged were done by them, acting individually, through such capacity or through the scope of
9   their authority, and that said conduct was thereafter ratified by the remaining DEFENDANTS.

10       8.    ALTMAN is, among other things, a grower and wholesale nursery business
11   encompassing over 290 acres in three states. It supplies plant programs to large retailers with
12   point of purchase materials, merchandising and a large distribution system that covers the United
13   States. The cost of workers' compensation insurance is an extremely important component of
14   ALTMAN's business operations.

15       9.    ALTMAN procured four workers' compensation policies from DEFENDANTS.
16   The policy periods are as follows:

17       A.    January 1, 2003 to January 1, 2004 ("2003 Policy");
18       B.    January 1, 2004 to January 1, 2005 ("2004 Policy");
19       C.    January 1, 2005 to January 1, 2006; and ("2005 Policy");
20       D.    January 1, 2006 to January 1, 2007 ("2006 Policy").

21       10.    Attached hereto and incorporated herein by this reference are true and correct
22   copies of the 2003 Policy, 2004 Policy, 2005 Policy, and 2006 Policy as **Exhibits "A," "B,"**
23   **"C", and "D"** respectively. Except as otherwise alleged herein, the 2003 Policy, the 2004
24   Policy, the 2005 Policy, and the 2006 Policy are hereinafter collectively referred to as the "WC
25   Policies."

26       11.    The WC Policies covered workers' compensation claims made in California. The
27   2003 Policy required ALTMAN to pay a deductible on claims made under said policy up to the
28   first $250,000 for each person and per accident, and a program aggregate limit of $1,996,260.

COMP 0004

1  The 2004 Policy required ALTMAN to pay a deductible on claims made under said policy up to
2  the first $500,000 for each person and per accident, and a program aggregate limit of $4,000,000.
3  The 2005 Policy required ALTMAN to pay a deductible on claims made under said policy up to
4  the first $500,000 for each person and per accident, and a program aggregate limit of $4,500,000.
5  The 2006 Policy required ALTMAN to pay a deductible on claims made under said policy up to
6  the first $500,000 for each person and per accident, and a program aggregate limit of $4,000,000.
7  These are what are known in the industry as "Large Deductible" policies.  Large Deductible
8  policies are potentially attractive to employers like ALTMAN because the premium paid to the
9  insurer is substantially less than with more traditional forms of insurance (*i.e.,* a guaranteed cost
10  program) in which the insurer pays all claims.

11      12.    Under ALTMAN's Large Deductible WC Policies, amounts paid on claims under
12  the deductible amount are paid by DEFENDANTS, but reimbursed by ALTMAN on a monthly
13  basis.  Any amounts paid on claims up to the deductible amount on the WC Policies, therefore,
14  are ALTMAN's money.  DEFENDANTS billed and continue to bill ALTMAN monthly for
15  these amounts.

16      13.    Additionally, in consideration for DEFENDANTS providing the insurance,
17  ALTMAN paid all premiums due for the WC Policies.  Furthermore, in order to obtain the WC
18  Policies, DEFENDANTS required that ALTMAN deliver a letter of credit in the amount of
19  $4,387,253 as of January 1, 2005 to purportedly cover ALTMAN's obligations under the WC
20  Policies. The WC Policies and/or the parties' custom and practice provide that DEFENDANTS
21  would review the amount of the letter of credit at least annually to determine the reasonableness
22  of the letter of credit for all policies and all policy periods.  In addition, pursuant to the WC
23  Policies and/or the parties' custom and practice, DEFENDANTS agreed to make appropriate
24  adjustments to the letter of credit based on reasonable expected losses and loss adjustment
25  expenses.  ALTMAN is informed and believes and thereon alleges that the total outstanding
26  expected losses and loss adjustment expenses arising out of the WC Policies are less than
27  $1,300,000.  Yet, DEFENDANTS continue to require and hold in excess of $2,500,000 in a
28  letter of credit from ALTMAN.

14.    ALTMAN alleges that, unlike any other type of insurance policy, the reserves that workers' compensation insurance carriers, such as DEFENDANTS, place on each individual claim, the amount paid out under a claim, and the manner in which a carrier handles and administers the claim, inexorably controls the amount ALTMAN is required to pay in premiums to DEFENDANTS and other subsequent carriers.

15.    ALTMAN is informed and believes and thereon alleges that by virtue of the WC Policies, DEFENDANTS stand in ALTMAN's shoes as its agent with regard to each claim made under the WC Policies. ALTMAN further alleges that a special relationship exists between an insured and insurer akin to a fiduciary duty, and that implied in this relationship is a covenant that neither party may act to deprive the other of the benefits of the contract.

16.    ALTMAN is informed and believes and thereon alleges that DEFENDANTS mishandled, overpaid and over reserved claims made under ALTMAN's WC Policies in such a way as to artificially increase ALTMAN's premiums it paid to DEFENDANTS in the manner detailed herein.    Moreover, because of the nature of the Large Deductible policies, the mishandling, overpayments, and over-reserving also directly caused monetary damages to ALTMAN on a dollar for dollar basis.

17.    ALTMAN is informed and believes and thereon alleges that DEFENDANTS failed and/or refused to properly comply with California Labor Code Section 3762, which provides in relevant part as follows: "the insurer shall discuss all elements of the claims file that affect the employer's premium with the employer, and shall supply copies of the documents that affect the premium."

18.    As described herein, ALTMAN is informed and believes, and thereon alleges, that DEFENDANTS breached the terms of the WC Policies.    The breaches include, but are not limited to, the following:

A.    Failing and/or refusing to reasonably investigate the compensability and/or nature and extent of claims;

B.    Failing and/or refusing to provide meaningful access to relevant medical information;

COMP 0006

C.    Failing to accurately and reasonably set reserves;

D.    Failing and/or refusing to provide a good faith defense on behalf of ALTMAN on those claims where defenses existed and should have been pursued;

E.    Failing to reasonably manage and adjust claims;

F.    Failing and/or refusing to make appropriate adjustments to the letter of credit;

19.    ALTMAN is informed and believes, and thereon alleges, that the breaches referenced in the preceding paragraph are consistent with the California Department of Insurance's audit findings of DEFENDANTS' performance during the relevant time period.

20.    ALTMAN is informed and believed and thereon alleges that South Coast Metro office's handling and administration of workers' compensation claims has been the subject of numerous complaints by brokers as well as other members of the insurance industry.

21.    ALTMAN is informed and believes, and thereon alleges, that the breaches referenced in the paragraph 16 also constitute tortious breaches of the implied covenant of good faith and fair dealing by DEFENDANTS.

22.    ALTMAN is informed and believes and thereon alleges that DEFENDANTS have consistently created obstacles, including, but not limited to, the obstacles described in the preceding paragraphs, in order to cover up their breaches, as well as their acts and/or omissions which constitute their tortious breaches of the implied covenant of good faith and fair dealing.

23.    The DEFENDANTS' actions and/or inactions described above demonstrate DEFENDANTS' pattern and practice of mishandling ALTMAN's claims, all to ALTMAN's financial detriment and DEFENDANTS' profit. As a direct result of DEFENDANTS' improper claims handling practices and/or DEFENDANTS' practice of over-paying and over-reserving claims, ALTMAN has had to pay, and continues to have to pay, excessive amounts to DEFENDANTS pursuant to the WC Policies and has had to furnish excessive amounts of collateral, which has not been adjusted in a proper manner. ALTMAN is informed and believes and thereon alleges that the amount of damages it has suffered and continues to suffer as a result of the acts of DEFENDANTS as described above exceeds $500,000.

## FIRST CAUSE OF ACTION

**(Breach of Contract Against Defendants AMERICAN HOME and Does 1 through 50)**

24.    ALTMAN incorporates herein by this reference, as though fully set forth in this Cause of Action, each and every allegation contained in Paragraphs 1 through 23, inclusive, of this Complaint as if set forth herein in full.

25.    ALTMAN and DEFENDANTS entered into the 2003 WC Policy, 2004 WC Policy, 2005 WC Policy, and 2006 WC Policy (*see* Exhibits "A", "B", "C", and "D") whereby ALTMAN agreed to purchase insurance covering workers' compensation.    In addition, DEFENDANTS agreed to administer said Policies consistent with claims handling instructions. DEFENDANTS breached the WC Policies by engaging in the behavior as described in this Complaint, including, but not limited to, mishandling claims made under the WC Policies, over-reserving claims made under the WC Policies, over paying on claims made under the WC Policies, failing to reasonably and timely investigate claims made under the WC Policies, failing to provide adequate legal counsel for purposes of defending ALTMAN against the claims, failing to communicate with ALTMAN before setting reserves, adjusting reserves, and/or settling claims, failing to comply with Labor Code Section 3762, and failing to properly adjust the letter of credit.

26.    ALTMAN has performed all terms of the WC Policies except for those whose performance has been excused by DEFENDANTS' conduct.

27.    As a proximate result of DEFENDANTS' breaches of the WC Policies, ALTMAN has suffered and continues to suffer losses in an amount within the jurisdictional limits of this Court.

## SECOND CAUSE OF ACTION

**(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing Against Defendants AMERICAN HOME and Does 1 through 50)**

28.    ALTMAN incorporates herein by this reference, as though fully set forth in this Cause of Action, each and every allegation contained in Paragraphs 1 through 27, inclusive, of this Complaint as if set forth herein in full.

COMP 0008

29.   The covenant of good faith and fair dealing is implied by law in every contract to protect each party's right to receive the benefits of the contract.  As a result of engaging in the conduct set forth in this Complaint, DEFENDANTS have denied ALTMAN of the benefits of the WC Policies, and thus, breached the implied covenant of good faith and fair dealing by having engaged and continuing to engage in the following acts and/or omissions which are implied obligations under the WC Policies:

A.   Failing and/or refusing to reasonably investigate the compensability and/or nature and extent of claims;

B.   Failing and/or refusing to provide meaningful access to relevant medical information;

C.   Failing to accurately and reasonably set reserves;

D.   Failing and/or refusing to provide a good faith defense on behalf of ALTMAN on those claims where defenses existed and should have been pursued;

E.   Failing to reasonably manage and adjust claims;

F.   Failing and/or refusing to make appropriate adjustments to the letter of credit;

30.   ALTMAN is informed and believes and thereon alleges that DEFENDANTS mishandled, overpaid and over-reserved claims made under the WC Policies in such a way as to artificially increase ALTMAN's financial obligations in the manner detailed above.

31.   ALTMAN is informed and believes and thereon alleges that DEFENDANTS have committed further acts and/or omissions in violation of their duty of good faith and fair dealing. These acts and/or omissions are presently unknown to ALTMAN and may be discovered by ALTMAN during the course of this litigation.

32.   As a proximate result of DEFENDANTS' conduct, as set forth above, ALTMAN has suffered general and special damages which include having to pay and being forced to pay unnecessarily increased losses as well as increased amounts of collateral, and have also had to incur expenses and costs to hire outside consultants, experts and attorneys to assist ALTMAN in obtaining these benefits under the WC Policies.

COMP 0009

33.    ALTMAN further alleges that the conduct of DEFENDANTS, as set forth above, was carried out in bad faith, was malicious, fraudulent, and oppressive, and evidences a complete disregard for ALTMAN's interests and an intent to injure, harass, vex and annoy ALTMAN. Under the circumstances described above, ALTMAN alleges that DEFENDANTS' conduct constitutes despicable conduct as defined in California Civil Code Section 3294 and established common law, thus entitling ALTMAN to recover punitive damages in an amount appropriate to punish or to set an example of DEFENDANTS, and each of them.  ALTMAN further alleges that DEFENDANTS at all times acted through their officers, directors and employees and that they had advance knowledge of the damage being caused to ALTMAN and that DEFENDANTS approved, ordered, instructed, supervised and controlled the conduct of their officers, directors and employees such as to constitute a ratification of the conduct of said officers, directors and employees.  Accordingly, pursuant to the doctrine of Respondeat Superior, DEFENDANTS are liable for punitive damages as prayed for herein.

## THIRD CAUSE OF ACTION

**(Declaratory Relief Against Defendants AMERICAN HOME and Does 1 through 50)**

34.    ALTMAN incorporates herein by this reference, as though fully set forth in this Cause of Action, each and every allegation contained in Paragraphs 1 through 33, inclusive, of this Complaint as if set forth herein in full.

35.    By reason of ALTMAN's allegations set forth in the preceding Paragraphs, particularly that the first $250,000 to $500,000 of each workers' compensation claim is paid by ALTMAN, a controversy has arisen and now exists between ALTMAN and DEFENDANTS. ALTMAN contends as follows:

A.    That pursuant to the nature and purpose for which the WC Policies were entered into, that AIG should have allowed ALTMAN to review and/or audit the administration of ALTMAN's workers' compensation claims so that ALTMAN could determine in order to determine the effect the handling, reserving and payment on those claim files had on amounts DEFENDANTS required ALTMAN to pay on the workers'

9
COMPLAINT

COMP 0010

1    compensation claims that were administered by DEFENDANTS under the WC Policies,

2    and;

3         B.    That DEFENDANTS' current policy of limiting and/or restricting access

4    to the claims files violates Labor Code Section 3762 and the spirit and terms of the WC

5    Policies.

6    36.    ALTMAN is informed and believes and thereon alleges that DEFENDANTS

7    dispute the aforesaid contentions and contend to the contrary.

8    37.    A judicial declaration of the rights and duties of the parties relative to the WC

9    Policies is necessary to resolve this controversy and to guide the future conduct of the parties.

10    **FOURTH CAUSE OF ACTION**

11    **(Unfair Business Practices in Violation of Business & Professions Code Sections 17200**

12    **Et Seq. Against Defendants AMERICAN HOME and Does 1 through 50)**

13    38.    ALTMAN incorporates herein by this reference, as though fully set forth in this

14    Cause of Action, each and every allegation contained in Paragraphs 1 through 37, inclusive, of

15    this Complaint as if set forth herein in full.

16    39.    ALTMAN has standing to bring this action pursuant to Business and Professions

17    Code § 17204 as it has suffered an injury in fact and has lost money and/or property as a result of

18    DEFENDANTS' unfair business practices.

19    40.    ALTMAN is informed and believes and thereon alleges that DEFENDANTS have

20    engaged in unfair business practices, which include, but are not limited to, the acts and/or

21    omissions detailed in paragraphs 18, 20, 25 and 29 – 30 of this Complaint.

22    41.    In light of DEFENDANTS' unfair business practices in violation of the law,

23    ALTMAN, pursuant to Business and Professions Code §17203, seeks from this Court a

24    permanent injunction, enjoining DEFENDANTS from: limiting and/or restricting ALTMAN'S

25    right to review and/or audit its own claim files; refusing to provide ALMAN'S representatives

26    with copies and/or originals of ALTMAN'S own claim files; engaging in a worse-case scenario

27    reserving practice; and setting reserves in a manner contrary to California law. ALTMAN also

28    requests that pursuant to Business & Professions Code §17203, this Court order restitution to

COMP 0011

1  ALTMAN of all amounts ALTMAN had to pay and will have to pay in increased premiums due
2  to DEFENDANTS' unfair business practices.

3       Additionally, as part of the injunctive relief prayed for herein, this Court should also
4  require DEFENDANTS to disclose to every policyholder affected by DEFENDANTS' practices
5  of: limiting and/or restricting their insureds' right to review and/or audit the insured's own claim
6  files; refusing to provide their insureds with copies and/or originals of the insured's own claim
7  files; engaging in a worse-case scenario reserving practice; and setting reserves in a manner
8  contrary to California law.

9      **WHEREFORE**, ALTMAN prays for judgment against DEFENDANTS, and each of them,
10  as follows:

11  **ON THE FIRST CAUSE OF ACTION**

12      1.    For general and special damages in a sum to be proven at trial with pre-judgment
13  and post-judgment interest thereon at the maximum rate permitted by law;

14  **ON THE SECOND CAUSE OF ACTION**

15      2.    For general and special damages in a sum to be proven at trial with pre-judgment
16  and post-judgment interest thereon at the maximum rate permitted by law;

17      3.    For recovery of all attorneys' and consultants' fees, costs and expenses incurred to
18  pursue and obtain the benefits of the WC Policies;

19      4.    For punitive and exemplary damages in an amount appropriate to punish or set an
20  example of DEFENDANTS;

21  **ON THE THIRD CAUSE OF ACTION**

22      5.    For a declaration adjudging that the items in dispute as set forth above are to be
23  determined in favor of ALTMAN;

24  **ON THE FOURTH CAUSE OF ACTION**

25      6.    For equitable relief as determined by this Court, including but not limited to, a
26  permanent injunction restraining DEFENDANTS from engaging in the unlawful and unfair
27  business practices as pled in this Complaint, an order requiring DEFENDANTS to engage in
28  reserving practices in accordance with California law, restitution to ALTMAN, in the form of an

11
COMPLAINT

1    order requiring DEFENDANTS to reimburse all amounts overpaid by ALTMAN due to

2    DEFENDANTS' unfair business practices, and an order requiring DEFENDANTS to disclose to

3    every policyholder affected by DEFENDANTS' practices of limiting their insureds' ability to

4    audit the insureds' own claim files and artificially increasing reserves contrary to California law;

5        7.      For recovery of all costs and attorneys' fees pursuant to Code of Civil Procedure

6    Section 1021.5;

7                     **ON ALL CAUSES OF ACTION**

8        8.      For all costs incurred by ALTMAN to date and to be incurred by ALTMAN

9    hereafter in connection with this action; and

10        9.      For such other and further relief as the court deems just and proper.

11

12    DATED: February 13, 2008       By:     ROXBOROUGH, POMERANCE & NYE LLP

13

14

15                        NICHOLAS P. ROXBOROUGH

                            ERIN M. LaBRACHE

16                        ANTHONY KHOURY

                           Attorneys for Plaintiff, ALTMAN SPECIALTY

17                        PLANTS, INC.

18

19

20

21

22

23

24

25

26

27

28

COMP 0013

EXHIBIT



A

COMP 0014

ISSUED BY THE STOCK INSURANCE COMPANY HEREIN CALLED THE COMPANY

AMERICAN HOME ASSURANCE COMPANY
13781

| AGENT NUMBER | POLICY NUMBER |
|---|---|
| 61342-0000 | WC 124-14-96 |
| | 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-00 |

INCORPORATED UNDER THE LAWS OF    NEW YORK
ITEM 1.    NAMED INSURED    MAILING ADDRESS    IDENTIFICATION NO.

ALTMAN SPECIALTY PLANTS, INC
3742 BLUE BIRD CANYON ROAD
VISTA, CA 92084-0000

SEE NAME AND ADDRESS SCHEDULE - WC990610
I.D# 3376106    CA UI#:

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY INFORMATION PAGE**

Member Companies of
American International Group

EXECUTIVE OFFICES:
70 PINE STREET, NEW YORK, N.Y. 10270

PRODUCERS NAME AND ADDRESS

G S LEVINE INSURANCE SERVICES
3377 CARMEL MOUNTAIN ROAD
SAN DIEGO, CA 92121-0000

INSURED IS
CORPORATION

PREVIOUS POLICY NUMBER
NEW

OTHER WORKPLACES NOT SHOWN ABOVE: SEE NAME AND ADDRESS SCHEDULE - WC990610

ITEM 2 | POLICY PERIOD 12:01 A.M. standard time at the insured's mailing address    FROM  01/01/03  TO  01/01/04

ITEM 3 | A. Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of the states listed here:

CA

B. Employers Liability Insurance: Part Two of the policy applies to the work in each state listed in Item 3.A. The limits of our liability under Part Two are:

| Bodily Injury by Accident | $ 1,000,000 | each accident |
| Bodily Injury by Disease | $ 1,000,000 | policy limit |
| Bodily Injury by Disease | $ 1,000,000 | each employee |

C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here:

NONE

ITEM 4 | The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code Number | Estimated Total Remuneration [X] Annual [ ] 3 Year | Rate Per $100 Of Remuneration | Estimated Premium [X] Annual [ ] 3 Year |
|---|---|---|---|---|
| SEE EXTENSION OF INFORMATION PAGE - WC7754 TAXES/ASSESSMENTS/SURCHARGES | | | | $40,277 |

| EXPENSE CONSTANT (EXCEPT WHERE APPLICABLE BY STATE) | $160 CA | | | |
| MINIMUM PREMIUM  $750  CA | | | TOTAL ESTIMATED PREMIUM | $1,713,707 |

If indicated below, interim adjustments of premium shall be made:

[ ] Semi-Annually  [ ] Quarterly  [ ] Monthly    DEPOSIT PREMIUM    $1,713,707

ENDORSEMENTS (FORM NUMBER)    SEE ATTACHED FORM SCHEDULE - WC990612

01/27/03 LOS ANGELES              05

Issue Date              Issuing Office              Authorized Representative    WC 00 00 01
39997

FORMS SCHEDULE

Policy Number: WC   124-14-96                          Effective Date:  01/01/2003

| | |
|---|---|
| WC000406 | PREMIUM DISCOUNT ENDORSEMENT |
| 78052 | PRIVACY POLICY |
| 55154WC | CALIFORNIA FRAUD ASSESSMENT |
| WC040002A | CA-ADMINISTRATION REVOLVING FUND ASMNT |
| WC040360 | CA EMPLOYERS LIAB COV AMENDATORY ENDT |
| WC040402 | CA MANDATORY RATE CHANGE ENDT |
| WC040407 | CA PREMIUM ADJUSTMENT ENDT |
| WC040415 | 2002 PREMIUM INCREASE ENDT - CALIFORNIA |
| WC990017 | CALIFORNIA CANCELLATION ENDORSEMENT |
| WC990407 | CA POLICY AMENDATORY ENDT |
| WC9904088 | CA NOTIF OF LOSS CONTROL SERVICES |
| WC990409 | CA POLICYHOLDER NOTICE - CIGA SURCHARGE |
| WC990410 | POLICYHOLDER NOTICE |
| WC990610 | NAMED INSUREDS/ADDRESSES |
| 64478-C | LARGE RISK RATING PLAN ENDORSEMENT |

**WC 99 06 12**
**(Ed. 1/97)**

# WORKERS COMPENSATION AND EMPLOYERS LIABILITY

## INSURANCE POLICY

National Union Fire Insurance
Company of Pittsburgh, Pa.

American Home Assurance Company

The Insurance Company of
The State of Pennsylvania

Birmingham Fire Insurance Company
of Pennsylvania

Commerce and Industry
Insurance Company



Member Companies of
American International Group, Inc.
EXECUTIVE OFFICES
70 PINE STREET
NEW YORK, N.Y. 10270

Coverage is provided by the Company designated on the Information Page
A Stock Insurance Company

---

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**
**QUICK REFERENCE**

|  | | BEGINNING ON PAGE |
| --- | --- | --- |
| Information Page | | 1 |
| **GENERAL SECTION** | | |
| A. | The Policy | 1 |
| B. | Who Is Insured | 1 |
| C. | Workers Compensation Law | 1 |
| D. | State | 1 |
| E. | Locations | 1 |
| **PART ONE—WORKERS COMPENSATION INSURANCE** | | |
| A. | How This Insurance Applies | 1 |
| B. | We Will Pay | 1 |
| C. | We Will Defend | 1 |
| D. | We Will Also Pay | 1 |
| E. | Other Insurance | 2 |
| F. | Payments You Must Make | 2 |
| G. | Recovery From Others | 2 |
| H. | Statutory Provisions | 2 |

THESE POLICY PROVISIONS WITH THE INFORMATION PAGE AND ENDORSEMENTS,
IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THIS POLICY.

*INCLUDES COPYRIGHT MATERIAL OF THE NATIONAL COUNCIL ON COMPENSATION
INSURANCE, USED WITH ITS PERMISSION.

COPYRIGHT 1983 NATIONAL COUNCIL ON COMPENSATION INSURANCE*

39638C(04/92)

WC 00 00 00 A (STANDARD)

## QUICK REFERENCE – CONTINUED

                                                        BEGINNING ON
                                                        PAGE

PART TWO - EMPLOYERS LIABILITY INSURANCE ................................. 2
    A.  How This Insurance Applies ........................................ 2
    B.  We Will Pay ........................................................ 2
    C.  Exclusions ......................................................... 3
    D.  We Will Defend ..................................................... 3
    E.  We Will Also Pay ................................................... 3
    F.  Other Insurance .................................................... 4
    G.  Limits of Liability ................................................ 4
    H.  Recovery From Others ............................................... 4
    I.  Action Against Us .................................................. 4
                                                                          4

PART THREE - OTHER STATES INSURANCE ..................................... 4
    A.  How This Insurance Applies ........................................ 4
    B.  Notice ............................................................. 4
                                                                          5

PART FOUR - YOUR DUTIES IF INJURY OCCURS ................................ 5
                                                                          5

PART FIVE - PREMIUM ..................................................... 5
    A.  Our Manuals ....................................................... 5
    B.  Classifications ................................................... 5
    C.  Remuneration ...................................................... 5
    D.  Premium Payments .................................................. 5
    E.  Final Premium ..................................................... 5
    F.  Records ........................................................... 5
    G.  Audit ............................................................. 6
                                                                          6

PART SIX - CONDITIONS ................................................... 6
    A.  Inspection ........................................................ 6
    B.  Long Term Policy .................................................. 6
    C.  Transfer of Your Rights and Duties ................................ 6
    D.  Cancellation ...................................................... 6
    E.  Sole Representative ............................................... 6
                                                                          6

IMPORTANT: This Quick Reference is **not** part of the Workers Compensation and Employers Liability Policy and does **not** provide coverage. Refer to the Workers Compensation and Employers Liability Policy itself for actual contractual provisions.

## PLEASE READ THE WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY CAREFULLY

ATTACH FORM AND ENDORSEMENTS (IF ANY) HERE

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows.

### GENERAL SECTION

**A. The Policy**

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

**B. Who Is Insured**

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

**C. Workers Compensation Law**

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

**D. State**

State means any state of the United States of America, and the District of Columbia.

**E. Locations**

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A states unless you have other insurance or are self-insured for such workplaces.

### PART ONE - WORKERS COMPENSATION INSURANCE

**A. How This Insurance Applies**

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.

2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

**B. We Will Pay**

We will pay promptly when due the benefits required of you by the workers compensation law.

**C. We Will Defend**

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

**D. We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1. reasonable expenses incurred at our request, but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

**WC 00 00 00 A**

COMP 0019

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

### E. Other Insurance

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

### F. Payments You Must Make

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct;

2. you knowingly employ an employee in violation of law;

3. you fail to comply with a health or safety law or regulation; or

4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

### G. Recovery From Others

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

### H. Statutory Provisions

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.

2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5. This insurance conforms to the parts of the workers compensation law that apply to:

   a. benefits payable by this insurance or;

   b. special taxes, payments into security or other special funds, and assessments payable by us under that law.

6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO - EMPLOYERS LIABILITY INSURANCE

### A. How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury

**WC 00 00 00 A**

COMP 0020

by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

## B.  We Will Pay

We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2. for care and loss of services; and

3. for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee;

provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

## C.  Exclusions

This insurance does not cover:

1. liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. bodily injury intentionally caused or aggravated by you;

6. bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions.

8. bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950), the Nonappropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws.

9. bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws.

10. bodily injury to a master or member of the crew of any vessel.

11. fines or penalties imposed for violation of federal or state law.

12. damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

## D.  We Will Defend

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

**WC 00 00 00 A**

COMP 0021

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

### E. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim proceeding, or suit we defend;

1. reasonable expenses incurred at our request; but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

### F. Other Insurance

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

### G. Limits of Liability

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1. Bodily Injury by Accident. The limit shown for "bodily injury by accident-each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury by Disease. The limit shown for "bodily injury by disease-policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease-each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3. We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

### H. Recovery From Others

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

### I. Actions Against Us

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability. The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

## PART THREE - OTHER STATES INSURANCE

### A. How This Insurance Applies

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as

though that state were listed in Item 3.A. of the Information Page.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the

WC 00 00 00 A

COMP 0022

Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

B.  **Notice**

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

## PART FOUR - YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1.  Provide for immediate medical and other services required by the workers compensation law.

2.  Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3.  Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4.  Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5.  Do nothing after an injury occurs that would interfere with our right to recover from others.

6.  Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE - PREMIUM

A.  **Our Manuals**

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

B.  **Classifications**

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

C.  **Remuneration**

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1.  All your officers and employees engaged in work covered by this policy; and

2.  All other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof

that the employers of these persons lawfully secured their workers compensation obligations.

D.  **Premium Payments**

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

E.  **Final Premium**

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is canceled, final premium will be determined in the following way unless our manuals provide otherwise.

1.  If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2.  If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short rate

WC 00 00 00 A

COMP 0023

cancellation table and procedure. Final premium will not be less than the minimum premium.

## F. Records

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

## G. Audit

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

## PART SIX - CONDITIONS

## A. Inspection

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

## B. Long Term Policy

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

## C. Transfer of Your Rights and Duties

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

## D. Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. Any of these provisions that conflicts with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

## E. Sole Representative

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancellation.

WC 00 00 00 A

COMP 0024

**In Witness Whereof,** the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

The Insurance Company
of The State of Pennsylvania

President
National Union Fire
Insurance Company of
Pittsburgh, PA

President
Commerce and Industry
Insurance Company

President
American Home
Assurance Company

President
Birmingham Fire Insurance
Company of Pennsylvania

Secretary
National Union Fire Insurance Company of Pittsburgh, PA
American Home Assurance Company
The Insurance Company of The State of Pennsylvania
Birmingham Fire Insurance Company of Pennsylvania
Commerce and Industry Insurance Company

WC 00 00 00 A                    7 of 7

COMP 0025

## STANDARD WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY EXTENSION FORM

| WC  124-14-96 | CALIFORNIA | 3376106 |
|---|---|---|
| Policy Prefix & No. | Schedule | INTRA/Independent State Risk ID |

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-00          ALTMAN SPECIALTY PLANTS, INC

| Item 4. Classification of Operations | | Code No. | Premium Basis | Rates | |
|---|---|---|---|---|---|
| Entries in this item, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | | | Estimated Total Annual Remuneration | Per $100 of Remuneration | Estimated Annual Premiums |
| RATING GROUP:  0001-01 | | | | | |
| NURSERIES-PROPAGATION AND CULTIVATION OF NURSERY STOCK | | 0005 | 13,700,000 | 12.92 | 1,770,040 |
| SALESPERSONS-OUTSIDE | | 8742 | 3,500,000 | 2.07 | 72,450 |
| CLERICAL OFFICE EMPLOYEES-N.O.C. | | 8810 | 1,900,000 | 1.78 | 33,820 |
| STATE OF CALIFORNIA TOTALS | | | | | |
| TOTAL CLASSIFICATION PREMIUM | | | | | 1,876,310 |
| TOTAL UNMODIFIED PREMIUM | | | | | 1,876,310 |
| EXPERIENCE PREMIUM      (ACTUAL) | 1.1400 | 9897 | | | 262,683 |
| MODIFIED STANDARD PREMIUM | | | | | 2,138,993 |
| UNDISCOUNTED PREMIUM | | | | | 2,138,993 |
| NEGOTIATED PREMIUM DISCOUNT | -19.89% | 0063 | | | -425,446 |
| DISCOUNTED PREMIUM | | | | | 1,713,547 |
| EXPENSE CONSTANT | | 0900 | | | 160 |
| TOTAL ESTIMATED PREMIUM | | | | | 1,713,707 |
| GUARANTEE ASSOCIATION ASSESS | 2.00% | 9713 | | | 34,274 |
| CA ADMIN REVOLVING FUND ASSESS | 0.1335% | 9683 | | | 2,288 |
| CA FRAUD ASSESSMENT | 0.2168% | 9682 | | | 3,715 |
| TOTAL DUE | | | | | 1,753,984 |
| EXPERIENCE RATING MODIFICATION = 1.14 | | | | | |

WC 7754 (Ed. 4-81)      See Name and Address Schedule – WC990610

## PREMIUM DISCOUNT ENDORSEMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need to completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2003          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC

By AMERICAN HOME ASSURANCE COMPANY

The premium for this policy and the policies, if any, listed in Item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in Items 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

Schedule

| 1. State | First $5,000 | Estimated Eligible Premium Next $95,000 | Next $400,000 | Balance |
|---|---|---|---|---|
| | | | | |

2.  Average percentage discount:                    19.89  %

3.  Other policies:  WC  124-14-97

4.  If there are no entries in Items 1, 2 and 3 of the Schedule, see Premium Discount Endorsement attached to your policy number:

WC 00 04 06          Countersigned by _____
(Ed. 4-84)
                                              Authorized Representative

## CALIFORNIA WORKERS COMPENSATION
## FRAUD ASSESSMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2003          forms a part of Policy No. WC     124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC

By AMERICAN HOME ASSURANCE COMPANY

In order to fund increased investigation and prosecution of Workers Compensation fraud, Senate Bill 1218, statutes of 1990, created the Workers Compensation Fraud Account with the Insurance Fund administered by the Insurance Commissioner. The proceeds of this fund include this annual assessment collected from all insured and self insured employers, and remitted by your insurance company to the Workers Compensation Fraud Account.

Surcharge Factor                              Surcharge Amount

1.002168                                      $3.715

55154WC (12-92)          Countersigned by _____

                                                        **Authorized Representative**

COMP 0028

**CALIFORNIA – ADMINISTRATION REVOLVING FUND ASSESSMENT**

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM 01/01/2003         forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC

By AMERICAN HOME ASSURANCE COMPANY

California Law requires insurers who provide Workers' Compensation insurance to collect an Administration Revolving Fund Assessment for each insured employer. The percentage, as determined by the Director of the Department of Industrial Relations, is applied to each insured employer's premium for the purpose of determining its share of the assessment to be paid. This surcharge amount is subject to adjustment at audit.

The Fund was established pursuant to the provisions of California Labor Code Section 62.5.

Your policy has been surcharged by the amount/percent stated below:

        SURCHARGE AMOUNT:      $2,288

        SURCHARGE PERCENT:  0.1335%

WC 04 00 02 A                Countersigned by _____
(Ed. 8-91)
                                                                          **Authorized Representative**

PAGE 1

**ENDORSEMENT**

This endorsement, effective 12:01 AM 01/01/2003

Forms a part of policy no.: WC    124-14-96

Issued to: ALTMAN SPECIALTY PLANTS, INC

By: AMERICAN HOME ASSURANCE COMPANY

| LOC NO. | NAME AND ADDRESS SCHEDULE | FEIN | UI # |
|---------|---------------------------|------|------|
| 0001 | ALTMAN SPECIALTY PLANTS, INC<br>2372 TAMARA LANE<br>SAN MARCOS, CA 92069-0000 | 330494942 | |
| 0002 | ALTMAN SPECIALTY PLANTS, INC<br>3361 VALLEY PASEO<br>SAN MARCOS, CA 92069-0000 | 330494942 | |
| 0003 | ALTMAN SPECIALTY PLANTS, INC<br>553 BUENA CREEK ROAD<br>SAN MARCOS, CA 92069-0000 | 330494942 | |
| 0004 | ALTMAN SPECIALTY PLANTS, INC<br>1516 MONTE VISTA DRIVE<br>VISTA, CA 92084-0000 | 330494942 | |
| 0005 | ALTMAN SPECIALTY PLANTS, INC<br>1974 FRIENDLY DRIVE<br>VISTA, CA 92084-0000 | 330494942 | |
| 0006 | ALTMAN SPECIALTY PLANTS, INC<br>2020 EDGEHILL ROAD<br>VISTA, CA 92084-0000 | 330494942 | |
| 0007 | ALTMAN SPECIALTY PLANTS, INC<br>3742 BLUE BIRD CANYON ROAD<br>VISTA, CA 92084-0000 | 330494942 | |
| 0008 | ALTMAN SPECIALTY PLANTS, INC<br>2124 EDGEHILL ROAD<br>VISTA, CA 92084-0000 | 330494942 | |
| 0009 | ALTMAN SPECIALTY PLANTS, INC<br>949 LA RUEDA<br>VISTA, CA 92084-0000 | 330494942 | |
| 0010 | ALTMAN SPECIALTY PLANTS, INC<br>20460 SPENCE ROAD<br>SALINAS, CA 93908-0000 | 330494942 | |

Issue Date: 01/27/03

Authorized Representative

WC990610 (Ed. 1-97)

COMP 0030

## LARGE RISK RATING PLAN ENDORSEMENT

### PART II. *SCHEDULE* of POLICIES and RATING VALUES

**Section 1. APPLICATION of this Endorsement**

RATING PERIOD    This endorsement applies to the period beginning 01/01/2003 and ending 01/01/2004.

The *Bases* of Premium, *Subject Losses*, Self-Insured Losses, Maximum Insurance Cost, Minimum Premiums and Premiums shown in Section 5, Section 6, Section 7 and Section 9 are estimated amounts for:

☐ the first year of the Rating Period, or ☒ the entire Rating Period.

POLICIES    This Endorsement applies to the policies described below, and to their replacements and renewals effective during the rating period.

If this Endorsement applies to a Construction Project, it applies only to the following: Not Applicable

a. Workers Compensation and Employers Liability Insurance policies:
   WC 1241496 , WC 1241497.

b. Commercial General Liability Insurance policies:

c. Automobile Liability Insurance policies:

d. Other Insurance policies(described):

**Section 2. Premiums for insurance on risks in states described below will be determined in accordance with the terms of the applicable policy other than this endorsement.**

| Kinds of Insurance | States |
|---|---|
| WC | FL |

**Section 3. *Allocated Loss Adjustment Expenses* Options**

| ALAE Option | Option C Excess % | Applies to |
|---|---|---|
| C | 100% | WC 1241496 , WC 1241497. |

COMP 0031

## LARGE RISK RATING PLAN ENDORSEMENT

Section 9. The Rating Values and Amounts shown below apply as the *Basis* of the *Final Premium* for the Policies described in Section 1 of this Part II.

If the Rating Period exceeds one year; and if the estimated *Bases* of Premium, Minimum Premiums and Premiums shown below apply only to the first year, on or about each anniversary of the beginning of the rating period, we will issue an extension of this Section to show the rating values and amounts for each subsequent year of the rating period.

### Item A. *Subject Premium*, part of *Final Premium*

| Line Items | Rates | Per | *Basis* Types | Estimated Basis | Minimum Premium | Estimated Premium |
|---|---|---|---|---|---|---|
| Expected Subject Losses | 0.0000 | 100 | ULT.LOSSES | 0 | $0 | $1,140,720 |
| Claims Service Fees | 0.0000 | 1 | FLAT | 0 | $0 | $47,466 |
| Loss Control Service | 0.0000 | 1 | FLAT | 0 | $0 | $15,000 |
| IntelliRisk | 0.0000 | 1 | FLAT | 0 | $0 | $14,500 |
| Program Expenses | 1.3075 | 100 | PAYROLL | 20,370,000 | $0 | $315,723 |

Subtotal excluding Premium Taxes $1,533,409

| | | | | | |
|---|---|---|---|---|---|
| | Premium Taxes: | 0.0000% | Average Tax Divisor: | 0.000000 | $0 |
| a. | Indicated Total *Subject Premium* | | | | $1,533,409 |
| b. | Expected Reimbursable or Deductible and Self-Insured Losses and *ALAE* | | | | $0 |
| c. | Indicated Subject Insurance Cost (a. + b.) | | | | $1,533,409 |
| d. | Maximum Subject Insurance Cost from Section 6. If N/A, show (c) | | | | $1,533,409 |
| e. | Estimated Total *Subject Premium* (a. - c. + d., but not less than $0 or more than a.) | | | | $1,533,409 |
| f. | Estimated Subject Insurance Cost (lesser of c. or d.) | | | | $1,533,409 |

### Item B. Non-*Subject Premium*, part of *Final Premium*

| Coverage Description | Rates | Per | *Bases* Types | Estimated Basis | Minimum Premium | Estimated Premium |
|---|---|---|---|---|---|---|
| Excess Premium-WC-The Entire Contract | 1.2196 | 100 | PAYROLL | 20,370,000 | $0 | $248,424 |

Estimated Total Non-*Subject Premiums* $248,424

### Item C. Summary of Expected Total Cost

| | Rates | Per | | Estimated Basis | Minimum Premium | Estimated Premium |
|---|---|---|---|---|---|---|
| Estimated *Final Premium* (Part A. item e. plus Part B Total) | | | | | | $1,781,833 |
| Expected Reimbursable or Deductible and Self-Insured Losses and *ALAE* (Part A. item b.) | | | | | | $0 |
| Surcharges: | 0.0000 | 1 | STANDARD PREMIUM | 0 | $0 | $40,358 |
| N/A | | | | | | $0 |
| N/A | | | | | | $0 |

EXPECTED TOTAL COST $1,822,191

COMP 0032

## AGGREGATE STOP AMENDMENT of the LARGE RISK RATING PLAN

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to the preparation of the policy.)

This Endorsement, effective 12:01 AM 01/01/2003 forms a part of Policy Number WC 1241496

Issued to ALTMAN SPECIALTY PLANTS, INC

By American Home Assurance Company

The Aggregate Stop Amount and the Aggregate Stop Limit, if any, shown in the *Schedule* below will be applied as explained in this endorsement to limit the amount of the *Subject Losses* that we will use to determine the *Final Premium*.

1  Excess of Adjusted Aggregate Stop Amount Excluded: If an Aggregate Stop Amount is shown in the *Schedule* below, we will not include more than the Adjusted Aggregate Stop Amount in the computation of the *Final Premium* under the terms of the Large Risk Rating Plan Endorsement, subject to the Aggregate Stop Limit described in paragraph 2 below. The Adjusted Aggregate Stop Amount will be the Aggregate Stop Amount shown in the *Schedule* below, less the following:

   a) all *Subject Losses* that you must reimburse us under any Loss Reimbursement or Deductible terms applicable to the policy covering the *Incurred Loss*, and

   b) if so stated in the *Schedule*, such amounts as are described in the *Schedule* that you have paid as self-insured losses.

   Adjustment: if an Adjustment Rate and an Adjustment *Basis* are shown in the *Schedule* below, the Aggregate Stop Amount shown in the *Schedule* below is only an estimate. The Aggregate Stop Amount will be finally determined by multiplying the Adjustment Rate by the final Adjustment *Basis* as determined by our audit of your books and records.

2  Excess of Aggregate Stop Limit Included: If an Aggregate Stop Limit is shown in the *Schedule*, that Limit is the most *Subject Losses* that, in combination,

   a) you do not have to reimburse us for under any Loss Reimbursement or Deductible terms applicable to the policy covering the *Incurred Loss*, and

   b) we will exclude from this item 1 because of the application of item 2 above.

Neither the Aggregate Stop Amount nor the Aggregate Stop Limit will be reduced on account of the cancellation of any policy to which this endorsement applies.

Refer to the Worksheet as an aid in the determination of the amount of the *Subject Losses* to be included in calculating the *Final Premium*.

### SCHEDULE

#### Aggregate Stop Amount and Limit

The Aggregate Stop Amount and the Aggregate Stop Limit apply to the ☐ first year of, or ☒ entire rating period.

a.  Aggregate Stop Amount, subject to Aggregate Stop Limit and adjustable on the *Basis* $1,996,260 and rate shown below.

b.  Aggregate Stop Limit                                                                              $0

c.  *Basis* of Adjustment Amount:      PAYROLL        Per     100        Estimated *Basis* $20,370,000

                                                                           Adjustment Rate:      9.8000

---

Form 64478C AGG (1/99)     Copyright 1999 American International Group, Inc.     Page 1 of 2

COMP 0033

## AGGREGATE STOP AMENDMENT of the LARGE RISK RATING PLAN

Self Insured or Uninsured Losses: Losses you incur to which no insurance applies under the policies listed in Section 1 of the *Schedule* of the Large Risk Rating Plan Endorsement will NOT be included in determining whether or when the Aggregate Stop Amount or the Aggregate Stop Limit have been reached, except as described herein:

Exceptions: None

### Worksheet to determine *Subject Losses*

*Incurred Losses* to be included in calculating the *Final Premium* are determined according to the following formula.

A. Determine the estimated ultimate or the final value of each loss and its *Allocated Loss Adjustment Expenses* under the policies listed in Section 1, and (if the Aggregate Stop Amount includes losses with respect to which you are a self-insurer) under your self-insurance.

B. Apply the loss limitations, reimbursable or deductible amounts, and self-insured retention amounts and allocated loss adjustment options that you have elected to limit each loss and the applicable portion of the expenses included in *Incurred Losses*.

C. Separate the resulting *Incurred Losses* into three groups, and calculate the sum for each group. We have shown our forecast of your *Incurred Losses* below.

| | | |
|---|---|---|
| i. | Self-Insured Losses | $0 |
| ii. | Reimbursable Losses | $0 |
| iii. | All Other Losses eligible for retrospective premium, as limited if Loss Limitation applies | $0 |

D. Determine the Aggregate Stop Amount from the *Schedule* — $1,996,260

E. Determine the Aggregate Stop Limit from the *Schedule* — $0

F. Calculate *Incurred Losses* to be included in the retrospective premium as follows:

All Other Losses within Aggregate Stop Amount:

| | | |
|---|---|---|
| i. | Aggregate Stop Amount less Reimbursable losses: Item D less C.ii., but not less than zero. | $0 |
| ii. | The remainder of Aggregate Stop Amount after payment of Reimbursable Losses and Self-Insured Losses: Item F.i. less C.i., but not less than zero. | $0 |
| iii. | Losses for retrospective premium within remaining Aggregate Stop Amount: Item F.ii. or C.iii., whichever is less. | $0 |

Adjustment to add All Other Losses in Excess of Aggregate Stop Limit:

| | | |
|---|---|---|
| iv. | Item F.iii. plus C.iii. | $0 |
| v. | Item E or (C.i. plus C.ii. less D) whichever is less | $0 |
| vi. | Item E less F.v. | $0 |
| vii. | Item F.vi. or C.iii., whichever is less | $0 |
| viii. | *Subject Losses*: Item F.iv. less F.vii.. | $0 |

Determine the *Incurred Losses* to be included in the *Final Premium* for each state and line designated in Section 2 of the Large Risk Rating Plan Endorsement by multiplying the losses in each line and state included in C.iii. by the ratio of F.viii.: / C.iii.

Countersigned by _____ Date _____

(Authorized Signature)

COMP 0034

ISSUED BY THE STOCK INSURANCE COMPANY HEREIN CALLED THE COMPANY
AMERICAN HOME ASSURANCE COMPANY
13781

| AGENT NUMBER | POLICY NUMBER |
|---|---|
| 61342-0000 | WC  124-14-97 |
| | 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-00 |

INCORPORATED UNDER THE LAWS OF   NEW YORK
ITEM 1.   NAMED INSURED:   MAILING ADDRESS   IDENTIFICATION NO.:

ALTMAN SPECIALTY PLANTS, INC
3742 BLUE BIRD CANYON ROAD
VISTA, CA 92084-0000

AIG   Member Companies of
American International Group

EXECUTIVE OFFICES:
70 PINE STREET, NEW YORK, N.Y. 10270

SEE NAME AND ADDRESS SCHEDULE - WC990610
ID# 917906262

PRODUCERS NAME AND ADDRESS

**WORKERS COMPENSATION AND EMPLOYERS
LIABILITY POLICY INFORMATION PAGE**

G S LEVINE INSURANCE SERVICES
3377 CARMEL MOUNTAIN ROAD
SAN DIEGO, CA 92121-0000

INSURED IS
CORPORATION

PREVIOUS POLICY NUMBER
NEW

OTHER WORKPLACES NOT SHOWN ABOVE: SEE NAME AND ADDRESS SCHEDULE - WC990610

ITEM 2   POLICY PERIOD 12:01 A.M. standard time at the insured's
mailing address   FROM   01/01/03   TO   01/01/04

ITEM 3   A. Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of the states listed here:

AZ FL

B. Employers Liability Insurance: Part Two of the policy applies to the work in each state listed in Item 3.A.
The limits of our liability under Part Two are:

Bodily Injury by Accident $     1,000,000   each accident
Bodily Injury by Disease  $     1,000,000   policy limit
Bodily Injury by Disease  $     1,000,000   each employee

C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here:
AK AL AR CO CT DC DE GA HI IA ID IL IN KS KY LA MA MD ME MI MN MO MS MT NC NE NH NJ NM
NV NY OK OR PA RI SC SD TN TX UT VA VT WI

ITEM 4   The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans.
All information required below is subject to verification and change by audit.

| Classifications | Code Number | Estimated Total Remuneration [X] Annual [ ] 3 Year | Rate Per $100 OF Remuneration | Estimated Premium [X] Annual [ ] 3 Year |
|---|---|---|---|---|
| SEE EXTENSION OF INFORMATION PAGE - WC7754 | | | | |

EXPENSE CONSTANT (EXCEPT WHERE APPLICABLE BY STATE)   $200 FL

MINIMUM PREMIUM   $562 FL   TOTAL ESTIMATED PREMIUM   $55,267

If indicated below, interim adjustments of premium shall be made:

[ ] Semi-Annually   [ ] Quarterly   [ ] Monthly   DEPOSIT PREMIUM   $55,267

ENDORSEMENTS (FORM NUMBER)   SEE ATTACHED FORM SCHEDULE - WC990612

01/27/03 LOS ANGELES   05

Issue Date   Issuing Office   Authorized Representative   WC 00 00 01
39087

FORMS SCHEDULE
POLICY ENDORSEMENT SCHEDULE

Policy Number: WC    124-14-97                              Effective Date:  01/01/2003

| | |
|---|---|
| WC0003038 | EMPLOYERS LIABILITY COVERAGE ENDT |
| WC000404 | PENDING RATE CHANGE ENDORSEMENT |
| WC000406A | PREMIUM DISCOUNT ENDORSEMENT |
| WC000414 | NOTIFICATION OF CHANGE IN OWNERSHIP ENDT |
| WC090606 | FL EMPLOYMENT AND WAGE INFO RELEASE ENDT |
| 78052 | PRIVACY POLICY |
| WC000419 | PREMIUM DUE DATE ENDORSEMENT |
| WC020601 | AZ CANCELATION ENDORSEMENT |
| FLRNTP | FLORIDA RATE NOTICE TO POLICYHOLDERS |
| WC990903 | FL CANCELLATION AND NONRENEWAL ENDT |
| WC990610 | NAMED INSUREDS/ADDRESSES |
| 53820 | LARGE RISK RATING PLAN ENDORSEMENT |

**WC 99 06 12**
**(Ed. 1/97)**

Page 1 of 1

## STANDARD WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY EXTENSION FORM

| WC  124-14-97 | ARIZONA | 917906262 |
|---|---|---|
| Policy Prefix & No. | Schedule | INTRA/Independent State Risk ID |

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-00         ALTMAN SPECIALTY PLANTS, INC

| Item 4. Classification of Operations | | Premium Basis | Rates | |
|---|---|---|---|---|
| Entries in this item, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | Code No. | Estimated Total Annual Remuneration | Per $100 of Remuneration | Estimated Annual Premiums |
| RATING GROUP:  0001-01 | | | | |
| FARM: NURSERY EMPLOYEES & DRIVERS | 0005 | 250,000 | 2.66 | 6,650 |
| SALESPERSONS, COLLECTORS, OR | 8742 | 150,000 | 0.38 | 570 |
| MESSENGERS-OUTSIDE. | | | | |
| CLERICAL OFFICE EMPLOYEES NOC. | 8810 | 85,000 | 0.24 | 204 |
| STATE OF ARIZONA TOTALS | | | | |
| TOTAL CLASSIFICATION PREMIUM | | | | 7,424 |
| INCREASE LIMITS                  2.00% | 9812 | | | 148 |
| TOTAL UNMODIFIED PREMIUM | | | | 7,572 |
| EXPERIENCE PREMIUM     (ACTUAL)   1.1300 | 9898 | | | 984 |
| MODIFIED STANDARD PREMIUM | | | | 8,556 |
| UNDISCOUNTED PREMIUM | | | | 8,556 |
| PREMIUM DISCOUNT               -11.10% | 0063 | | | -950 |
| DISCOUNTED PREMIUM | | | | 7,606 |
| TOTAL ESTIMATED PREMIUM | | | | 7,606 |
| TOTAL DUE | | | | 7,606 |
| EXPERIENCE RATING MODIFICATION = 1.13 | | | | |

WC 7754 (Ed. 4-81)        See Name and Address Schedule – WC990610

Page 1  of  1

## STANDARD WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY EXTENSION FORM

WC  124-14-97        FLORIDA                          917906262
Policy Prefix & No.              Schedule              INTRA/Independent State Risk ID

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-00        ALTMAN SPECIALTY PLANTS, INC

| Item 4. Classification of Operations | | Premium Basis | Rates | |
|---|---|---|---|---|
| Entries in this item, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | Code No. | Estimated Total Annual Remuneration | Per $100 of Remuneration | Estimated Annual Premiums |
| RATING GROUP:  0002-01 | | | | |
| FARM: FLORISTS & DRIVERS. | 0035 | 650,000 | 6.58 | 42,770 |
| SALESPERSONS, COLLECTORS, OR | 8742 | 110,000 | 1.20 | 1,320 |
| MESSENGERS-OUTSIDE. | | | | |
| CLERICAL OFFICE EMPLOYEES NOC. | 8810 | 25,000 | 0.65 | 163 |
| STATE OF FLORIDA TOTALS | | | | |
| TOTAL CLASSIFICATION PREMIUM | | | | 44,253 |
| INCREASE LIMITS               1.40% | 9812 | | | 620 |
| TOTAL UNMODIFIED PREMIUM | | | | 44,873 |
| EXPERIENCE PREMIUM     (ACTUAL)  1.1300 | 9898 | | | 5,833 |
| MODIFIED STANDARD PREMIUM | | | | 50,706 |
| UNDISCOUNTED PREMIUM | | | | 50,706 |
| PREMIUM DISCOUNT             -6.40% | 0064 | | | -3,245 |
| DISCOUNTED PREMIUM | | | | 47,461 |
| EXPENSE CONSTANT | 0900 | | | 200 |
| TOTAL ESTIMATED PREMIUM | | | | 47,661 |
| TOTAL DUE | | | | 47,661 |
| EXPERIENCE RATING MODIFICATION = 1.13 | | | | |

WC 7754 (Ed. 4-81)        See Name and Address Schedule – WC990610

## EMPLOYERS LIABILITY COVERAGE ENDORSEMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2003        forms a part of Policy No. WC    124-14-97

Issued to ALTMAN SPECIALTY PLANTS, INC

By AMERICAN HOME ASSURANCE COMPANY

This endorsement applies only to work in the states shown in the Schedule.

A.  Part One (Workers Compensation Insurance) does not apply to work in a state shown in the Schedule.

B.  Part Two (Employers Liability Insurance) applies to work in states shown in the Schedule as though they were shown in Item 3.A. of the Information Page.

C.  Part Two (Employers Liability Insurance), C. Exclusions is changed by adding these exclusions.

This insurance does not cover:

13.  bodily injury to any member of the flying crew of any aircraft;

14.  bodily injury to an employee when you are deprived of common law defenses or are subject to penalty because of your failure to secure your obligations under the workers compensation law of any state shown in the Schedule or otherwise fail to comply with that law.

Schedule

States

NORTH DAKOTA
WASHINGTON
WEST VIRGINIA
WYOMING
OHIO

WC 00 03 03 B
(Ed. 4-92)

Countersigned by _____

Authorized Representative

PENDING RATE CHANGE ENDORSEMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2003          forms a part of Policy No. WC     124-14-97

Issued to ALTMAN SPECIALTY PLANTS, INC

By AMERICAN HOME ASSURANCE COMPANY

A rate change filing is being considered by the proper regulatory authority. The filing may result in rates different from the rates shown on the policy. If it does, we will issue an endorsement to show the new rates and their effective date.

If only one state is shown in Item 3.A of the Information Page, this endorsement applies to that state.  If more than one state is shown there, this endorsement applies only in the state shown in the Schedule.

Schedule

State

Florida

WC 00 04 04
(Ed. 4-84)

Countersigned by _____

Authorized Representative

COMP 0040

PREMIUM DISCOUNT ENDORSEMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM 01/01/2003          forms a part of Policy No. WC    124-14-97

Issued to ALTMAN SPECIALTY PLANTS, INC

By AMERICAN HOME ASSURANCE COMPANY

The premium for this policy and the policies, if any, listed in Item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in Items 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

Schedule

1.    State

| | | Estimated Eligible Premium | | |
|---|---|---|---|---|
| | First $10,000 | Next $190,000 | Next $1,550,000 | Balance |
| Arizona | | 9.10 | 11.30 | 12.30 |

2.    Average percentage discount:                    11.10  %

3.    Other policies: WC 124-14-96

4.    If there are no entries in Items 1, 2 and 3 of the Schedule, see the Premium Discount Endorsement attached to your policy number:

WC 00 04 06A
(Ed. 08/95)              Countersigned by _____

                                                        Authorized Representative

## NOTIFICATION OF CHANGE IN OWNERSHIP ENDORSEMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM 01/01/2003          forms a part of Policy No. WC    124-14-97

Issued to ALTMAN SPECIALTY PLANTS, INC

By AMERICAN HOME ASSURANCE COMPANY

Experience rating is mandatory for all eligible insureds. The experience rating modification factor, if any, applicable to this policy, may change if there is a change in your ownership or in that of one or more of the entities eligible to be combined with you for experience rating purposes. Change in ownership includes sales, purchases, other transfers, mergers, consolidations, dissolutions, formations of a new entity and other changes provided for in the applicable experience rating plan manual.

You must report any change in ownership to us in writing within 90 days of such change. Failure to report such changes within this period may result in revision of the experience rating modification factor used to determine your premium.

THIS ENDORSEMENT IS NOT APPLICABLE IN NEW JERSEY, PENNSYLVANIA, MICHIGAN, ALASKA, CALIFORNIA, DELAWARE OR TEXAS.

WC 00 04 14          Countersigned by _____
(Ed. 7-90)
                                                        Authorized Representative

**ENDORSEMENT**
**NAME AND ADDRESS SCHEDULE ENDORSEMENT**

This endorsement, effective 12:01 AM 01/01/2003

Forms a part of policy no.: WC    124-14-97

Issued to: ALTMAN SPECIALTY PLANTS, INC

By: AMERICAN HOME ASSURANCE COMPANY

| LOC NO. | NAME AND ADDRESS SCHEDULE | FEIN | UI # |
|---------|---------------------------|------|------|
| 0001 | ALTMAN SPECIALTY PLANTS, INC<br>3825 W. SOUTHERN AVE.<br>PHOENIX, AZ 85041-0000 | 330494942 | |
| 0002 | ALTMAN SPECIALTY PLANTS, INC<br>16026 N. 36TH STREET<br>PHOENIX, AZ 85032-0000 | 330494942 | |
| 0003 | ALTMAN SPECIALTY PLANTS, INC<br>4967 HYPOLUXO ROAD<br>LAKE WORTH, FL 33462-7516 | 330494942 | |
| 0004 | ALTMAN SPECIALTY PLANTS, INC<br>2447 D. ROAD<br>LOXAHATCHEE, FL 33470-0000 | 330494942 | |

Issue Date: 01/27/03

Authorized Representative

WC990610 (Ed. 1-97)

EXHIBIT

B

COMP 0044

ISSUED BY THE STOCK INSURANCE COMPANY HEREIN CALLED THE COMPANY

AMERICAN HOME ASSURANCE COMPANY
13781

RECEIVED JAN 2 8 2004

AGENT NUMBER
61342-0000

POLICY NUMBER
WC    124-14-96
--------------------------
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-10

INCORPORATED UNDER THE LAWS OF    NEW YORK
ITEM 1.    NAMED INSURED:    MAILING ADDRESS    IDENTIFICATION NO.:

ALTMAN SPECIALTY PLANTS, INC.
3742 BLUE BIRD CANYON ROAD
VISTA, CA 92084-0000

Member Companies of
American International Group

EXECUTIVE OFFICES:
70 PINE STREET, NEW YORK, N.Y. 10270

SEE NAME AND ADDRESS SCHEDULE - WC990610
I.D# 3376106    CA UI#:

PRODUCERS NAME AND ADDRESS

WORKERS COMPENSATION AND EMPLOYERS
LIABILITY POLICY INFORMATION PAGE

G S LEVINE INSURANCE SERVICES
3377 CARMEL MOUNTAIN ROAD
SAN DIEGO, CA 92121-0000

INSURED IS
CORPORATION

PREVIOUS POLICY NUMBER
RENEWAL    001241496

OTHER WORKPLACES NOT SHOWN ABOVE: SEE NAME AND ADDRESS SCHEDULE - WC990610

| ITEM 2 | POLICY PERIOD 12:01 A.M. standard time at the insured's mailing address | FROM 01/01/04 | to 01/01/05 |

ITEM 3    A. Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of the states listed here:

CA

B. Employers Liability Insurance: Part Two of the policy applies to the work in each state listed in item 3.A.
The limits of our liability under Part Two are:

Bodily Injury by Accident $    1,000,000    each accident
Bodily Injury by Disease $    1,000,000    policy limit
Bodily Injury by Disease $    1,000,000    each employee

C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here:
NONE

ITEM 4    The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans.
All information required below is subject to verification and change by audit.

| Classifications | Code Number | Estimated Total Remuneration [X] Annual [ ] 3 Year | Rate Per $100 Of Remuneration | Estimated Premium [X] Annual [ ] 3 Year |
|---|---|---|---|---|
| SEE EXTENSION OF INFORMATION PAGE - WC7754 TAXES/ASSESSMENTS/SURCHARGES | | | | $52,498 |

EXPENSE CONSTANT (EXCEPT WHERE APPLICABLE BY STATE)    $160 CA

MINIMUM PREMIUM    $750 CA    TOTAL ESTIMATED PREMIUM    $2,370,023

If indicated below, interim adjustments of premium shall be made:

[ ] Semi-Annually    [ ] Quarterly    [ ] Monthly    DEPOSIT PREMIUM    $2,370,023

ENDORSEMENTS (FORM NUMBER)    SEE ATTACHED FORM SCHEDULE - WC990612

01/15/04 LOS ANGELES    05

Issue Date    Issuing Office    Authorized Representative    WC 00 00 01
39857

FORMS SCHEDULE

Policy Number: WC    124-14-96                                    Effectivo Date:  01/01/2004

| | |
|---|---|
| WC000406 | PREMIUM DISCOUNT ENDORSEMENT |
| 53820WC | LARGE RISK RATING PLAN (SHORT FORM) |
| WC60904 | FOREIGN COVERAGE ENDORSEMENT |
| 78052A | PRIVACY POLICY |
| WC000420 | TERRORISM RISK INSURANCE ACT ENDORSEMENT |
| 55154WC | CALIFORNIA FRAUD ASSESSMENT |
| WC040002A | CA-ADMINISTRATION REVOLVING FUND ASMNT |
| WC040305 | CA VOL COMP & EMPLOYERS LIAB |
| WC040360 | CA EMPLOYERS LIAB COV AMENDATORY ENDT |
| WC040402 | CA MANDATORY RATE CHANGE ENDT |
| WC040407 | CA PREMIUM ADJUSTMENT ENDT |
| WC990017 | CALIFORNIA CANCELLATION ENDORSEMENT |
| WC990407 | CA POLICY AMENDATORY ENDT |
| WC990408B | CA NOTIF OF LOSS CONTROL SERVICES |
| WC990409 | CA POLICYHOLDER NOTICE - CIGA SURCHARGE |
| WC990410 | POLICYHOLDER NOTICE |
| WC990411 | CA ADV NOTICE OF CANC OR NON-REN EXTO |
| WC990413 | POLICYHOLDER NOTICE |
| WC990610 | NAMED INSUREDS/ADDRESSES |

WC 99 06 12
(Ed. 1/97)

COMP 0046

Page 1  of  1

# STANDARD WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY EXTENSION FORM

| WC  124-14-96 | CALIFORNIA | 3376106 |
|---|---|---|
| Policy Prefix & No. | Schedule | INTRA/Independent State Risk ID |

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-10        ALTMAN SPECIALTY PLANTS, INC.

| Item 4. Classification of Operations | | Premium Basis | Rates | |
|---|---|---|---|---|
| Entries in this item, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | Code No. | Estimated Total Annual Remuneration | Per $100 of Remuneration | Estimated Annual Premiums |
| RATING GROUP:  0001-01 | | | | |
| NURSERIES-PROPAGATION AND CULTIVATION OF NURSERY STOCK | 0005 | 15,700,000 | 12.91 | 2,026,870 |
| NURSERIES-PROPAGATION AND CULTIVATION OF NURSERY STOCK | 0005V | IF ANY | 12.91 | |
| POTTERIES-GLAZED OR PORCELAIN, EARTHENWARE | 4049 | IF ANY | 17.62 | |
| SALESPERSONS-OUTSIDE | 8742 | 5,430,000 | 1.98 | 107,514 |
| CLERICAL OFFICE EMPLOYEES-N.O.C. | 8810 | 2,600,000 | 1.74 | 45,240 |
| STATE OF CALIFORNIA TOTALS | | | | |
| TOTAL CLASSIFICATION PREMIUM | | | | 2,179,624 |
| TOTAL UNMODIFIED PREMIUM | | | | 2,179,624 |
| EXPERIENCE PREMIUM     (ACTUAL)        1.3500 | 9897 | | | 762,868 |
| MODIFIED STANDARD PREMIUM | | | | 2,942,492 |
| UNDISCOUNTED PREMIUM | | | | 2,942,492 |
| NEGOTIATED PREMIUM DISCOUNT        -20.02% | 0063 | | | -589,087 |
| DISCOUNTED PREMIUM | | | | 2,353,405 |
| EXPENSE CONSTANT | 0900 | | | 160 |
| TERRORISM RISK INS ACT 2002        0.7551% | 9740 | | | 16,458 |
| TOTAL ESTIMATED PREMIUM | | | | 2,370,023 |
| GUARANTEE ASSOCIATION ASSESS        2.00% | 9713 | | | 47,400 |
| CA ADMIN REVOLVING FUND ASSESS    0.0971% | 9683 | | | 2,301 |
| CA FRAUD ASSESSMENT        0.118% | 9682 | | | 2,797 |
| TOTAL DUE | | | | 2,422,521 |
| EXPERIENCE RATING MODIFICATION ≈ 1.35 | | | | |

WC 7754 (Ed. 4-81)        See Name and Address Schedule - WC990610

COMP 0047

# WORKERS COMPENSATION AND EMPLOYERS LIABILITY

## INSURANCE POLICY

National Union Fire Insurance
Company of Pittsburgh, Pa.

American Home Assurance Company

The Insurance Company of
The State of Pennsylvania

Birmingham Fire Insurance Company
of Pennsylvania

Commerce and Industry
Insurance Company



Member Companies of
American International Group, Inc.
EXECUTIVE OFFICES
70 PINE STREET
NEW YORK, N.Y. 10270

Coverage is provided by the Company designated on the Information Page
A Stock Insurance Company

---

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**
**QUICK REFERENCE**

|                                                        | BEGINNING ON PAGE |
| ------------------------------------------------------ | :---------------: |
| Information Page                                        |         i         |
| **GENERAL SECTION**                                     |         1         |
| A.  The Policy                                         |         1         |
| B.  Who is Insured                                    |         1         |
| C.  Workers Compensation Law                          |         1         |
| D.  State                                             |         1         |
| E.  Locations                                         |         1         |
| **PART ONE—WORKERS COMPENSATION INSURANCE**           |         1         |
| A.  How This Insurance Applies                        |         1         |
| B.  We Will Pay                                       |         1         |
| C.  We Will Defend                                    |         1         |
| D.  We Will Also Pay                                  |         1         |
| E.  Other Insurance                                   |         2         |
| F.  Payments You Must Make                            |         2         |
| G.  Recovery From Others                              |         2         |
| H.  Statutory Provisions                              |         2         |

THESE POLICY PROVISIONS WITH THE INFORMATION PAGE AND ENDORSEMENTS,
IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THIS POLICY.

"INCLUDES COPYRIGHT MATERIAL OF THE NATIONAL COUNCIL ON COMPENSATION
INSURANCE, USED WITH ITS PERMISSION.

COPYRIGHT 1983 NATIONAL COUNCIL ON COMPENSATION INSURANCE"

39638C(04/92)

WC 00 00 00 A (STANDARD)

COMP 0048

**QUICK REFERENCE – CONTINUED**

|  | BEGINNING ON PAGE |
|---|---|
| PART TWO - EMPLOYERS LIABILITY INSURANCE | 2 |
| A. How This Insurance Applies | 2 |
| B. We Will Pay | 3 |
| C. Exclusions | 3 |
| D. We Will Defend | 3 |
| E. We Will Also Pay | 4 |
| F. Other Insurance | 4 |
| G. Limits of Liability | 4 |
| H. Recovery From Others | 4 |
| I. Action Against Us | 4 |
| PART THREE - OTHER STATES INSURANCE | 4 |
| A. How This Insurance Applies | 4 |
| B. Notice | 5 |
| PART FOUR - YOUR DUTIES IF INJURY OCCURS | 5 |
| PART FIVE - PREMIUM | 5 |
| A. Our Manuals | 5 |
| B. Classifications | 5 |
| C. Remuneration | 5 |
| D. Premium Payments | 5 |
| E. Final Premium | 5 |
| F. Records | 6 |
| G. Audit | 6 |
| PART SIX - CONDITIONS | 6 |
| A. Inspection | 6 |
| B. Long Term Policy | 6 |
| C. Transfer of Your Rights and Duties | 6 |
| D. Cancellation | 6 |
| E. Sole Representative | 6 |

IMPORTANT: This Quick Reference is **not** part of the Workers Compensation and Employers Liability Policy and does **not** provide coverage. Refer to the Workers Compensation and Employers Liability Policy itself for actual contractual provisions.

**PLEASE READ THE WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY CAREFULLY**

COMP 0049

ATTACH FORM AND ENDORSEMENTS (IF ANY) HERE

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows.

## GENERAL SECTION

**A.  The Policy**

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

**B.  Who Is Insured**

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

**C.  Workers Compensation Law**

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

**D.  State**

State means any state of the United States of America, and the District of Columbia.

**E.  Locations**

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A states unless you have other insurance or are self-insured for such workplaces.

## PART ONE · WORKERS COMPENSATION INSURANCE

**A.  How This Insurance Applies**

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1.  Bodily injury by accident must occur during the policy period.

2.  Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

**B.  We Will Pay**

We will pay promptly when due the benefits required of you by the workers compensation law.

**C.  We Will Defend**

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

**D.  We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1.  reasonable expenses incurred at our request, but not loss of earnings;

2.  premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

WC 00 00 00 A

COMP 0050

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

### E. Other Insurance

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

### F. Payments You Must Make

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct;

2. you knowingly employ an employee in violation of law;

3. you fail to comply with a health or safety law or regulation; or

4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

### G. Recovery From Others

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

### H. Statutory Provisions

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.

2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5. This insurance conforms to the parts of the workers compensation law that apply to:

   a. benefits payable by this insurance or;

   b. special taxes, payments into security or other special funds, and assessments payable by us under that law.

6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

**PART TWO - EMPLOYERS LIABILITY INSURANCE**

### A. How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury

WC 00 00 00 A

COMP 0051

ATTACH FORM AND ENDORSEMENTS (IF ANY) HERE

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows.

### GENERAL SECTION

**A.  The Policy**

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

**B.  Who Is Insured**

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

**C.  Workers Compensation Law**

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

**D.  State**

State means any state of the United States of America, and the District of Columbia.

**E.  Locations**

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A states unless you have other insurance or are self-insured for such workplaces.

### PART ONE - WORKERS COMPENSATION INSURANCE

**A.  How This Insurance Applies**

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.

2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

**B.  We Will Pay**

We will pay promptly when due the benefits required of you by the workers compensation law.

**C.  We Will Defend**

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

**D.  We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1. reasonable expenses incurred at our request, but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

**WC 00 00 00 A**

COMP 0052

3.  litigation costs taxed against you;

4.  interest on a judgment as required by law until we offer the amount due under this insurance; and

5.  expenses we incur.

### E.  Other Insurance

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

### F.  Payments You Must Make

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1.  of your serious and willful misconduct;

2.  you knowingly employ an employee in violation of law;

3.  you fail to comply with a health or safety law or regulation; or

4.  you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

### G.  Recovery From Others

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover

our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

### H.  Statutory Provisions

These statements apply where they are required by law.

1.  As between an injured worker and us, we have notice of the injury when you have notice.

2.  Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3.  We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

4.  Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5.  This insurance conforms to the parts of the workers compensation law that apply to:

    a.  benefits payable by this insurance or;

    b.  special taxes, payments into security or other special funds, and assessments payable by us under that law.

6.  Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

### PART TWO - EMPLOYERS LIABILITY INSURANCE

### A.  How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1.  The bodily injury must arise out of and in the course of the injured employee's employment by you.

2.  The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3.  Bodily injury by accident must occur during the policy period.

4.  Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5.  If you are sued, the original suit and any related legal actions for damages for bodily injury

WC 00 00 00 A

COMP 0053

by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

## B.  We Will Pay

We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1.  for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2.  for care and loss of services; and

3.  for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee;

provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4.  because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

## C.  Exclusions

This insurance does not cover:

1.  liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2.  punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3.  bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4.  any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5.  bodily injury intentionally caused or aggravated by you;

6.  bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7.  damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions.

8.  bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950), the Nonappropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws.

9.  bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to these laws.

10.  bodily injury to a master or member of the crew of any vessel.

11.  fines or penalties imposed for violation of federal or state law.

12.  damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

## D.  We Will Defend

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

WC 00 00 00 A

COMP 0054

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

### E. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim proceeding, or suit we defend;

1. reasonable expenses incurred at our request; but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

### F. Other Insurance

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

### G. Limits of Liability

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1. Bodily Injury by Accident. The limit shown for "bodily injury by accident-each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury by Disease. The limit shown for "bodily injury by disease-policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease-each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3. We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

### H. Recovery From Others

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

### I. Actions Against Us

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability. The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

### PART THREE - OTHER STATES INSURANCE

### A. How This Insurance Applies

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as

though that state were listed in Item 3.A. of the Information Page.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the

WC 00 00 00 A

COMP 0055

Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

**B. Notice**

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

## PART FOUR - YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1. Provide for immediate medical and other services required by the workers compensation law.

2. Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3. Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5. Do nothing after an injury occurs that would interfere with our right to recover from others.

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE - PREMIUM

**A. Our Manuals**

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

**B. Classifications**

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

**C. Remuneration**

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. All your officers and employees engaged in work covered by this policy; and

2. All other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof

that the employers of these persons lawfully secured their workers compensation obligations.

**D. Premium Payments**

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

**E. Final Premium**

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is canceled, final premium will be determined in the following way unless our manuals provide otherwise.

1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short rate

**WC 00 00 00 A**

COMP 0056

cancellation table and procedure. Final premium will not be less than the minimum premium.

## F.  Records

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

## G.  Audit

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

## PART SIX - CONDITIONS

## A.  Inspection

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

## B.  Long Term Policy

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

## C.  Transfer of Your Rights and Duties

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

## D.  Cancellation

1.  You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.  We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3.  The policy period will end on the day and hour stated in the cancellation notice.

4.  Any of these provisions that conflicts with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

## E.  Sole Representative

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancellation.

WC 00 00 00 A

COMP 0057

**In Witness Whereof,** the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

The Insurance Company
of The State of Pennsylvania

President
National Union Fire
Insurance Company of
Pittsburgh, PA

President
Commerce and Industry
Insurance Company

President
American Home
Assurance Company

President
Birmingham Fire Insurance
Company of Pennsylvania

Secretary
National Union Fire Insurance Company of Pittsburgh, PA
American Home Assurance Company
The Insurance Company of The State of Pennsylvania
Birmingham Fire Insurance Company of Pennsylvania
Commerce and Industry Insurance Company

WC 00 00 00 A                     7 of 7

## PREMIUM DISCOUNT ENDORSEMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2004              forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

The premium for this policy and the policies, if any, listed in Item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in Items 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

Schedule

|  | | Estimated Eligible Premium | | |
|---|---|---|---|---|
| 1. State | First $5,000 | Next $95,000 | Next $400,000 | Balance |

2.  Average percentage discount:                          20.02  %

3.  Other policies: WC 124-14-97

4.  If there are no entries in Items 1, 2 and 3 of the Schedule, see Premium Discount Endorsement attached to your policy number:

WC 00 04 06              Countersigned by _____
(Ed. 4-84)
                                                          Authorized Representative

This insurance for a loss covered by this endorsement will be excess insurance over and above any other insurance except with respect to insurance provided under Section 5. The limits of liability for this insurance will be reduced by an amount equal to the limits of liability other insurance affords.

## SCHEDULE

1.  **Name(s) of Employees**

    ALL OFFICERS AND EMPLOYEES WHILE STATIONED OR TRAVELING OUTSIDE OF THE USA, ITS TERRITORIES OR POSSESSIONS, EXCEPT MASTERS AND MEMBERS OF THE CREW OF ANY VESSEL.

    **State or Country of Operations**

    ANYWHERE IN THE WORLD EXCEPT CUBA, IRAN, IRAQ AND ANY OTHER COUNTRY SANCTIONED OR EMBARGOED BY THE USA.

    **Designated Workers Compensation Law**

    STATE OF HIRE.

2.  Limits of Liability For Excess Repatriation Expenses

    | | |
    |---|---|
    | $ 25,000 | each employee |
    | $ 25,000 | each accident |

3.  Limits of Liability for Part Two-Employers Liability

    **Bodily Injury By Accident**

    $ 1,000,000

    **Bodily Injury By Disease**

    | | |
    |---|---|
    | $ 1,000,000 | policy limit |
    | $ 1,000,000 | each employee |

4.  Premium

    | State of Designated Workers Compensation Law | Premium Basis Estimated Total Annual Remuneration | Rates Per $100 of Remuneration | Advance Premiums |
    |---|---|---|---|
    | STATE OF HIRE | INCLUDED WITH REMUNERATION IN THE STATE OF REGULAR EMPLOYMENT | INCLUDED IN THE STATE OF REGULAR EMPLOY-MENT | INCLUDED IN THE STATE OF REGULAR EMPLOYMENT |

    Total Advance Premium INCLUDED

    See attached Extension of Information Page

This endorsement is not applicable in: _____ NC, NJ, WI _____

WC60904
(Ed. 08/94)

Countersigned by _____

Authorized Representative

4 of 4

COMP 0060

## CALIFORNIA WORKERS COMPENSATION
## FRAUD ASSESSMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM 01/01/2004          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

In order to fund increased investigation and prosecution of Workers Compensation fraud, Senate Bill 1218, statutes of 1990, created the Workers Compensation Fraud Account with the Insurance Fund administered by the Insurance Commissioner. The proceeds of this fund include this annual assessment collected from all insured and self insured employers, and remitted by your insurance company to the Workers Compensation Fraud Account.

Surcharge Factor                          Surcharge Amount

   1.001180                                   $2,797

55154WC (12-92)              Countersigned by _____

                                                          Authorized Representative

## CALIFORNIA – ADMINISTRATION REVOLVING FUND ASSESSMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM 01/01/2004          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

California Law requires insurers who provide Workers' Compensation insurance to collect an Administration Revolving Fund Assessment for each insured employer. The percentage, as determined by the Director of the Department of Industrial Relations, is applied to each insured employer's premium for the purpose of determining its share of the assessment to be paid. This surcharge amount is subject to adjustment at audit.

The Fund was established pursuant to the provisions of California Labor Code Section 62.5.

Your policy has been surcharged by the amount/percent stated below:

SURCHARGE AMOUNT:        $2,301

SURCHARGE PERCENT: 0.0971%

WC 04 00 02 A
(Ed. 8-91)

Countersigned by _____

Authorized Representative

**VOLUNTARY COMPENSATION AND EMPLOYERS LIABILITY COVERAGE**
**ENDORSEMENT—CALIFORNIA**

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM 01/01/2004          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

If the employer named in item 1 of the Information Page has in his employment persons not entitled to compensation under Division 4 of the Labor Code of the State of California, this policy shall operate as an election on the part of the employer to come under the compensation provisions of Division 4 with respect to those persons described in the Schedule below.

This policy applies to those persons described in the Schedule below as employees.

### Schedule
ALL OFFICERS AND EMPLOYEES NOT SUBJECT TO THE WORKERS
COMPENSATION LAW EXCEPT MASTERS AND MEMBERS OF THE CREW OF
ANY VESSEL.

WC 04 03 05          Countersigned by _____
(Ed. 1-85)
                                                        Authorized Representative

PAGE 1

## ENDORSEMENT

This endorsement, effective 12:01 AM 01/01/2004

Forms a part of policy no.: WC    124-14-96

Issued to: ALTMAN SPECIALTY PLANTS, INC.

By: AMERICAN HOME ASSURANCE COMPANY

| LOC NO. | NAME AND ADDRESS SCHEDULE | FEIN | UI # |
|---|---|---|---|
| 0001 | ALTMAN SPECIALTY PLANTS, INC<br>2372 TAMARA LANE<br>SAN MARCOS, CA 92069-0000 | 330494942 | |
| 0002 | ALTMAN SPECIALTY PLANTS, INC<br>3361 VALLEY PASEO<br>SAN MARCOS, CA 92069-0000 | 330494942 | |
| 0003 | ALTMAN SPECIALTY PLANTS, INC<br>553 BUENA CREEK ROAD<br>SAN MARCOS, CA 92069-0000 | 330494942 | |
| 0004 | ALTMAN SPECIALTY PLANTS, INC<br>1516 MONTE VISTA DRIVE<br>VISTA, CA 92084-0000 | 330494942 | |
| 0005 | ALTMAN SPECIALTY PLANTS, INC<br>1974 FRIENDLY DRIVE<br>VISTA, CA 92084-0000 | 330494942 | |
| 0006 | ALTMAN SPECIALTY PLANTS, INC<br>2020 EDGEHILL ROAD<br>VISTA, CA 92084-0000 | 330494942 | |
| 0007 | ALTMAN SPECIALTY PLANTS, INC<br>3742 BLUE BIRD CANYON ROAD<br>VISTA, CA 92084-0000 | 330494942 | |
| 0008 | ALTMAN SPECIALTY PLANTS, INC<br>2124 EDGEHILL ROAD<br>VISTA, CA 92084-0000 | 330494942 | |
| 0009 | ALTMAN SPECIALTY PLANTS, INC<br>949 LA RUEDA<br>VISTA, CA 92084-0000 | 330494942 | |
| 0010 | ALTMAN SPECIALTY PLANTS, INC<br>20460 SPENCE ROAD<br>SALINAS, CA 93908-0000 | 330494942 | |

Issue Date: 01/15/04

WC990610 (Ed. 1-97)

Authorized Representative

## LARGE RISK RATING PLAN ENDORSEMENT

### PART II. *SCHEDULE* of POLICIES and RATING VALUES

**Section 1. APPLICATION of this Endorsement**

RATING PERIOD: This Endorsement applies to the period beginning 01/01/2004 and ending 01/01/2005.

The *Basis* of Premium, *Subject Losses, Self-Insured Losses, Minimum Cost, Maximum Cost*, Minimum Premiums and Estimated Premiums shown in Section 5, Section 6, Section 7 and Section 9 of this PART II are estimated amounts for:

☐ the first year of the Rating Period, or ☒ the entire Rating Period.

POLICIES: ☒ This Endorsement applies to the policies described below, and to their replacements and renewals effective during the Rating Period, or

☐ This Endorsement applies to the policies described below, and to their replacements and renewals, and all subcontractor policies issued under a Construction Project. The Construction Project is described as follows:

N/A

a. Workers Compensation and Employers Liability Insurance policies:
WC 1241496 , WC 1241497.

b. Commercial General Liability Insurance policies:

c. Automobile Liability Insurance policies:

d. Other Insurance policies (described):

**Section 2.** Premiums for insurance on risks in states described below will be determined in accordance with the terms of the applicable policy other than this endorsement.

| Kinds of Insurance | States |
|---|---|
| WC | FL |

**Section 3.** *Allocated Loss Adjustment Expenses* Options

| ALAE Option (enter ALAE Option A, B, C or D as applicable) | If ALAE Option C, enter Excess % | Applies to |
|---|---|---|
| C | 100% | WC 1241496 , WC 1241497. |

COMP 0065

## LARGE RISK RATING PLAN ENDORSEMENT

Section 4. *Retained Amounts:* ☒ applicable to all insureds; or ☐ refer to Extension Schedule

| Kind of Insurance | Retained Amount | Applicable to | Limitations or Descriptions |
|---|---|---|---|
| **Workers Compensation** | | | |
| Workers Compensation and Employers Liability under State Law - Insured States | $600,000 | Each Accident or each Person for Disease | |
| Workers Compensation and Employers Liability under Federal Law - Insured States | $0 | Each Accident or each Person for Disease | |
| Workers Compensation and Employers Liability - Self-Insured States | $0 | Each Accident or each Person for Disease | |
| Employers Liability - Monopolistic States | $0 | Each Accident or each Person for Disease | |
| | $0 | Each Accident or each Person for Disease | |
| **Commercial General Liability** | | | |
| Premises, Operations, Personal and Advertising Injury, Medical Payments, or Damage to Property Liability | $0 | Each Occurrence | |
| Products or Completed Operations Liability | $0 | Each Occurrence | |
| [Other] | $0 | Each Occurrence | |
| **Commercial Automobile Liability, including UM/UIM and PIP/No Fault, if any** | | | |
| Automobile Liability | $0 | Each Accident | |
| Garage Liability | $0 | Each Accident | |
| [Other] | $0 | Each Accident | |
| **Combined Kinds Retention** | | | |
| | $0 | Each Occurrence | |

### Section 5. Forecast of *Subject Losses*

We have shown our forecast of your *Subject Losses* below.

a.  Reimbursable and deductible portion of covered *Incurred Losses* (except amounts insured under "Deductible Liability Protection" policies, if any, subject to this Endorsement)    $0

b.  All other covered *Subject Losses* (including amounts insured under "Deductible Liability Protection" policies, if any, subject to this Endorsement)    $2,220,000

First Loss Valuation Date: 07/01/2005 and annually thereafter until all claims are closed or mutually agreed upon as to value.

### Section 6. *Minimum Cost* and *Maximum Cost*

The *Minimum Cost* and *Maximum Cost*, if any, will be applied as explained below.

Item A. *Minimum Cost:* ☐ applicable, or ☒ not applicable

Line of Insurance:    None

a.  *Minimum Cost*, adjustable on the *Basis* and rate shown below:    $0

Basis of Adjustment:    None    Per    0

Estimated *Basis* amount:    $0    Adjustment Rate:    0.0000

COMP 0066

## LARGE RISK RATING PLAN ENDORSEMENT

b.  *Self-Insured Losses* you incur to which no insurance under the policies described in Section 1 of this PART II applies will NOT be included in determining whether or when the *Minimum Cost* has been reached, except as described herein:

Exceptions:    N/A

Our forecast of your *Self-Insured Losses* included in paragraph a. above    $0

c.  The following *Minimum Cost* itemization schedule applies:

### Item B. *Maximum Cost:* ☐ applicable, or ☒ not applicable

Line of Insurance:      None

a.  *Maximum Cost*, adjustable on the *Basis* and rate shown below:          $0

Basis of Adjustment:      None          Per      0

Estimated *Basis* amount:      $0          Adjustment Rate:      0.0000

b.  *Self-Insured Losses* you incur to which no insurance under the policies described in Section 1 of this PART II applies will NOT be included in determining whether or when the *Maximum Cost* has been reached, except as described herein:

Exceptions:    N/A

Our forecast of your *Self-Insured Losses* included in paragraph a. above    $0

c.  The following *Maximum Cost* itemization schedule applies:

COMP 0067

## LARGE RISK RATING PLAN ENDORSEMENT

### Section 7. Claims Service Charges

☐ Charge shown in Section 9, Item A *Subject Premium* of PART II, or ☒ fee schedule described below.

The Claims Service Provider is: AIGCS

**FEE SCHEDULE**

☒ If X'ed here, the following fee schedule applies:

Claims Services Fee Schedule - Rates per Claimant

| Type of Claim | Rate per Claimant | Estimated No. of Claimants | Estimated Fee |
|---|---|---|---|
| Workers Comp | | | |
| Medical | 125.00 | 77 | $9,625 |
| Indemnity | 0.00 | 0 | $0 |
| California | 1,580.00 | 28 | $44,240 |
| Texas | 1,300.00 | 4 | $5,200 |
| AOS | 0.00 | 0 | $0 |
| Surcharge Claims | 0.00 | 0 | $0 |
| Other | 4,293.00 | 1 | $4,293 |
| General Liability | | | |
| Bodily Injury | 0.00 | 0 | $0 |
| Property Damage | 0.00 | 0 | $0 |
| Other | 0.00 | 0 | $0 |
| Product Liability | | | |
| Bodily Injury | 0.00 | 0 | $0 |
| Property Damage | 0.00 | 0 | $0 |
| Other | 0.00 | 0 | $0 |
| Automobile Liability | | | |
| Bodily Injury | 0.00 | 0 | $0 |
| Property Damage | 0.00 | 0 | $0 |
| Physical Damage | 0.00 | 0 | $0 |
| Other | 0.00 | 0 | $0 |
| Incident Reports | 0.00 | 0 | $0 |
| Int. to Designated States | 0.00 | 0 | $0 |
| Other | 0.00 | 0 | $0 |
| | 0.00 | 0 | $0 |
| | 0.00 | 0 | $0 |
| | 0.00 | 0 | $0 |
| **Estimated Total Rate-per-Claimant Fee** | | | **$63,358** |

Copyright 2003 American International Group, Inc.
12/31/2003 00401 943667)

COMP 0068

## LARGE RISK RATING PLAN ENDORSEMENT

☒ If X'ed here, the following fee schedule applies:

### Additional Service Fees Details

| Additional Service Fees | Item Count | Rate/Item | Estimated Fee |
|---|---|---|---|
| Quarterly Loss Report | 0 | 0.00 | $0 |
| Subcontractor Interoffice Supervision | 0 | 0.00 | $0 |
| Magnetic Tape Fee | 0 | 0.00 | $0 |
| Subrogation | 0 | 0.00 | $0 |
| Appraisals | 0 | 0.00 | $0 |
| TPA Expenses | 0 | 0.00 | $0 |
| GAB Expenses | 0 | 0.00 | $0 |
| Cash Management Account Services | 0 | 0.00 | $0 |
| Claim File Reviews | 0 | 0.00 | $0 |
| Contingency Recovery Fees | 0 | 0.00 | $0 |
| Incoming Quality Control | 0 | 0.00 | $0 |
| Legal Cost Control | 0 | 0.00 | $0 |
| Location Visits | 0 | 0.00 | $0 |
| Semiannual Client Meetings | 0 | 0.00 | $0 |
| RMIS Reports | 0 | 0.00 | $0 |
| Customized Account Servicing | 0 | 0.00 | $0 |
| Structured Settlement Program | 0 | 0.00 | $0 |
| Reporting | 0 | 0.00 | $0 |
| Conversion | 0 | 0.00 | $0 |
| Minimum Adjusting Fee | 0 | 0.00 | $0 |
| Intellirisk Charges | 0 | 0.00 | $0 |
| | 0.00 | 0 | $0 |
| | 0.00 | 0 | $0 |
| | 0.00 | 0 | $0 |
| Estimated Additional Services Fee | | | $0 |

### Tail Fees Details

| Tail Fees | Item Count | Rate/Item | Estimated Fee |
|---|---|---|---|
| Workers Comp Med. Only | 0 | 0.00 | $0 |
| Workers Comp. Indemnity | 0 | 0.00 | $0 |
| General Liability | 0 | 0.00 | $0 |
| Products Liability | 0 | 0.00 | $0 |
| Auto Liability | 0 | 0.00 | $0 |
| Maintenance | 0 | 0.00 | $0 |
| | 0.00 | 0 | $0 |
| Estimated Tail Fee | | | $0 |

COMP 0069

## LARGE RISK RATING PLAN ENDORSEMENT

Section 9. The Rating Values and Amounts shown below apply as the *Basis* of the *Final Premium* for the policies described in Section 1 of this Part II.

If the Rating Period exceeds one year; and if the estimated *Basis* of Premium, Minimum Premiums and Estimated Premiums shown below apply only to the first year, on or about each anniversary of the beginning of the Rating Period, we will issue an extension of this Section to show the rating values and amounts for each subsequent year of the Rating Period.

### Item A. *Subject Premium*, part of *Final Premium*

| Line Items | Rates | Per | *Basis* Types | Estimated Basis | Minimum Premium | Estimated Premium |
|---|---|---|---|---|---|---|
| Expected Subject Losses | 0.0000 | 1 | ULT.LOSSES | 0 | $0 | $2,220,000 |
| Claims Service Fees | 0.0000 | 1 | CONTRACT | 0 | $0 | $63,358 |
| Program Expenses | 1.8060 | 100 | PAYROLL | 27,658,000 | $299,710 | $499,516 |
| | | | | | Subtotal | $2,782,874 |
| Taxes/Assessments % | 0.0000% | or | Taxes/Assessments Divisor: | 0.000000 | | $0 |
| | | | | Estimated Total *Subject Premiums* | | $2,782,874 |

### Item B. Non-*Subject Premiums*, part of *Final Premium*

| Coverage Description | Rates | Per | *Basis* Types | Estimated Basis | Minimum Premium | Estimated Premium |
|---|---|---|---|---|---|---|
| Excess Premium-WC-The Entire Contract | 0.7196 | 100 | PAYROLL | 27,658,000 | $199,041 | $199,041 |
| | | | Estimated Total Non-*Subject Premiums* | | | $199,041 |

### Item C. Summary of Expected Total Cost

| | | | | | | |
|---|---|---|---|---|---|---|
| Estimated *Final Premium* (Part A. plus Part B) | | | | | | $2,981,915 |
| Expected *Reimbursable Losses* and *Deductible Losses* and *Self-Insured Losses* and *ALAE*, if applicable | | | | | | $0 |
| Minimum Cost from Section 6. If not applicable, show $0 | | | | | | $0 |
| Maximum Cost from Section 6. If not applicable, show $0 | | | | | | $0 |
| Surcharges: | 0.0000 | 1 | STANDARD PREMIUM | 0 | $0 | $62,498 |
| | | | | EXPECTED TOTAL COST | | $3,034,413 |

Copyright 2003 American International Group, Inc.
12/31/2001 00401 9436671

COMP 0070

## LARGE RISK RATING PLAN ENDORSEMENT

### PART III. AGGREGATE STOP

The *Aggregate Stop Amount* and the *Aggregate Stop Limit*, if any, shown in the Schedule below will be applied as explained below.

### Section I. Aggregate Stop Amount

1. If an *Aggregate Stop Amount* is shown in the Schedule below, we will not include more than the *Aggregate Stop Amount* in the computation of the *Final Premium* and determination of maximum benefits, damages and "ALAE" payable or reimbursable by you under the terms of the policies described in Section I of PART II, subject to any *Aggregate Stop Limit* shown in the Schedule below.

   The *Aggregate Stop Amount* will be the *Aggregate Stop Amount* shown in the Schedule below, less the following:

   a) all *Subject Losses* that you must reimburse us for under any Loss Reimbursement or Deductible terms applicable to the policy covering the *Incurred Loss*, and

   b) such amounts as described in Section III below that you have paid as *Self-Insured Losses.*

2. Adjustment: If an Adjustment Rate and an Adjustment *Basis* are shown in the Schedule below, the *Aggregate Stop Amount* shown in the Schedule below is only an estimate. The *Aggregate Stop Amount* will be finally determined by multiplying the Adjustment Rate by the final Adjustment *Basis* as determined by our audit of your books and records.

3. The *Aggregate Stop Amount* will not be reduced on account of the cancellation of any policy to which this Endorsement applies.

### Section II. Aggregate Stop Limit

1. If an *Aggregate Stop Limit* is shown in the Schedule below, that Limit is the most *Subject Losses* above the *Aggregate Stop Amount* that will be excluded from the computation of the *Final Premium* and which you will not be required to reimburse us for under any Loss Reimbursement or Deductible terms of the policies described in Section I of PART II.

2. The *Aggregate Stop Limit* will not be reduced on account of the cancellation of any policy to which this Endorsement applies.

### Section III. Self-Insured Losses

*Self-Insured Losses:* Losses you incur to which no insurance applies under the policies described in Section I of PART II will NOT be included in determining whether or when the *Aggregate Stop Amount* or *Aggregate Stop Limit* have been reached, except as described herein:

Exceptions: None

### SCHEDULE

#### *Aggregate Stop Amount* and *Aggregate Stop Limit*

Line of Insurance:     Workers Compensation - Insured.

The *Aggregate Stop Amount* and the *Aggregate Stop Limit* apply to the ☐ first year of, or ☒ entire Rating Period.

| | | | | | |
|---|---|---|---|---|---|
| a. | *Aggregate Stop Amount*, adjustable on the *Basis* and rate shown below. | | | | $4,000,000 |
| b. | *Basis* of Adjustment Amount: | **WC PAYROLL** | Per | 100 | Estimated *Basis* $27,658,000 |
| | | | | Adjustment Rate: | 14.4624 |
| c. | *Aggregate Stop Limit* | | | | $0 |

Countersigned by _____ Date _____
(Authorized Signature)

Copyright 2003 American International Group, Inc.
12/31/2003 00:01 9436671

COMP 0071

# EXHIBIT

# C

ISSUED BY THE STOCK INSURANCE COMPANY HEREIN CALLED THE COMPANY

AMERICAN HOME ASSURANCE COMPANY
13781

**AGENT NUMBER**
61342-0000

**POLICY NUMBER**
. WC   124-14-96
---------------------------------
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-20

INCORPORATED UNDER THE LAWS OF   NEW YORK
ITEM 1.   NAMED INSURED:   MAILING ADDRESS   IDENTIFICATION NO.:

ALTMAN SPECIALTY PLANTS, INC.
3742 BLUE BIRD CANYON ROAD
VISTA, CA 92084-0000

SEE NAME AND ADDRESS SCHEDULE - WC990610
I.D# 3376106        CA UI#:

Member Companies of
American International Group

**EXECUTIVE OFFICES:**
70 PINE STREET, NEW YORK, N.Y. 10270

**WORKERS COMPENSATION AND EMPLOYERS**
**LIABILITY POLICY INFORMATION PAGE**

PRODUCERS NAME AND ADDRESS

G S LEVINE INSURANCE SERVICES
3377 CARMEL MOUNTAIN RD
SAN DIEGO, CA 92121-1041

INSURED IS
CORPORATION

PREVIOUS POLICY NUMBER
RENEWAL    001241496

OTHER WORKPLACES NOT SHOWN ABOVE: SEE NAME AND ADDRESS SCHEDULE - WC990610

ITEM 2   POLICY PERIOD 12:01 A.M. standard time at the insured's
mailing address        FROM  01/01/05   to  01/01/06

ITEM 3   A. Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of the states listed
here:

CA

B. Employers Liability Insurance: Part Two of the policy applies to the work in each state listed in Item 3.A.
The limits of our liability under Part Two are:

| | | |
|---|---|---|
| Bodily Injury by Accident $ | 1,000,000 | each accident |
| Bodily Injury by Disease $ | 1,000,000 | policy limit |
| Bodily Injury by Disease $ | 1,000,000 | each employee |

C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here:
NONE

ITEM 4   The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans.
All information required below is subject to verification and change by audit.

| Classifications | Code Number | Estimated Total Remuneration [X] Annual [ ] 3 Year | Rate Per $100 Of Remuneration | Estimated Premium [X] Annual [ ] 3 Year |
|---|---|---|---|---|
| SEE EXTENSION OF INFORMATION PAGE - WC7754 TAXES/ASSESSMENTS/SURCHARGES | | | | $53,720 |

EXPENSE CONSTANT (EXCEPT WHERE APPLICABLE BY STATE)   $160 CA

MINIMUM PREMIUM   $750 CA        TOTAL ESTIMATED PREMIUM        $2,045,774

If indicated below, interim adjustments of premium shall be made:

[ ] Semi-Annually    [ ] Quarterly    [ ] Monthly    DEPOSIT PREMIUM    $2,045,774

ENDORSEMENTS (FORM NUMBER)   SEE ATTACHED FORM SCHEDULE - WC990612

01/27/05 LOS ANGELES                05
Issue Date                  Issuing Office              Authorized Representative    WC 00 00 01
39967

INSURED'S COPY

## FORMS SCHEDULE

Policy Number: WC    124-14-96                    Effective Date:  01/01/2005

| | |
|---|---|
| WC000406 | PREMIUM DISCOUNT ENDORSEMENT |
| WC60904 | FOREIGN COVERAGE ENDORSEMENT |
| 78052A | PRIVACY POLICY |
| WC000420 | TERRORISM RISK INSURANCE ACT ENDORSEMENT |
| 55154WC | CALIFORNIA FRAUD ASSESSMENT |
| WC040002A | CA-ADMINISTRATION REVOLVING FUND ASMNT |
| WC040305 | CA VOL COMP & EMPLOYERS LIAB |
| WC040360 | CA EMPLOYERS LIAB COV AMENDATORY ENDT |
| WC040402 | CA MANDATORY RATE CHANGE ENDT |
| WC040407 | CA PREMIUM ADJUSTMENT ENDT |
| WC040410 | CA ESTIMATED ANNUAL PREMIUM ENDT |
| WC990017 | CALIFORNIA CANCELLATION ENDORSEMENT |
| WC990407 | CA POLICY AMENDATORY ENDT |
| WC990408B | CA NOTIF OF LOSS CONTROL SERVICES |
| WC990409 | CA POLICYHOLDER NOTICE - CIGA SURCHARGE |
| WC990410 | POLICYHOLDER NOTICE |
| WC990411 | CA ADV NOTICE OF CANC OR NON-REN EXTD |
| WC990413 | POLICYHOLDER NOTICE |
| WC990610 | NAMED INSUREDS/ADDRESSES |

**WC 99 06 12**
**(Ed. 1/97)**

                    INSURED'S COPY

COMP 0074

# WORKERS COMPENSATION AND EMPLOYERS LIABILITY

## INSURANCE POLICY

National Union Fire Insurance
Company of Pittsburgh, Pa.

American Home Assurance Company

The Insurance Company of
The State of Pennsylvania

Birmingham Fire Insurance Company
of Pennsylvania

Commerce and Industry
Insurance Company



Member Companies of
American International Group, Inc.
EXECUTIVE OFFICES
70 PINE STREET
NEW YORK, N.Y. 10270

Coverage is provided by the Company designated on the Information Page
A Stock Insurance Company

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY
QUICK REFERENCE**

BEGINNING ON
PAGE

Information Page ........................................................................................................ i

GENERAL SECTION ................................................................................................ 1
A.   The Policy ....................................................................................................... 1
B.   Who Is Insured ............................................................................................... 1
C.   Workers Compensation Law .......................................................................... 1
D.   State ............................................................................................................... 1
E.   Locations ........................................................................................................ 1

PART ONE-WORKERS COMPENSATION INSURANCE ......................................... 1
A.   How This Insurance Applies ........................................................................... 1
B.   We Will Pay .................................................................................................... 1
C.   We Will Defend ............................................................................................... 1
D.   We Will Also Pay ............................................................................................ 1
E.   Other Insurance ............................................................................................. 2
F.   Payments You Must Make .............................................................................. 2
G.   Recovery From Others ................................................................................... 2
H.   Statutory Provisions ....................................................................................... 2

THESE POLICY PROVISIONS WITH THE INFORMATION PAGE AND ENDORSEMENTS,
IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THIS POLICY.

*INCLUDES COPYRIGHT MATERIAL OF THE NATIONAL COUNCIL ON COMPENSATION
INSURANCE, USED WITH ITS PERMISSION.

COPYRIGHT 1983 NATIONAL COUNCIL ON COMPENSATION INSURANCE*

39638C(04/92)

WC 00 00 00 A (STANDARD)

COMP 0075

## QUICK REFERENCE – CONTINUED

BEGINNING ON
PAGE

PART TWO - EMPLOYERS LIABILITY INSURANCE ........................................................................................2
    A.  How This Insurance Applies ..................................................................................................2
    B.  We Will Pay ...........................................................................................................................3
    C.  Exclusions ............................................................................................................................3
    D.  We Will Defend ....................................................................................................................3
    E.  We Will Also Pay .................................................................................................................4
    F.  Other Insurance ...................................................................................................................4
    G.  Limits of Liability .................................................................................................................4
    H.  Recovery From Others ........................................................................................................4
    I.  Action Against Us ................................................................................................................4

PART THREE - OTHER STATES INSURANCE ............................................................................................4
    A.  How This Insurance Applies ..................................................................................................4
    B.  Notice ...................................................................................................................................5

PART FOUR - YOUR DUTIES IF INJURY OCCURS ...................................................................................5

PART FIVE - PREMIUM ...............................................................................................................................5
    A.  Our Manuals ........................................................................................................................5
    B.  Classifications ......................................................................................................................5
    C.  Remuneration ......................................................................................................................5
    D.  Premium Payments .............................................................................................................5
    E.  Final Premium ......................................................................................................................5
    F.  Records ................................................................................................................................6
    G.  Audit ....................................................................................................................................6

PART SIX - CONDITIONS ..........................................................................................................................6
    A.  Inspection ............................................................................................................................6
    B.  Long Term Policy ................................................................................................................6
    C.  Transfer of Your Rights and Duties ....................................................................................6
    D.  Cancellation .........................................................................................................................6
    E.  Sole Representative .............................................................................................................6

**IMPORTANT:** This Quick Reference is **not** part of the Workers Compensation and Employers Liability Policy and does **not** provide coverage. Refer to the Workers Compensation and Employers Liability Policy itself for actual contractual provisions.

## PLEASE READ THE WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY CAREFULLY

COMP 0076

ATTACH FORM AND ENDORSEMENTS (IF ANY) HERE

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows.

### GENERAL SECTION

**A.   The Policy**

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

**B.   Who Is Insured**

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

**C.   Workers Compensation Law**

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

**D.   State**

State means any state of the United States of America, and the District of Columbia.

**E.   Locations**

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

### PART ONE - WORKERS COMPENSATION INSURANCE

**A.   How This Insurance Applies**

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1.   Bodily injury by accident must occur during the policy period.

2.   Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

**B.   We Will Pay**

We will pay promptly when due the benefits required of you by the workers compensation law.

**C.   We Will Defend**

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

**D.   We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1.   reasonable expenses incurred at our request, but not loss of earnings;

2.   premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

WC 00 00 00 A

COMP 0077

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

### E. Other Insurance

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

### F. Payments You Must Make

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct;

2. you knowingly employ an employee in violation of law;

3. you fail to comply with a health or safety law or regulation; or

4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

### G. Recovery From Others

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

### H. Statutory Provisions

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.

2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5. This insurance conforms to the parts of the workers compensation law that apply to:

   a. benefits payable by this insurance or;

   b. special taxes, payments into security or other special funds, and assessments payable by us under that law.

6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO - EMPLOYERS LIABILITY INSURANCE

### A. How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury

WC 00 00 00 A

COMP 0078

by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

**B.  We Will Pay**

We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2. for care and loss of services; and

3. for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee;

provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

**C.  Exclusions**

This insurance does not cover:

1. liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. bodily injury intentionally caused or aggravated by you;

**WC 00 00 00 A**

6. bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions.

8. bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950), the Nonappropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws.

9. bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws.

10. bodily injury to a master or member of the crew of any vessel.

11. fines or penalties imposed for violation of federal or state law.

12. damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

**D.  We Will Defend**

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

COMP 0079

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

### E. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim proceeding, or suit we defend:

1. reasonable expenses incurred at our request; but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

### F. Other Insurance

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

### G. Limits of Liability

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1. Bodily Injury by Accident. The limit shown for "bodily injury by accident-each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury by Disease. The limit shown for "bodily injury by disease-policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease-each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3. We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

### H. Recovery From Others

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

### I. Actions Against Us

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability. The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

## PART THREE - OTHER STATES INSURANCE

### A. How This Insurance Applies

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as

though that state were listed in Item 3.A. of the Information Page.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the

WC 00 00 00 A

COMP 0080

Information Page, coverage will not be af-
forded for that state unless we are notified
within thirty days.

**B.  Notice**

Tell us at once if you begin work in any state listed
in Item 3.C. of the Information Page.

## PART FOUR - YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by
this policy. Your other duties are listed here.

1.  Provide for immediate medical and other ser-
vices required by the workers compensation
law.

2.  Give us or our agent the names and ad-
dresses of the injured persons and of wit-
nesses, and other information we may need.

3.  Promptly give us all notices, demands and le-
gal papers related to the injury, claim, pro-
ceeding or suit.

4.  Cooperate with us and assist us, as we may
request, in the investigation, settlement or de-
fense of any claim, proceeding or suit.

5.  Do nothing after an injury occurs that would
interfere with our right to recover from others.

6.  Do not voluntarily make payments, assume
obligations or incur expenses, except at your
own cost.

## PART FIVE - PREMIUM

**A.  Our Manuals**

All premium for this policy will be determined by our
manuals of rules, rates, rating plans and classifica-
tions. We may change our manuals and apply the
changes to this policy if authorized by law or a
governmental agency regulating this insurance.

**B.  Classifications**

Item 4 of the Information Page shows the rate and
premium basis for certain business or work classi-
fications.  These classifications were assigned
based on an estimate of the exposures you would
have during the policy period.  If your actual expo-
sures are not properly described by those classi-
fications, we will assign proper classifications, rates
and premium basis by endorsement to this policy.

**C.  Remuneration**

Premium for each work classification is determined
by multiplying a rate times a premium basis.
Remuneration is the most common premium basis.
This premium basis includes payroll and all other
remuneration paid or payable during the policy pe-
riod for the services of:

1.  All your officers and employees engaged in
work covered by this policy; and

2.  All other persons engaged in work that could
make us liable under Part One (Workers
Compensation Insurance) of this policy. If you
do not have payroll records for these persons,
the contract price for their services and mate-
rials may be used as the premium basis. This
paragraph 2 will not apply if you give us proof

that the employers of these persons lawfully
secured their workers compensation obli-
gations.

**D.  Premium Payments**

You will pay all premium when due.  You will pay
the premium even if part or all of a workers com-
pensation law is not valid.

**E.  Final Premium**

The premium shown on the Information Page,
schedules, and endorsements is an estimate.  The
final premium will be determined after this policy
ends by using the actual, not the estimated, pre-
mium basis and the proper classifications and rates
that lawfully apply to the business and work cov-
ered by this policy.  If the final premium is more
than the premium you paid to us, you must pay us
the balance.  If it is less, we will refund the balance
to you. The final premium will not be less than the
highest minimum premium for the classifications
covered by this policy.

If this policy is canceled, final premium will be de-
termined in the following way unless our manuals
provide otherwise.

1.  If we cancel, final premium will be calculated
pro rata based on the time this policy was in
force. Final premium will not be less than the
pro rata share of the minimum premium.

2.  If you cancel, final premium will be more than
pro rata; it will be based on the time this policy
was in force, and increased by our short rate

**WC 00 00 00 A**

cancellation table and procedure. Final premium will not be less than the minimum premium.

## F.  Records

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

## G.  Audit

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

## PART SIX - CONDITIONS

## A.  Inspection

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

## B.  Long Term Policy

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

## C.  Transfer of Your Rights and Duties

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

## D.  Cancellation

1.  You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.  We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3.  The policy period will end on the day and hour stated in the cancellation notice.

4.  Any of these provisions that conflicts with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

## E.  Sole Representative

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancellation.

WC 00 00 00 A

COMP 0082

**In Witness Whereof,** the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

The Insurance Company
of The State of Pennsylvania

President
National Union Fire
Insurance Company of
Pittsburgh, PA

President
Commerce and Industry
Insurance Company

President
American Home
Assurance Company

President
Birmingham Fire Insurance
Company of Pennsylvania

Secretary
National Union Fire Insurance Company of Pittsburgh, PA
American Home Assurance Company
The Insurance Company of The State of Pennsylvania
Birmingham Fire Insurance Company of Pennsylvania
Commerce and Industry Insurance Company

WC 00 00 00 A                                    7 of 7

COMP 0083

## LARGE RISK RATING PLAN ENDORSEMENT

**Section 9. The Rating Values and Amounts** shown below apply as the *Basis* of the *Final Premium* for the policies described in Section 1 of this Part II.

If the Rating Period exceeds one year; and if the estimated *Basis* of Premium, Minimum Premiums and Estimated Premiums shown below apply only to the first year, on or about each anniversary of the beginning of the Rating Period, we will issue an extension of this Section to show the rating values and amounts for each subsequent year of the Rating Period.

### Item A. *Subject Premium*, part of *Final Premium*

| Line Items | Rates | Per | *Basis* Types | Estimated Basis | Minimum Premium | Estimated Premium |
|---|---|---|---|---|---|---|
| Expected Primary Losses | 0.0000 | 1 | ULTIMATE LOSSES | 0 | $0 | $2,373,000 |
| Claims Service Fees | 0.0000 | 1 | CONTRACT | 0 | $6,446 | $64,458 |
| Broker's Commission | 0.3420 | 100 | WC PAYROLL | 27,779,871 | $0 | $95,000 |
| IntelliRisk | 0.0000 | 1 | FLAT | 0 | $8,650 | $8,650 |
| Insurance Charge | 0.3887 | 100 | WC PAYROLL | 27,779,871 | $89,699 | $89,699 |
| Total Taxes and Assessments | 3.3823 | 100 | STANDARD PREMIUM | 2,202,073 | $0 | $74,038 |
| Administration including Loss Control | 0.5580 | 100 | WC PAYROLL | 27,779,871 | $93,000 | $155,000 |
| | | | | | **Subtotal** | **$2,859,845** |

| Taxes/Assessments % | 0.0000% | or | Taxes/Assessments Divisor: | 0.000000 | | $0 |
|---|---|---|---|---|---|---|
| | | | **Estimated Total *Subject* Premiums** | | | **$2,859,845** |

### Item B. Non-*Subject* Premiums, part of *Final Premium*

| Coverage Description | Rates | Per | *Basis* Types | Estimated Basis | Minimum Premium | Estimated Premium |
|---|---|---|---|---|---|---|
| Excess PremiumWCThe Entire Contract | 0.9646 | 100 | WC PAYROLL | 27,779,871 | $267,957 | $267,957 |
| | | | **Estimated Total Non-*Subject* Premiums** | | | **$267,957** |

### Item C. Summary of Expected Total Cost

| | | | | | | |
|---|---|---|---|---|---|---|
| Estimated *Final Premium* (Part A. plus Part B) | | | | | | $3,127,802 |
| Expected *Reimbursable Losses* and *Deductible Losses* and *Self-Insured Losses* and *ALAE*, if applicable | | | | | | $0 |
| Minimum Cost from Section 6. If not applicable, show $0 | | | | | | $0 |
| Maximum Cost from Section 6. If not applicable, show $0 | | | | | | $0 |
| Surcharges: | 0.0000 | 1 | STANDARD PREMIUM | 0 | $0 | $53,720 |
| | | | **EXPECTED TOTAL COST** | | | **$3,181,522** |

Copyright 2004 American International Group, Inc.
01/01/2005 00:01 5444793

INSURED'S COPY

COMP 0084

## LARGE RISK RATING PLAN ENDORSEMENT

**Section 9. The Rating Values and Amounts** shown below apply as the *Basis* of the *Final Premium* for the policies described in Section 1 of this Part II.

If the Rating Period exceeds one year; and if the estimated *Basis* of Premium. Minimum Premiums and Estimated Premiums shown below apply only to the first year, on or about each anniversary of the beginning of the Rating Period, we will issue an extension of this Section to show the rating values and amounts for each subsequent year of the Rating Period.

### Item A. Subject Premium, part of Final Premium

| Line Items | Rates | Per | Basis Types | Estimated Basis | Minimum Premium | Estimated Premium |
|---|---|---|---|---|---|---|
| Expected Primary Losses | 0.0000 | 1 | ULTIMATE LOSSES | 0 | $0 | $2,373,000 |
| Claims Service Fees | 0.0000 | 1 | CONTRACT | 0 | $8,446 | $54,458 |
| Broker's Commission | 0.3420 | 100 | WC PAYROLL | 27,779,871 | $0 | $95,000 |
| IntelliRisk | 0.0000 | 1 | FLAT | 0 | $8,650 | $8,650 |
| Insurance Charge | 0.3887 | 100 | WC PAYROLL | 27,779,871 | $89,699 | $89,699 |
| Total Taxes and Assessments | 3.3823 | 100 | STANDARD PREMIUM | 2,202,073 | $0 | $74,038 |
| Administration including Loss Control | 0.5580 | 100 | WC PAYROLL | 27,779,871 | $93,000 | $155,000 |
| | | | | | **Subtotal** | **$2,869,845** |
| Taxes/Assessments % | 0.0000% | or | Taxes/Assessments Divisor: | 0.000000 | | $0 |
| | | | | Estimated Total *Subject Premiums* | | $2,869,845 |

### Item B. Non-Subject Premiums, part of Final Premium

| Coverage Description | Rates | Per | Basis Types | Estimated Basis | Minimum Premium | Estimated Premium |
|---|---|---|---|---|---|---|
| Excess PremiumWCThe Entire Contract | 0.9646 | 100 | WC PAYROLL | 27,779,871 | $267,957 | $267,957 |
| | | | Estimated Total *Non-Subject Premiums* | | | $267,957 |

### Item C. Summary of Expected Total Cost

| | | | | | | |
|---|---|---|---|---|---|---|
| Estimated *Final Premium* (Part A. plus Part B) | | | | | | $3,127,802 |
| Expected *Reimbursable Losses* and *Deductible Losses* and *Self-Insured Losses* and *ALAE*, if applicable | | | | | | $0 |
| Minimum Cost from Section 6. If not applicable, show $0 | | | | | | $0 |
| Maximum Cost from Section 6. If not applicable, show $0 | | | | | | $0 |
| Surcharges: | 0.0000 | 1 | STANDARD PREMIUM | 0 | $0 | $53,720 |
| | | | | EXPECTED TOTAL COST | | $3,181,522 |

Copyright 2004 American International Group, Inc.
01/01/2005 05:01:01 944579

INSURED'S COPY

COMP 0085

## LARGE RISK RATING PLAN ENDORSEMENT

### PART III. AGGREGATE STOP

The *Aggregate Stop Amount* and the *Aggregate Stop Limit*, if any, shown in the Schedule below will be applied as explained below.

#### Section I. Aggregate Stop Amount

1. If an *Aggregate Stop Amount* is shown in the Schedule below, we will not include more than the *Aggregate Stop Amount* in the computation of the *Final Premium* and determination of maximum benefits, damages and "ALAE" payable or reimbursable by you under the terms of the policies described in Section I of PART II, subject to any *Aggregate Stop Limit* shown in the Schedule below.

   The maximum benefits, damages and *ALAE* to be included in the computation of the *Final Premium* will be the *Aggregate Stop Amount* shown in the Schedule below, less the following:

   a) all *Subject Losses* that you must reimburse us for under any Loss Reimbursement or Deductible terms applicable to the policy covering the *Incurred Loss*, and

   b) such amounts as described in Section III below that you have paid as *Self-Insured Losses.*

2. **Adjustment:** If an Adjustment Rate and an Adjustment *Basis* are shown in the Schedule below, the *Aggregate Stop Amount* shown in the Schedule below is only an estimate. The *Aggregate Stop Amount* will be finally determined by multiplying the Adjustment Rate by the final Adjustment *Basis* as determined by our audit of your books and records. The *Aggregate Stop Amount* will not be less than the estimated amount shown in the Schedule below, unless otherwise set forth in Section 11 of PART Two

3. The *Aggregate Stop Amount* will not be reduced on account of the cancellation of any policy to which this Endorsement applies.

#### Section II. Aggregate Stop Limit

1. If an *Aggregate Stop Limit* is shown in the Schedule below, that Limit is the most *Subject Losses* above the *Aggregate Stop Amount* that will be excluded from the computation of the *Final Premium* and which you will not be required to reimburse us for under any Loss Reimbursement or Deductible terms of the policies described in Section I of PART II.

2. The *Aggregate Stop Limit* will not be reduced on account of the cancellation of any policy to which this Endorsement applies.

#### Section III. Self-Insured Losses

*Self-Insured Losses:* Losses you incur to which no insurance applies under the policies described in Section I of PART II will NOT be included in determining whether or when the *Aggregate Stop Amount* or *Aggregate Stop Limit* have been reached, except as described herein:

Exceptions: None

### SCHEDULE

#### *Aggregate Stop Amount* and *Aggregate Stop Limit*

Line of Insurance:        Workers Compensation - Insured.

The *Aggregate Stop Amount* and the *Aggregate Stop Limit* apply to the ☐ first year of, or ☒ entire Rating Period.

| | | | | | |
|---|---|---|---|---|---|
| a. | *Aggregate Stop Amount*, adjustable on the *Basis* and rate shown below. | | | | $4,500,000 |
| b. | *Basis* of Adjustment Amount: | **WC PAYROLL** | Per | 100 | Estimated *Basis* $27,779,871 |
| | | | | Adjustment Rate: | 16.1988 |
| c. | *Aggregate Stop Limit* | | | | $0 |

Countersigned by _____ Date _____

(Authorized Signature)

01X12005 01.01 9446791

INSURED'S COPY

COMP 0086

EXHIBIT

D

COMP 0087

ISSUED BY THE STOCK INSURANCE COMPANY HEREIN CALLED THE COMPANY

AMERICAN HOME ASSURANCE COMPANY
13781

AGENT NUMBER
61342-0000

POLICY NUMBER
WC   124-14-96
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-30

INCORPORATED UNDER THE LAWS OF   NEW YORK
ITEM 1.    NAMED INSURED    MAILING ADDRESS    IDENTIFICATION NO.:

ALTMAN SPECIALTY PLANTS, INC.
3742 BLUE BIRD CANYON ROAD
VISTA, CA 92084-0000

SEE NAME AND ADDRESS SCHEDULE - WC990610
I.D# 3376106         CA UI#:

MAY 22 2006

Member Companies of
American International Group

EXECUTIVE OFFICES:
70 PINE STREET, NEW YORK, N.Y. 10270

**WORKERS COMPENSATION AND EMPLOYERS
LIABILITY POLICY INFORMATION PAGE**

PRODUCERS' NAME AND ADDRESS

G.S. LEVINE INSURANCE SERVICES
10505 SORRENTO VALLEY RD., STE 200
SAN DIEGO, CA 92121-1041

INSURED IS
CORPORATION

PREVIOUS POLICY NUMBER
RENEWAL    001241496

OTHER WORKPLACES NOT SHOWN ABOVE: SEE NAME AND ADDRESS SCHEDULE - WC990610

ITEM 2  POLICY PERIOD 12:01 A.M. standard time at the insured's
mailing address

FROM  01/01/06    to   01/01/07

ITEM 3  A. Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of the states listed here:

CA

B. Employers Liability Insurance: Part Two of the policy applies to the work in each state listed in Item 3.A.
The limits of our liability under Part Two are:

Bodily Injury by Accident $ _____ 1,000,000 each accident
Bodily Injury by Disease $ _____ 1,000,000 policy limit
Bodily Injury by Disease $ _____ 1,000,000 each employee

C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here:
NONE

ITEM 4  The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans.
All information required below is subject to verification and change by audit.

| Classifications | Code Number | Estimated Total Remuneration [X] Annual ☐ 3 Year | Rate Per $100 OF Re- muneration | Estimated Premium [X] Annual ☐ 3 Year |
|---|---|---|---|---|
| SEE EXTENSION OF INFORMATION PAGE - WC7754 TAXES/ASSESSMENTS/SURCHARGES | | | | $44,893 |

EXPENSE CONSTANT (EXCEPT WHERE APPLICABLE BY STATE)    $160 CA

MINIMUM PREMIUM    $750 CA

If indicated below, interim adjustments of premium shall be made:

☐ Semi-Annually    ☐ Quarterly    ☐ Monthly

TOTAL ESTIMATED PREMIUM    $1,730,184

DEPOSIT PREMIUM    $1,730,184

ENDORSEMENTS (FORM NUMBER)    SEE ATTACHED FORM SCHEDULE - WC990612

05/12/06 LOS ANGELES
Issue Date
39987

05
Issuing Office

Authorized Representative    WC 00 00 01

FORMS SCHEDULE

Policy Number: WC 124-14-96                          Effective Date: 01/01/2006

| | |
|---|---|
| FORTRSM | FOREIGN TERRORISM POLHOLDR NOT-PREM DTHN |
| WC000113 | TRIA EXTENSION ACT ENDT. |
| WC000406 | PREMIUM DISCOUNT ENDORSEMENT |
| WC000422 | FOREIGN TERRORISM PREMIUM ENDT. |
| WCOFAC | NOTICE REG OFFICE OF FOREIGN ASSET CTRL |
| 78052C | PRIVACY POLICY |
| 55154WC | CALIFORNIA FRAUD ASSESSMENT |
| WC040002A | CA-ADMINISTRATION REVOLVING FUND ASMNT |
| WC040305 | CA VOL COMP & EMPLOYERS LIAB |
| WC040360 | CA EMPLOYERS LIAB COV AMENDATORY ENDT |
| WC040402 | CA MANDATORY RATE CHANGE ENDT |
| WC040407 | CA PREMIUM ADJUSTMENT ENDT |
| WC040410 | CA ESTIMATED ANNUAL PREMIUM ENDT |
| WC990017 | CALIFORNIA CANCELLATION ENDORSEMENT |
| WC990407 | CA POLICY AMENDATORY ENDT |
| WC990408B | CA NOTIF OF LOSS CONTROL SERVICES |
| WC990409 | CA POLICYHOLDER NOTICE - CIGA SURCHARGE |
| WC990410 | POLICYHOLDER NOTICE |
| WC990411 | CA ADV NOTICE OF CANC OR NON-REN EXTD |
| WC990413A | POLICYHOLDER NOTICE |
| WC990422 | VOLUNTARY FOREIGN COVERAGE ENDT. CA ONLY |
| WC990610 | NAMED INSUREDS/ADDRESSES |
| 81461 | LARGE RISK RATING PLAN ENDORSEMENT |

# WORKERS COMPENSATION AND EMPLOYERS LIABILITY

# INSURANCE POLICY

National Union Fire Insurance
Company of Pittsburgh, Pa.

American Home Assurance Company

The Insurance Company of
The State of Pennsylvania

Birmingham Fire Insurance Company
of Pennsylvania

Commerce and Industry
Insurance Company



**Member Companies of
American International Group, Inc.**
EXECUTIVE OFFICES
70 PINE STREET
NEW YORK, N.Y. 10270

Coverage is provided by the Company designated on the Information Page
A Stock Insurance Company

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY
QUICK REFERENCE**

|  | BEGINNING ON PAGE |
|---|---|
| Information Page | i |
| **GENERAL SECTION** | 1 |
| A. The Policy | 1 |
| B. Who Is Insured | 1 |
| C. Workers Compensation Law | 1 |
| D. State | 1 |
| E. Locations | 1 |
| **PART ONE-WORKERS COMPENSATION INSURANCE** | 1 |
| A. How This Insurance Applies | 1 |
| B. We Will Pay | 1 |
| C. We Will Defend | 1 |
| D. We Will Also Pay | 1 |
| E. Other Insurance | 2 |
| F. Payments You Must Make | 2 |
| G. Recovery From Others | 2 |
| H. Statutory Provisions | 2 |

THESE POLICY PROVISIONS WITH THE INFORMATION PAGE AND ENDORSEMENTS,
IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THIS POLICY.

"INCLUDES COPYRIGHT MATERIAL OF THE NATIONAL COUNCIL ON COMPENSATION
INSURANCE, USED WITH ITS PERMISSION.

COPYRIGHT 1983 NATIONAL COUNCIL ON COMPENSATION INSURANCE"

39838C(04/92)

WC 00 00 00 A (STANDARD)

COMP 0090

## QUICK REFERENCE – CONTINUED

BEGINNING ON
PAGE

PART TWO - EMPLOYERS LIABILITY INSURANCE ..................................................................... 2
    A.  How This Insurance Applies ......................................................................................... 2
    B.  We Will Pay ...................................................................................................................... 3
    C.  Exclusions ....................................................................................................................... 3
    D.  We Will Defend ............................................................................................................... 3
    E.  We Will Also Pay ............................................................................................................. 4
    F.  Other Insurance ............................................................................................................. 4
    G.  Limits of Liability ........................................................................................................... 4
    H.  Recovery From Others ................................................................................................... 4
    I.  Action Against Us ........................................................................................................... 4

PART THREE - OTHER STATES INSURANCE ............................................................................. 4
    A.  How This Insurance Applies ......................................................................................... 4
    B.  Notice ............................................................................................................................... 5

PART FOUR - YOUR DUTIES IF INJURY OCCURS ..................................................................... 5

PART FIVE - PREMIUM .................................................................................................................. 5
    A.  Our Manuals ................................................................................................................... 5
    B.  Classifications ................................................................................................................ 5
    C.  Remuneration ................................................................................................................. 5
    D.  Premium Payments ........................................................................................................ 5
    E.  Final Premium ................................................................................................................ 5
    F.  Records ............................................................................................................................ 6
    G.  Audit ................................................................................................................................ 6

PART SIX - CONDITIONS ............................................................................................................... 6
    A.  Inspection ....................................................................................................................... 6
    B.  Long Term Policy ........................................................................................................... 6
    C.  Transfer of Your Rights and Duties .............................................................................. 6
    D.  Cancellation ................................................................................................................... 6
    E.  Sole Representative ....................................................................................................... 6

IMPORTANT: This Quick Reference is **not** part of the Workers Compensation and Employers Liability Policy and does **not** provide coverage. Refer to the Workers Compensation and Employers Liability Policy itself for actual contractual provisions.

## PLEASE READ THE WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY CAREFULLY

ATTACH FORM AND ENDORSEMENTS (IF ANY) HERE

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows.

### GENERAL SECTION

**A.  The Policy**

This policy includes at its effective date the Information Page and all endorsements and schedules listed there.  It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page).  The only agreements relating to this insurance are stated in this policy.  The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

**B.  Who Is Insured**

You are insured if you are an employer named in Item 1 of the Information Page.  If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

**C.  Workers Compensation Law**

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A of the Information Page.  It includes any amendments to that law which are in effect during the policy period.  It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

**D.  State**

State means any state of the United States of America, and the District of Columbia.

**E.  Locations**

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A states unless you have other insurance or are self-insured for such workplaces.

### PART ONE · WORKERS COMPENSATION INSURANCE

**A.  How This Insurance Applies**

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease.  Bodily injury includes resulting death.

1.  Bodily injury by accident must occur during the policy period.

2.  Bodily injury by disease must be caused or aggravated by the conditions of your employment.  The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

**B.  We Will Pay**

We will pay promptly when due the benefits required of you by the workers compensation law.

**C.  We Will Defend**

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance.  We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

**D.  We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1.  reasonable expenses incurred at our request, but not loss of earnings;

2.  premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

WC 00 00 00 A

1 of 7

COMP 0092

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

### E. Other Insurance

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

### F. Payments You Must Make

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct;

2. you knowingly employ an employee in violation of law;

3. you fail to comply with a health or safety law or regulation; or

4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

### G. Recovery From Others

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

### H. Statutory Provisions

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.

2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5. This insurance conforms to the parts of the workers compensation law that apply to:

   a. benefits payable by this insurance or;

   b. special taxes, payments into security or other special funds, and assessments payable by us under that law.

6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO - EMPLOYERS LIABILITY INSURANCE

### A. How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury

WC 00 00 00 A

COMP 0093

by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

B. **We Will Pay**

We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2. for care and loss of services; and

3. for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee;

provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

C. **Exclusions**

This insurance does not cover:

1. liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. bodily injury intentionally caused or aggravated by you;

6. bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions.

8. bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950), the Nonappropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws.

9. bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws.

10. bodily injury to a master or member of the crew of any vessel.

11. fines or penalties imposed for violation of federal or state law.

12. damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

D. **We Will Defend**

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

**WC 00 00 00 A**

COMP 0094

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

### E.  We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim proceeding, or suit we defend;

1.  reasonable expenses incurred at our request; but not loss of earnings;

2.  premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3.  litigation costs taxed against you;

4.  interest on a judgment as required by law until we offer the amount due under this insurance; and

5.  expenses we incur.

### F.  Other Insurance

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

### G.  Limits of Liability

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1.  Bodily Injury by Accident. The limit shown for "bodily injury by accident-each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2.  Bodily Injury by Disease. The limit shown for "bodily injury by disease-policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease-each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3.  We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

### H.  Recovery From Others

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

### I.  Actions Against Us

There will be no right of action against us under this insurance unless:

1.  You have complied with all the terms of this policy; and

2.  The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability. The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

### PART THREE - OTHER STATES INSURANCE

### A.  How This Insurance Applies

1.  This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2.  If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as

though that state were listed in Item 3.A. of the Information Page.

3.  We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4.  If you have work on the effective date of this policy in any state not listed in Item 3.A. of the

WC 00 00 00 A

COMP 0095

Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

B. **Notice**

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

## PART FOUR - YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1. Provide for immediate medical and other services required by the workers compensation law.

2. Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3. Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5. Do nothing after an injury occurs that would interfere with our right to recover from others.

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE - PREMIUM

A. **Our Manuals**

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

B. **Classifications**

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

C. **Remuneration**

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. All your officers and employees engaged in work covered by this policy; and

2. All other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof

that the employers of these persons lawfully secured their workers compensation obligations.

D. **Premium Payments**

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

E. **Final Premium**

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is canceled, final premium will be determined in the following way unless our manuals provide otherwise.

1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short rate

WC 00 00 00 A

COMP 0096

cancellation table and procedure. Final premium will not be less than the minimum premium.

## F. Records

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

## G. Audit

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

## PART SIX - CONDITIONS

## A. Inspection

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

## B. Long Term Policy

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

## C. Transfer of Your Rights and Duties

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

## D. Cancellation

1.  You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.  We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3.  The policy period will end on the day and hour stated in the cancellation notice.

4.  Any of these provisions that conflicts with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

## E. Sole Representative

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancellation.

WC 00 00 00 A

COMP 0097

**In Witness Whereof,** the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

The Insurance Company
of The State of Pennsylvania

President
National Union Fire
Insurance Company of
Pittsburgh, PA

President
Commerce and Industry
Insurance Company

President
American Home
Assurance Company

President
Birmingham Fire Insurance
Company of Pennsylvania

Secretary
National Union Fire Insurance Company of Pittsburgh, PA
American Home Assurance Company
The Insurance Company of The State of Pennsylvania
Birmingham Fire Insurance Company of Pennsylvania
Commerce and Industry Insurance Company

WC 00 00 00 A                    7 of 7

COMP 0098

## STANDARD WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY EXTENSION FORM

WC   124-14-96                    CALIFORNIA                         3376106
_____          _____          _____
   Policy Prefix & No.                 Schedule               INTRA/Independent State Risk ID
-------------------------

   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-30          ALTMAN SPECIALTY PLANTS, INC.

| Item 4. Classification of Operations | | | Premium Basis | Rates | |
|---|---|---|---|---|---|
| Entries in this item, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | | Code No. | Estimated Total Annual Remuneration | Per $100 of Remuneration | Estimated Annual Premium |
| RATING GROUP:  0001-01 | | | | | |
| NURSERIES-PROPAGATION AND CULTIVATION OF NURSERY STOCK | | 0005 | 17,640,760 | 8.33 | 1,469,475 |
| SALESPERSONS-OUTSIDE | | 8742 | 4,454,894 | 1.44 | 64,150 |
| CLERICAL OFFICE EMPLOYEES-N.O.C. | | 8810 | 2,228,074 | 1.35 | 30,079 |
| CLERICAL OFFICE EMPLOYEES-N.O.C. | | 8810V | IF ANY | 1.35 | |
| STATE OF CALIFORNIA TOTALS | | | | | |
| TOTAL CLASSIFICATION PREMIUM | | | | | 1,563,704 |
| TOTAL UNMODIFIED PREMIUM | | | | | 1,563,704 |
| EXPERIENCE PREMIUM       (EXPIRING) | 1.7200 | 9897 | | | 1,125,867 |
| SCHEDULE MODIFICATION | -20.00% | 9887 | | | -537,914 |
| MODIFIED STANDARD PREMIUM | | | | | 2,151,657 |
| UNDISCOUNTED PREMIUM | | | | | 2,151,657 |
| NEGOTIATED PREMIUM DISCOUNT | -19.93% | 0063 | | | -428,825 |
| DISCOUNTED PREMIUM | | | | | 1,722,832 |
| EXPENSE CONSTANT | | 0900 | | | 160 |
| TERRORISM RISK INS ACT 2002 | 0.4599% | 9740 | | | 7,192 |
| TOTAL ESTIMATED PREMIUM | | | | | 1,730,184 |
| GUARANTEE ASSOCIATION ASSESS | 2.00% | 9713 | | | 34,604 |
| CA ADMIN REVOLVING FUND ASSESS | 0.3935% | 9683 | | | 6,808 |
| CA FRAUD ASSESSMENT | 0.0844% | 9682 | | | 1,460 |
| UIEB TRUST FUND ASSESSMENT | 0.0812% | 9705 | | | 1,405 |
| SIB TRUST FUND ASSESSMENT | 0.0356% | 9706 | | | 616 |
| TOTAL DUE | | | | | |
| EXPERIENCE RATING MODIFICATION = 1.72 | | | | | 1,775,077 |

WC 7754 (Ed. 4-81)      **See Name and Address Schedule – WC990610**

**FOREIGN TERRORISM (TRIA) POLICYHOLDER NOTICE - PREMIUM DETERMINATION**

As indicated in Form No. WC 00 04 22, your Foreign Terrorism (TRIA) premium is shown in Form WC 7754. The schedule below shows how the premium for Foreign Terrorism (TRIA) is determined.

**Schedule**

| State | Premium Determination Method |
|---|---|
| Arizona ......................................................................... | Rate per $100 of Remuneration in addition to rate included in Arizona premium as set forth below**. |
| Colorado, Connecticut, New Jersey and Wisconsin ............... | Rate per $100 of Remuneration. |
| New York ...................................................................... | Rate per $100 of Remuneration and rate applied to Total Classification Premium. |
| Idaho, Kansas, Maine, New Hampshire and Virginia ............... | Included in Rates applied to Premium Basis (Remuneration) for calculation of annual premium for each applicable classification of operations. |
| Alabama, Alaska, Iowa, Montana, Nevada and Tennessee ...... | Rate per $100 of Remuneration in addition to charge included in rates applied to Premium Basis (Remuneration) for calculation of annual premium for each applicable classification of operations. |
| All Other States ............................................................. | Rate applied to Total Classification Premium. |

\*\*	For policies issued by Commerce and Industry Insurance Company, AIU Insurance Company or New Hampshire Insurance Company the total premium for Arizona also includes a charge for this coverage in the rates applied to Premium Basis (Remuneration) for each applicable classification of operations.

For policies issued by American Home Assurance Company, American International South Insurance Company, Birmingham Fire Insurance Company of Pennsylvania, Granite State Insurance Company, Illinois National Insurance Co., National Union Fire Insurance Company of Pittsburgh, Pa. or The Insurance Company of the State of Pennsylvania the total premium for Arizona also includes a charge for this coverage determined by applying a rate against the Schedule Modification factor.

**FORTRSM**
**(Ed. 01/06)**

## TERRORISM RISK INSURANCE EXTENSION ACT ENDORSEMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2006          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

This endorsement addresses the requirements of the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Extension Act of 2005.

**Definitions**

The definitions provided in this endorsement are based on the definitions in the Act and are intended to have the same meaning. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply. "Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments resulting from the Terrorism Risk Insurance Extension Act of 2005.

"Act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States as meeting all of the following requirements:

   a.  The act is an act of terrorism.

   b.  The act is violent or dangerous to human life, property or infrastructure.

   c.  The act resulted in damage within the United States, or outside of the United States in the case of United States missions or certain air carriers or vessels.

   d.  The act has been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured terrorism or war loss" means any loss resulting from an act of terrorism (including an act of war, in the case of workers compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at United States missions or to certain air carriers or vessels.

"Insurer deductible" means:

   a.  For the period beginning on November 26, 2002 and ending on December 31, 2002, an amount equal to 1% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding November 26, 2002.

   b.  For the period beginning on January 1, 2003 and ending on December 31, 2003, an amount equal to 7% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding January 1, 2003.

   c.  For the period beginning on January 1, 2004 and ending on December 31, 2004, an amount equal to 10% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding January 1, 2004.

   d.  For the period beginning on January 1, 2005 and ending on December 31, 2005, an amount equal to 15% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding January 1, 2005.

   e.  For the period beginning on January 1, 2006 and ending on December 31, 2006, an amount equal to 17.5% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding January 1, 2006.

WC 00 01 13
(Ed. 01/06)
© 2002-2005 National Council on Compensation Insurance, Inc.          Page 1 of 2

f.  For the period beginning on January 1, 2007 and ending on December 31, 2007, an amount equal to 20% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding January 1, 2007.

**Limitation of Liability**

The Act may limit our liability to you under this policy. If annual aggregate insured terrorism or war losses of all insurers exceed $100,000,000,000 during the applicable period provided in the Act, and if we have met our insurer deductible, the amount we will pay for insured terrorism or war losses under this policy will be limited by the Act, as determined by the Secretary of the Treasury.

**Policyholder Disclosure Notice**

1.  Insured terrorism or war losses would be partially reimbursed by the United States Government under a formula established by the Act. Under this formula, the United States Government would pay 90% for Program Year 4 and 85% for Program Year 5 of our insured terrorism or war losses exceeding our insurer deductible.

2.  The premium charged for the coverage this policy provides for insured terrorism or war losses is included in the amount shown in Item 4 of the Information Page or in the Schedule in the Foreign Terrorism Premium Endorsement. (WC 00 04 22), attached to this policy.

WC 00 01 13
(Ed. 01/06)

© 2002-2005 National Council on Compensation Insurance, Inc.

Countersigned by _____

Authorized Representative

COMP 0102

## IMPORTANT NOTICE TO OUR CUSTOMERS
### REGARDING THE
### OFFICE OF FOREIGN ASSETS CONTROL

Your rights as a policyholder and payments to you, any insured, additional insured, loss payee, mortgagee, or claimant, for loss under this policy may be affected by the administration and enforcement of U.S. economic embargoes and trade sanctions by the OFFICE OF FOREIGN ASSETS CONTROL ("OFAC").

### WHAT IS OFAC?

OFAC is an office of the Department of the Treasury and acts under presidential wartime and national emergency powers, as well as authority granted by specific legislation, to impose controls on transactions and freeze foreign assets under U.S. jurisdiction. OFAC administers and enforces economic embargoes and trade sanctions primarily against:

- Targeted foreign countries and their agents

- Terrorism sponsoring agencies and organizations

- International narcotics traffickers

### PROHIBITED ACTIVITY

- OFAC enforces certain embargoes and sanctions against certain designated countries. No U.S. business or person may enter into certain transactions in or connected to such designated "sanctioned" countries.

- OFAC maintains a directory known as the "Specially Designated Nationals and Blocked Persons" ("SDNBP") list. No U.S. business or person may transact business with any person or entity named on the SDNBP list.

Additional and more in-depth information on OFAC is available at the following website:
http://www.ustreas.gov/offices/eotffc/ofac.

### OBLIGATIONS PLACED ON US BY OFAC

If we determine that you or any insured, additional insured, loss payee, mortgagee, or claimant are on the SDNBP list or are connected to a sanctioned country as described in the regulations enforced by OFAC, we must block or "freeze" property and payment of any funds transfers or transactions and report all blocks to OFAC within ten (10) days.

### POTENTIAL ACTIONS BY US

1. We may immediately cancel your coverage effective on the day that we determine that we have transacted business with an individual or entity associated with your policy on the SDNBP list or connected to a sanctioned country as described in the regulations enforced by OFAC.

2. If we cancel your coverage, you will not receive a return premium unless approved by OFAC. All funds will be placed in an interest bearing blocked account established on the books of a U.S. financial institution.

3. We will not pay a claim, accept premium or exchange monies or assets of any kind to or with individuals, entities or companies (including a bank) on the SDNBP list or connected to a sanctioned country as described in the regulations enforced by OFAC. And, we will not defend or provide any other benefits under your policy to individuals, entities or companies on the SDNBP list or connected to a sanctioned country as described in the regulations enforced by OFAC.

### YOUR RIGHTS AS A POLICYHOLDER

If funds are blocked or frozen by us in conjunction with the OFFICE OF FOREIGN ASSETS CONTROL, you may complete an "APPLICATION FOR THE RELEASE OF BLOCKED FUNDS" and apply for a specific license to request their release. Forms are available for download at the OFAC website. See
http://www.ustreas.gov/offices/eotffc/ofac/legal/forms/license.pdf

WCOFAC
(Ed. 07/05)

**PRIVACY POLICY**

**Our Commitment to Privacy:**

The AIG Companies (AIG) believe one of our most important assets is the trust consumers place in us to respect and properly handle nonpublic personal information received by us in connection with providing our products and services. To continue earning your trust and enhance the products and services offered to you, the companies listed below have adopted the following privacy policy to govern how we treat your nonpublic personal information including such information about our former customers.

It's important for you to know that this privacy policy applies only to the product or service you have just obtained or the insurance policy under which you are seeking or receiving benefits. As a large worldwide leader in the delivery of financial products and services, we offer numerous products and services to many types of consumers and clients in many different states and countries around the world. Therefore, each of our companies may issue different privacy policies to fit the specific products and services they offer.

**Information We Collect:**

We collect information about you that is necessary to tailor our products and services to meet your individual needs, provide effective customer service, and comply with legal requirements.

We may collect nonpublic personal information about you, from one or more of the following sources:
- Information we receive from you on applications or other forms;
- Information about your transactions with us, our affiliates or others;
- Information we receive from a consumer-reporting agency; and
- Information received in handling claims.

**Sharing Information Within Our Family of Companies:**

We may share some or all of the nonpublic personal information we collect with our affiliates - the members of the AIG family of companies, unless such sharing of information is prohibited by law. In many cases, the information that is shared may be at your request or is necessary to administer, process or otherwise handle your transactions with us or settle a claim on your behalf. In addition, we may provide this information to our affiliates in order to offer you products and services in which you may be interested.

Our family of companies includes many insurance companies (e.g., auto, home, and life insurance), insurance claims handling companies, other financial institutions (e.g., savings bank), and non-financial institutions.

**Sharing Information Outside the AIG Family:**

Sometimes, we use companies or businesses outside the AIG family to administer, process, or otherwise handle your transactions with us, such as for claims handling or customer service. Other times, we may enter into contracts with nonaffiliated companies to perform services on our behalf, such as marketing our products and services, or we may enter into joint marketing agreements with other financial institutions. In these and other circumstances permitted by law, we may share some or all of the information we collect above with these nonaffiliated third parties. However, whenever we utilize a nonaffiliated third party to provide these services, they are required to follow federal privacy laws governing this notice. We also may share information to combat fraud, in response to a court order, or at the request of government regulators.

**Nonpublic Personal Health Information:**

We will not disclose nonpublic personal health information about you without obtaining prior written authorization from you, except as permitted by applicable law or regulation.

78052C
(Ed. 11/05)

Page 1 of 3

COMP 0104

**Protecting and Safeguarding Your Information:**

To help prevent unwarranted disclosure of your nonpublic information and secure it from theft, we utilize secure computer networks and restrict access to nonpublic personal information about you to those employees who need to know that information to provide products or services to you. In addition, we maintain physical, electronic, and procedural safeguards that comply with applicable laws and regulations to guard our customers' nonpublic personal information.

**Maintaining Accurate Information:**

We also maintain procedures to ensure that the information we collect is accurate, up-to-date, and as complete as possible. If you believe the information we have about you in our records or files is incomplete or inaccurate, you may request that we make additions or corrections, or if it is feasible, that we delete this information from our files. You may make this request in writing to (include your name, address and policy number):

Chief Privacy Officer
AIG - Domestic Brokerage Group
175 Water Street, 3rd Floor
New York, NY 10038

FAX: 212-785-9495

e-mail: DBG.Privacy@AIG.com

*Special notice for policyholders who reside in any of the following states: Arizona, California, Connecticut, Georgia, Illinois, Kansas, Maine, Massachusetts, Minnesota, Montana, Nevada, New Jersey, North Carolina, Ohio, Oregon, Virginia or Wisconsin: You can obtain access to any nonpublic personal information we have about you if you properly identify yourself and submit a written request to us at the address above describing the information you want to review (include your name, address and policy number). Once we have received your request, and if the information is reasonably locatable and retrievable, we will, within 30 business days, take the following actions:*

- *Inform you of the nature and substance of the recorded information;*
- *Allow you to see and copy, in person, such recorded personal information; or*
- *Send you a copy of the recorded personal information by mail (we may charge you a reasonable fee to cover the cost of this service).*

*We will also tell you at this time the identity, if recorded, of persons to whom we have disclosed the nonpublic personal information within the preceding two years.*

*If you ask us to correct, amend or delete any information about you, we will, within 30 business days, either correct, amend or delete the nonpublic personal information in dispute or notify you of our refusal to take such action along with the reasons for our decision. If we make the correction, amendment or deletion you've requested, we will also notify you along with any person you designate who has received the information about you within the preceding two years, together with any insurance support organization(s) which provided us with the disputed information.*

*If we refuse to make the requested correction, amendment or deletion, you are permitted to file a concise statement setting forth what you think is the correct, relevant or fair information along with a statement of the reasons why you disagree with our refusal to correct, amend or delete the information subject to dispute. We will file your statement with the disputed personal information and make any person who reviews your file aware of your statement. We will also furnish your statement to any person who has received personal information from us within the two preceding years and any insurance support organization whose primary source of personal information is an insurer.*

78052C
(Ed. 11/05)

COMP 0105

**Important Information Concerning the Applicability and Future Changes to this Privacy Policy:**

This privacy policy applies, with respect to nonpublic personal financial information, to products or services provided primarily for personal, family, or household purposes in the United States by the AIG Companies listed below, and it applies to all nonpublic personal health information these Companies may have. Although we may change this policy at any time, please rest assured that you will be notified of any changes as required by law.

**AIG Companies Covered by this Policy:**

AIG Hawaii Insurance Company
AIU Insurance Company
American Home Assurance Company
American International Pacific Insurance Company
American International South Insurance Company
Birmingham Fire Insurance Company of Pennsylvania
Commerce and Industry Insurance Company
Granite State Insurance Company
Illinois National Insurance Co.
National Union Fire Insurance Company of Louisiana
National Union Fire Insurance Company of Pittsburgh, Pa.
New Hampshire Insurance Company
The Insurance Company of the State of Pennsylvania
American International Specialty Lines Insurance Company
American Pacific Insurance Company, Inc.
Landmark Insurance Company
Lexington Insurance Company
Agency Management Corporation
A. I. Risk Specialists Insurance, Inc.
A. I. Risk Specialists of Missouri, Inc.
American International Entertainment, Inc.
Eastern Risk Specialists, Inc.
Florida Risk Specialists, Inc.
The Gulf Agency, Inc.
Louisiana Risk Specialists, Inc.
Medical Excess Insurance Services, Inc.
Michigan Risk Specialists, Inc.
Midwestern Risk Specialists, Inc.
Nevada Risk Specialists, Inc.
New England Risk Specialists, Inc.
Northwestern Risk Specialists, Inc.
Risk Specialists Companies, Inc.
Risk Specialists Company (Bermuda), Ltd.
Risk Specialists Company of Colorado, Inc.
Risk Specialists Company of Kentucky, Inc.
Risk Specialists Company of Minnesota, Inc.
Risk Specialists Company of New Jersey, Inc.
Risk Specialists Company of New York, Inc.
Risk Specialists Company of Ohio, Inc.
Risk Specialists of the Carolinas, Inc.
Southeastern Risk Specialists, Inc.
Southern Risk Specialists, Inc.
Western Risk Specialists, Inc.
American International Surplus Lines Agency, Inc.
AIG Warranty Services and Insurance Agency, Inc.

and other member companies of the AIG family who sent you this privacy policy statement.

78052C
(Ed. 11/05)

COMP 0106

## CALIFORNIA WORKERS COMPENSATION
### FRAUD ASSESSMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2006          forms a part of Policy No. WC     124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

In order to fund increased investigation and prosecution of Workers Compensation fraud, Senate Bill 1218, statutes of 1990, created the Workers Compensation Fraud Account with the Insurance Fund administered by the Insurance Commissioner.  The proceeds of this fund include this annual assessment collected from all insured and self insured employers, and remitted by your insurance company to the Workers Compensation Fraud Account.

Surcharge Factor                         Surcharge Amount

   1.000844                                    $1,460

55154WC (12-92)          Countersigned by _____

**Authorized Representative**

COMP 0107

## CALIFORNIA – ADMINISTRATION REVOLVING FUND ASSESSMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM 01/01/2006          forms a part of Policy No. WC     124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

California Law requires insurers who provide Workers' Compensation insurance to collect an Administration Revolving Fund Assessment for each insured employer. The percentage, as determined by the Director of the Department of Industrial Relations, is applied to each insured employer's premium for the purpose of determining its share of the assessment to be paid. This surcharge amount is subject to adjustment at audit.

The Fund was established pursuant to the provisions of California Labor Code Section 62.5.

Your policy has been surcharged by the amount/percent stated below:

SURCHARGE AMOUNT:     $6,808

SURCHARGE PERCENT:   0.3935%

WC 04 00 02 A
(Ed. 8-91)                    Countersigned by _____          _____

                                                                              **Authorized Representative**

**VOLUNTARY COMPENSATION AND EMPLOYERS LIABILITY COVERAGE
ENDORSEMENT—CALIFORNIA**

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM 01/01/2006          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

If the employer named in item 1 of the Information Page has in his employment persons not entitled to compensation under Division 4 of of the Labor Code of the State of California, this policy shall operate as an election on the part of the employer to come under the compensation provisions of Division 4 with respect to those persons described in the Schedule below.

This policy applies to those persons described in the Schedule below as employees.

Schedule

ALL OFFICERS AND EMPLOYEES NOT SUBJECT TO THE WORKERS
COMPENSATION LAW EXCEPT MASTERS AND MEMBERS OF THE CREW OF
ANY VESSEL.

WC 04 03 05
(Ed. 1-85)          Countersigned by _____          _____

                                                                          **Authorized Representative**

## EMPLOYERS' LIABILITY COVERAGE AMENDATORY ENDORSEMENT – CALIFORNIA

This endorsement changes the policy to which it is attached effective on inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM 01/01/2006          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

by AMERICAN HOME ASSURANCE COMPANY

Premium

The insurance afforded by Part Two (Employers' Liability Insurance) by reason of designation of California in item 3 of the information page is subject to the following provisions:

A. "How This Insurance Applies", is amended to read as follows:

A.  **How This Insurance Applies**

This employers' liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury means a physical or mental injury, including resulting death. Bodily injury does not include emotional distress, anxiety, discomfort, inconvenience, depression, dissatisfaction or shock to the nervous system, unless caused by either a manifest physical injury or a disease with a physical dysfunction or condition resulting in treatment by a licensed physician and surgeon.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in California.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

C. "Exclusions", is amended to read as follows:

C.  **Exclusions**

This insurance does not cover:

1. liability assumed under a contract;

2. bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

3. any obligation imposed by a workers' compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

4. bodily injury intentionally caused or aggravated by you;

5. bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

6. bodily injury arising out of termination of employment;

7. bodily injury arising out of the coercion, demotion, reassignment, discipline, defamation, harassment or humiliation of, or discrimination against any employee.

WC 04 03 60
(Ed. 8-86)

Countersigned by _____

_Authorized Representative_ signature

**Authorized Representative**

## MANDATORY RATE CHANGE ENDORSEMENT-CALIFORNIA

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2006          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

The premium and rates with respect to the insurance provided by this policy by reason of the designation of California in Item 3 of the Information Page are subject to change if ordered by the Insurance Commissioner of the State of California pursuant to Section 11737 of the California Insurance Code.

WC 04 04 02
(Ed. 01-95)                    Countersigned by _____    _____

                                                                    Authorized Representative

COMP 0111

### PREMIUM ADJUSTMENT ENDORSEMENT- CALIFORNIA

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM   01/01/2006          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

We have the right to adjust the policy premium after issuance of the policy if the cost of providing the benefits required under the workers' compensation laws of California is affected by legislative or regulatory changes adopted after issuance of the policy. The amount of the adjustment will not exceed the change in the cost of providing the benefits as reflected in the pure premium rates approved by the Insurance Commissioner.

WC 04 04 07
(Ed. 10/99)                    Countersigned by _____

© 1999 by the Worker's Compensation Insurance Rating Bureau of California. All rights reserved.
From the WCIRB's California Workers' Compensation Insurance Forms Manual  © 2001.          **Authorized Representative**

## ESTIMATED ANNUAL PREMIUM ENDORSEMENT -- CALIFORNIA

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM 01/01/2006          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

The premium with respect to the insurance provided by this policy by reason of the designation of California in item 3 of the Information Page is subject to experience modification. The experience modification, when issued, will be effective on 01/01/06, your normal anniversary rating date. Pending the issuance of the experience modification by the Workers' Compensation Insurance Rating Bureau of California, the estimated annual premium shown below is based on the experience modification previously applicable to your operations. The estimated annual premium will be revised when the Bureau issues the applicable experience modification.

ESTIMATED ANNUAL PREMIUM     $1,775,077

The estimated annual premium shown above is based on a prior experience modification of          1.72    which was effective on 01/01/05.

**NOTE: THE ESTIMATED ANNUAL PREMIUM MAY BE INCREASED WHEN THE BUREAU ISSUES THE EXPERIENCE MODIFICATION APPLICABLE TO THIS POLICY.**

WC 04 04 10              Countersigned by _____          _____
(Ed. 09-88)

                                                                    **Authorized Representative**

## CALIFORNIA CANCELLATION ENDORSEMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2006        forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

This endorsement applies only to the insurance provided by the policy because California is shown in Item 3.A. of the Information Page.

The cancellation condition in Part Six (Conditions) of the policy is replaced by these conditions:

Cancellation

1.  You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.  We may cancel this policy for one or more of the following reasons:

    a)  Non-payment of premium;

    b)  Failure to report payroll;

    c)  Failure to permit us to audit payroll as required by the terms of this policy or of a previous policy issued by us;

    d)  Failure to pay any additional premium resulting from an audit of payroll required by the terms of this policy or any previous policy issued by us;

    e)  Material misrepresentation made by you or your agent;

    f)  Failure to cooperate with us in the investigation of a claim;

    g)  Failure to pay additional premium resulting from a retrospective adjustment of premium required by the terms of this policy or any previous policy issued by us;

    h)  Failure to comply with Federal or State safety orders;

    i)  Failure to comply with written recommendations of our designated loss control representatives;

    j)  The occurrence of a material change in the ownership of your business;

    k)  The occurrence of any change in your business or operations that materially increases the hazard for frequency or severity of loss;

    l)  The occurrence of any change in your business or operation that requires additional or different classification for premium calculation;

    m)  The occurrence of any change in your business or operation which contemplates an activity excluded by our reinsurance treaties.

3.  If we cancel your policy for any of the reasons listed in (a) through (g), we will give you 10 days advance written notice, stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the information page will be sufficient to prove notice. If we cancel your policy for any of the reasons listed in (h) through (m), we will give you 30 days advance written notice; however, we agree that in the event of cancellation and reissuance of a policy effective upon a material change in ownership or operations, notice will not be provided.

4.  The policy period will end on the day and hour stated in the cancellation notice.

WC 99 00 17
(Ed. 01/01)

Countersigned by _____

_Authorized Representative_

## POLICY AMENDATORY ENDORSEMENT - CALIFORNIA

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2006          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

It is agreed that, anything in the policy to the contrary notwithstanding, such insurance as is afforded by this policy by reason of the designation of California in Item 3 of the Information Page is subject to the following provisions:

1.  **Minors Illegally Employed -- Not Insured.** This policy does not cover liability for additional compensation imposed on you under Section 4557, Division IV, Labor Code of the State of California, by reason of injury to an employee under sixteen years of age and illegally employed at the time of injury.

2.  **Punitive or Exemplary Damages -- Uninsurable.** This policy does not cover punitive or exemplary damages where insurance of liability therefor is prohibited by law or contrary to public policy.

3.  **Increase in Indemnity Payment -- Reimbursement.** You are obligated to reimburse us for the amount of increase in indemnity payments made pursuant to Subdivision (d) of Section 4650 of the California Labor Code, if the late indemnity payment which gives rise to the increase in the amount of payment is due less than seven (7) days after we receive the completed claim form from you. You are obligated to reimburse us for any increase in indemnity payment not covered under this policy and will reimburse us for any increase in indemnity payment not covered under the policy when the aggregate total amount of the reimbursement payments paid in a policy year exceeds one hundred dollars ($100).

    If we notify you in writing, within 30 days of the payment, that you are obligated to reimburse us, we will bill you for the amount of increase in indemnity payment and collect it no later than the final audit. You will have 60 days, following notice of the obligation to reimburse, to appeal the decision of the insurer to the   Department of Insurance.

4.  **Application of Policy.** Part One, "Workers Compensation Insurance", A, "How This Insurance Applies", is amended to read as follows:

    This workers compensation insurance applies to bodily injury by accident or disease, including death resulting therefrom. Bodily injury by accident must occur during the policy period. Bodily injury by disease must be caused or aggravated by the conditions of your employment. Your employee's exposure to those conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5.  **Rate Changes.** The premium and rates with respect to the insurance provided by this policy by reason of the designation of California in Item 3 of the Information Page are subject to change if ordered by the Insurance Commissioner of the State of California pursuant to Section 11737 of the California Insurance Code.

6.  **Long Term Policy.** If this policy is written for a period longer than one year, all the provisions of this policy shall apply separately to each consecutive twelve-month period or, if the first or last consecutive period is less than twelve months, to such period of less than twelve months, in the same manner as if a separate policy had been written for each consecutive period.

7.  **Statutory Provision.** Your employee has a first lien upon any amount which becomes owing to you by us on account of this policy, and in the case of your legal incapacity or inability to receive the money and pay it to the claimant, we will pay it directly to the claimant.

It is further agreed that this policy, including all endorsements forming a part thereof, constitutes the entire contract of insurance. No condition, provision, agreement, or understanding not set forth in this policy or such endorsements shall affect such contract or any rights, duties, or privileges arising therefrom.

WC 99 04 07          Countersigned by _____
(Ed. 3/98)

**Authorized Representative**

## NOTIFICATION OF LOSS CONTROL SERVICES

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2006          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY


Dear Policyholder:

American International Group, Inc. (AIG) is pleased to inform you that as an AIG member company workers' compensation insurance policyholder, loss prevention services are available to you at no additional charge.

AIG Consultants, Inc., a member company of AIG, can assist you in your accident prevention process by:

- Evaluating the adequacy of your Injury and Illness Prevention Program (IIPP);
- Providing accident prevention consultations;
- Evaluating safety management practices;
- Evaluating your illness and injury experience to determine incident causes;
- Providing on-site health and safety surveys which identify reasonably discoverable occupational safety and health hazards within the scope of the survey scheduled;
- Providing industrial hygiene exposure recognition assistance and safety evaluations to assist in detecting physical and chemical hazards of the workplace;
- Development of plans to improve health and safety loss records, including injury and prevention programs;
- Evaluating workplace design, layout and operation, and job site modifications utilizing an ergonomic approach;
- Identifying the need for and assisting with health and safety training; and
- Providing recommendations, where appropriate, to improve your accident prevention program.

If you have any comments or would like to request accident prevention information or assistance, please contact or write to:

> AIG Consultants, Inc.
> 777 South Figueroa St., 14th Floor
> Los Angeles, CA 90017
> Attention: Jim Zanotti
> Phone: (213) 689-3909
> Fax: (213) 689-3558
> Email: Jim.Zanotti@aig.com

Workers' compensation insurance policyholders may register comments about the insurer's loss control consultation services by writing to: State of California, Department of Industrial Relations, Division of Occupational Safety and Health, Attention: LCCU, P.O. Box 420603, San Francisco, CA 94142.


WC 99 04 08B
(Ed. 09/02)

COMP 0116

POLICYHOLDER NOTICE

## CALIFORNIA INSURANCE GUARANTEE ASSOCIATION (CIGA) SURCHARGE

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2006          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

Companies writing property and casualty insurance business in California are required to participate in the California Insurance Guarantee Association.  If a company becomes insolvent, the California Insurance Guarantee Association settles unpaid claims and assesses each insurance company for its fair share.

California law requires all companies to surcharge policies to recover these assessments.  If your policy is surcharged, "CA Surcharge" or "CA Surcharge (CIGA) Surcharge)" with an amount will be displayed on your premium notice.

This notice does not change the policy to which it is attached.

PN049904
WC 99 04 09                    Countersigned by _____
(Ed. 12/01)
©2001 by the Workers' Compensation Insurance Rating Bureau of California. All rights reserved.          **Authorized Representative**

## POLICYHOLDER NOTICE

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2006          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

### CALIFORNIA WORKERS' COMPENSATION
### INSURANCE RATING LAWS

Pursuant to Section 11752.8 of the California Insurance code, we are providing you with an explanation of the California workers' compensation rating laws.

1.  We establish our own rates for workers' compensation. Our rates, rating plans, and related information are filed with the insurance commissioner and are open for public inspection.

2.  The insurance commissioner can disapprove our rates, rating plans, or classifications only if he or she has determined after public hearing that our rates might jeopardize our ability to pay claims or might create a monopoly in the market. A monopoly is defined by law as a market where one insurer writes 20% or more of that part of the California workers' compensation insurance that is not written by the State Compensation Insurance Fund. If the insurance commissioner disapproves our rates, rating plans, or classifications, he or she may order an increase in the rates applicable to outstanding policies.

3.  Rating organizations may develop pure premium rates that are subject to the insurance commissioner's approval. A pure premium rate reflects the anticipated cost and expenses of claims per $100 of payroll for a given classification. Pure premium rates are advisory only, as we are not required to use the pure premium rates developed by any rating organization in establishing our own rates.

4.  We must adhere to a single, uniform experience rating plan. If you are eligible for experience rating under the plan, we will be required to adjust your premium to reflect your claim history. A better claim history generally results in a lower experience rating modification; more claims, or more expensive claims, generally result in a higher experience rating modification. The uniform experience rating plan, which is developed by the insurance rating organization designated by the insurance commissioner, is subject to approval by the insurance commissioner.

5.  A standard classification system, developed by the insurance rating organization designated by the insurance commissioner, is subject to approval by the insurance commissioner. The standard classification system is a method of recognizing and separating policyholders into industry or occupational groups according to their similarities and/or differences. We can adopt and apply the standard classification system or develop and apply our own classification system, provided we can report the payroll, expenses, and other costs of claims in a way that is consistent with the uniform statistical plan or the standard classification system.

6.  Our rates and classifications may not violate the Unruh Civil Rights Act or be unfairly discriminatory.

PN049902B
WC 99 04 10
(Ed. 05/02)
© 2002 by the Workers' Compensation Insurance Rating Bureau of California. All rights reserved.

Page 1 of 2

COMP 0118

7.  We will provide an appeal process for you to appeal the way we rate your insurance policy. The process requires us to respond to your written appeal within 30 days. If you are not satisfied with the result of your appeal, you may appeal our decision to the insurance commissioner.

## CALIFORNIA WORKERS' COMPENSATION
## NOTICE OF NONRENEWAL

Section 11664 of the California Insurance code requires us, in most instances, to provide you with a notice of nonrenewal. Except as specified in paragraphs 1 through 6 below, if we elect to nonrenew your policy, we are required to deliver or mail to you a written notice stating the reason or reasons for the nonrenewal of the policy. The notice is required to be sent to you no earlier than 120 days before the end of the policy period and no later than 30 days before the end of the policy period. If we fail to provide you the required notice, we are required to continue the coverage under the policy with no change in the premium rate until 60 days after we provide you with the required notice.

We are not required to provide you with a notice of nonrenewal in any of the following situations:

1.  Your policy was transferred or renewed without a change in its terms or conditions or the rate on which the premium is based to another insurer or other insurers who are members of the same insurance group as us.

2.  The policy was extended for 90 days or less and the required notice was given prior to the extension.

3.  You obtained replacement coverage or agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

4.  The policy is for a period of no more than 60 days and you were notified at the time of issuance that it may not be renewed.

5.  You requested a change in the terms or conditions or risks covered by the policy within 60 days prior to the end of the policy period.

6.  We made a written offer to you to renew the policy at a premium rate increase of less than 25 percent.

    (A) If the premium rate in your governing classification is to be increased 25 percent or greater and we intend to renew the policy, we shall provide a written notice of a renewal offer not less than 30 days prior to the policy renewal date. The governing classification shall be determined by the rules and regulations established in accordance with California Insurance Code Section 11750.3(c).

    (B) For purposes of this Notice, "premium rate" means the cost of insurance per unit of exposure prior to the application of individual risk variations based on loss or expense considerations such as scheduled rating and experience rating.

This notice does not change the policy to which it is attached.

PN049902B
WC 99 04 10        Countersigned by _____
(Ed. 05/02)

© 2002 by the Workers' Compensation Insurance Rating Bureau of California. All rights reserved.

Page 2 of 2

Authorized Representative

COMP 0119

## CALIFORNIA ADVANCE NOTICE OF CANCELLATION OR NON-RENEWAL BY US EXTENDED

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2006          forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

PART SIX - CONDITIONS, D. - Cancellation, 2. is deleted in its entirety and replaced with:

We may cancel or non-renew this policy. We will mail or deliver to you not less than 10 days advance written notice of cancellation for reasons (a) through (g) and 30 days advance written notice of cancellation for reasons (h) through (m) of California Cancellation Endorsement WC990017. We will mail or deliver to you not less than 30 days and not more than 120 days advance written notice of non-renewal.

Except for non-payment of premium and non-payment of loss reimbursement or non-delivery of satisfactory security or collateral when due, for which we will provide advance written notice in accordance with the provisions of any applicable statute or regulation, we shall not provide less than the number of days set forth below.

Mailing that notice to you, at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

Cancellation:  60  Days

Non-Renewal: 60  Days

WC 99 04 11
(Ed. 08/03)

Countersigned by _____          _____

Authorized Representative

## POLICYHOLDER NOTICE

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

*(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).*

This endorsement, effective 12:01 AM  01/01/2006          forms a part of Policy No. WC   124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

### YOUR RIGHT TO RATING AND DIVIDEND INFORMATION

I.  **INFORMATION AVAILABLE TO YOU**

A.  **Information Available from Us – AMERICAN HOME ASSURANCE COMPANY**

(1)  General questions regarding your policy should be directed to AIG, Dana Shioji, 777 S. Figueroa Street, Los Angeles, CA  90017, fax 213-689-3515.

(2)  **DIVIDEND CALCULATION.** If this is a participating policy (a policy on which a dividend may be paid), upon payment or non-payment of a dividend, we shall provide a written explanation to you that sets forth the basis of the dividend calculation. The explanation will be in clear, understandable language and will express the dividend as a dollar amount and as a percentage of the earned premium for the policy year on which the dividend is calculated.

(3)  **CLAIMS INFORMATION.** Pursuant to Sections 3761 and 3762 of the California Labor Code, you are entitled to receive information in our claim files that affects your premium. Copies of documents will be supplied at your expense during reasonable business hours.

For claims covered under this policy, we will estimate the ultimate cost of unsettled claims for statistical purposes eighteen months after the policy becomes effective and will report those estimates to the Workers' Compensation Insurance Rating Bureau of California (WCIRB) no later than twenty months after the policy becomes effective.  The cost of any settled claims will also be reported at that time.  At twelve-month intervals thereafter, we will update and report to the WCIRB the estimated cost of any unsettled claims and the actual final cost of any claims settled in the interim.  The amounts we report will be used by the WCIRB to compute your experience modification if you are eligible for experience rating.

B.  **Information Available from the Workers' Compensation Insurance Rating Bureau of California**

(1)  The WCIRB is a licensed rating organization and the California Insurance Commissioner's designated statistical agent.  As such, the WCIRB is responsible for administering the *California Workers' Compensation Uniform Statistical Reporting Plan - 1995* (USRP) and the *California Workers' Compensation Experience Rating Plan - 1995* (ERP).  Contact information for the WCIRB is:  WCIRB, 525 Market Street, Suite 800, San Francisco, California 94105-2767, Attention: Customer Service.  You may also contact WCIRB Customer Service at 1-888-229-2472, by fax at 415-778-7272, or via the Internet at the WCIRB's website: http://www.wcirbonline.org.  The regulations contained in the USRP and the ERP are available for public viewing through the WCIRB's website.

(2)  **POLICYHOLDER INFORMATION.** Pursuant to California Insurance Code (CIC) Section 11752.6, upon written request, you are entitled to information relating to loss experience, claims, classification assignments, and policy contracts as well as rating plans, rating systems, manual rules, or other information impacting your premium that is maintained in the records of the WCIRB.  Complaints and Requests for Action requesting policyholder information should be forwarded to:  WCIRB, 525 Market Street, Suite 800, San Francisco, California 94105-2767, Attention: Custodian of Records.  The Custodian of Records can be reached by telephone at 415-777-0777 and by fax at 415-778-7272.

PN049901C
**WC 99 04 13A**
**(Ed. 04/04)**
© 2004 by the Workers' Compensation Insurance Rating Bureau of California.  All rights reserved.

COMP 0121

**II. DISPUTE PROCESS**

You may dispute our actions or the actions of the WCIRB pursuant to CIC Sections 11737 and 11753.1.

**A. Our Dispute Resolution Process.**

If you are aggrieved by our decision adopting a change in a classification assignment that results in increased premium, or by the application of our rating system to your workers' compensation insurance, you may dispute these matters with us. If you are dissatisfied with the outcome of the initial dispute with us, you may send us a written Complaint and Request for Action as outlined below.

You may send us a written Complaint and Request for Action, requesting that we reconsider a change in a classification assignment that results in an increased premium and/or requesting that we review the manner in which our rating system has been applied in connection with the insurance afforded or offered you. Written Complaints and Requests for Action should be forwarded to: AIG, Dana Shioji, 777 S. Figueroa Street, Los Angeles, CA 90017, fax 213-689-3515, Dana.Shioji@aig.com.

After you send your Complaint and Request for Action, we have 30 days to send you a written notice indicating whether or not your written request will be reviewed. If we agree to review your request, we must conduct the review and issue a decision granting or rejecting your request within 60 days after sending you the written notice granting review. If we decline to review your request, if you are dissatisfied with the decision upon review, or if we fail to grant or reject your request or issue a decision upon review, you may appeal to the insurance commissioner as described in paragraph II.C., below.

**B. Disputing the Actions of the WCIRB.** If you have been aggrieved by any decision, action, or omission to act of the WCIRB, you may request, in writing, that the WCIRB reconsider its decision, action, or omission to act. You may also request, in writing, that the WCIRB review the manner in which its rating system has been applied in connection with the insurance afforded or offered you. For requests related to classification disputes, the reporting of experience, or coverage issues, your initial request for review must be received by the WCIRB within 12 months after the expiration date of the policy to which the request for review pertains, except if the request involves the application of the Revision of Losses rule. For requests related to your experience modification, your initial request for review must be received by the WCIRB within 6 months after the issuance, or 12 months after the expiration date, of the experience modification to which the request for review pertains, whichever is later, except if the request for review involves the application of the Revision of Losses rule. If the request involves the Revision of Losses rule, the time to state your appeal may be longer. (See Section VI, Rule 14 of the ERP).

You may commence the review process by sending the WCIRB a written Inquiry. Written Inquiries should be sent to: WCIRB, 525 Market Street, Suite 800, San Francisco, California 94105-2767, Attention: Customer Service. Customer Service can be reached by telephone at 1-888-229-2472, and by fax at 415-778-7272.

If you are dissatisfied with the WCIRB's decision upon an Inquiry, or if the WCIRB fails to respond within 90 days after receipt of the Inquiry, you may pursue the subject of the Inquiry by sending the WCIRB a written Complaint and Request for Action. After you send your Complaint and Request for Action, the WCIRB has 30 days to send you written notice indicating whether or not your written request will be reviewed. If the WCIRB agrees to review your request, it must conduct the review and issue a decision granting or rejecting your request within 60 days after sending you the written notice granting review. If the WCIRB declines to review your request, if you are dissatisfied with the decision upon review, or if the WCIRB fails to grant or reject your request or issue a decision upon review, you may appeal to the insurance commissioner as described in paragraph II.C., below. Written Complaints and Requests for Action should be forwarded to: WCIRB, 525 Market Street, Suite 800, San Francisco, California 94105-2767, Attention: Complaints and Reconsiderations. The WCIRB's telephone number is 1-888-229-2472, and the fax number is 415-371-6204.

**C. California Department of Insurance - Appeals to the Insurance Commissioner.** If, after you follow the appropriate dispute resolution process described above, we or the WCIRB decline to review your request, if you are dissatisfied with the decision upon review, or if we or the WCIRB fail to grant or reject your request or issue a decision upon review, you may appeal to the insurance commissioner pursuant to the CIC Section 11737, 11752.6, 11753.1 and Title 10, California Code of Regulations, Section 2509.40 et seq. You must file your appeal within 30 days after we or the WCIRB send you the notice rejecting review of your Complaint and Request for Action or the decision upon your Complaint and Request for Action. If no written decision regarding your Complaint and Request for Action is sent, your appeal must be filed within 120 days after you

COMP 0122

sent your Complaint and Request for Action to us or to the WCIRB. The filing address for all appeals to the insurance commissioner is:

Administrative Hearing Bureau
California Department of Insurance
45 Fremont Street, 22nd Floor
San Francisco, California  94105

You have the right to a hearing before the insurance commissioner, and our action, or the action of the WCIRB, may be affirmed, modified, or reversed.

## III. RESOURCE AVAILABLE TO YOU IN OBTAINING INFORMATION AND PURSUING DISPUTES

A. **Policyholder Ombudsman.**    Pursuant to California Insurance Code Section 11752.6, a policyholder ombudsman is available at the WCIRB to assist you in obtaining and evaluating the rating, policy, and claims information referenced in I.A. and I.B., above.  The ombudsman may advise you on any dispute with us, the WCIRB, or on an appeal to the insurance commissioner pursuant to Section 11737 of the Insurance Code. The address of the policyholder ombudsman is WCIRB, 525 Market Street, Suite 800, San Francisco, California 94105-2767, Attention: Policyholder Ombudsman.  The policyholder ombudsman can be reached by telephone at 415-777-0777 and by fax at 415-778-7007.

B. **California Department of Insurance – Information and Assistance.**  Information and assistance on policy questions can be obtained from the Department of Insurance Consumer HOTLINE, 1-800-927-HELP (4357) or http://www.insurance.ca.gov.   For questions and correspondence regarding appeals to the Administrative Hearing Bureau, see the contact information in paragraph II.C.

This notice does not change the policy to which it is attached.

PN049901C
WC 99 04 13A
(Ed. 04/04)                      Countersigned by _____

© 2004 by the Workers' Compensation Insurance Rating Bureau of California. All rights reserved.

Authorized Representative

COMP 0123

## VOLUNTARY FOREIGN COVERAGE ENDORSEMENT

### CALIFORNIA ONLY

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM  01/01/2006        forms a part of Policy No. WC    124-14-96

Issued to ALTMAN SPECIALTY PLANTS, INC.

By AMERICAN HOME ASSURANCE COMPANY

### Section 1.  Employees Covered

A.  This coverage applies only to employees you hire within the limits of the United States of America while they are traveling or temporarily residing outside the United States of America, its territories or possessions or Canada for a period no longer than ninety days.

B.  This insurance does not apply to any employees you hire outside the limits of the United States of America.

### Section 2.  How This Insurance Applies

This insurance applies only to bodily injury by accident or to bodily injury by disease.  Bodily injury includes resulting death.  Bodily injury includes any endemic disease.

A.  An employee included in the group of employees described in Item 1 of the Schedule of this endorsement must sustain the bodily injury, and

B.  The bodily injury must occur in the course of employment necessary or incidental to work in a state, country or subdivision of a country listed in Item 1 of the Schedule of this endorsement, and

C.  Bodily injury by accident must occur during the policy period, or

D.  The conditions of your workplace must cause or aggravate the bodily injury by disease.  The employee's last day of last exposure to those conditions of your workplace must occur during the policy period.

### Section 3.  Exclusions

This insurance does not cover:

A.  Bodily injury arising from any direct or indirect consequence of war, invasion, act of foreign enemy, hostilities (whether war is declared or not), civil war, rebellion, revolution, insurrection or military or usurped power.  No current or subsequent endorsement to this policy will override or waive this limitation.

B.  Compensation or benefits imposed by any nonoccupational, disability benefits law, plan or any similar law or plan.

C.  Bodily injury you intentionally cause or aggravate.

### Section 4.  Voluntary Workers Compensation

This endorsement amends Section A of Part One of the policy by adding the following coverage:

The coverage afforded under this section is in addition to the coverages afforded in the policy.  The terms and conditions set forth in this endorsement do not in any way limit or restrict the coverage afforded by Part One, Part Two, or Part Three of the policy.

On your behalf, we will voluntarily pay an amount equal to the benefits you would be required to pay if you and the employees described in Item 1 of the Schedule were subject to the workers compensation law designated in Item 1 of the Schedule of this endorsement.

We will pay those amounts to the persons who would be entitled to them under the law.  If this is not possible, we will reimburse you for amounts you are required to pay.

WC 99 04 22
(Ed. 10/05)

Page 1 of 4

The following provisions apply to this insurance:

A. In no event will our liability under this section exceed the amount we or you would have been obligated to pay in the employment and injury had been subject to the workers compensation law designated in Item 1 of the Schedule of this endorsement. The only exception to this is as provided for in Section 6-Excess Repatriation Expenses.

B. We have the option to request you to pay sums due directly to persons entitled to them on our behalf. We will reimburse you for these payments when you provide us with satisfactory proof of payment.

C. Before we are required to make any payment or reimburse you, the persons entitled or paid must:

   i) Release you and us in writing from all responsibility for the bodily injury or death.

   ii) Transfer to us their right to recover from others who may be responsible for the injury or death to the extent of our payment or reimbursement.

   iii) Cooperate with us and do everything necessary to enable us to enforce the right to recover from others.

   If a person entitled to payment under this section refuses to accept voluntary payments offered, we may, at our discretion, withdraw the offer to pay compensation benefits. If this happens, we will notify you and the employee that we will no longer be bound by the provisions in this section.

D. Under this or any other policy we have issued to you, it is possible that the provisions of a workers compensation law, plan or any similar law or plan may hold you or us legally liable for any injury where payments have been made or would otherwise be made under Section 4 of this endorsement. If this happens, we agree that we will make no further payments under Section 4 if Section 5 of this endorsement applies.

## Section 5. Legal Liability Under Workers Compensation Law

A. If benefits are payable under a workers compensation or occupational disease law of any state, country or subdivision of a country other than the United States of America, its territories or possessions or Canada, we will reimburse you up to but not in excess of the cost of benefits which would have been payable under the workers compensation law of the state designated in Item 1 of the Schedule of this endorsement.

B. We will not be liable for any loss for which you had other valid and collectible insurance.

C. We assume no obligation to defend any suit or proceeding against you outside the United States of America, its territories or possessions or Canada.

D. The coverage this Section 5 affords does not cover fines or penalties imposed on you for failure to comply with the requirements of any workers compensation or occupational disease law of any state, country or subdivision of a country.

## Section 6. Excess Repatriation Expenses

This section only applies to coverage provided for in Section 4 and 5 of this endorsement.

Medical expenses include additional expenses of repatriation to the United States of America incurred as a result of bodily injury to employees. In the event an employee is injured, our liability is limited to the amount by which these expenses exceed the normal cost of returning the employee. In the event of an employee's death, our liability is limited to the amount by which the expenses of returning the body exceed the normal cost of returning an employee who is alive and in good health.

Our liability will never exceed the amount indicated in Item 2 of the Schedule of this endorsement for one covered employee or accident.

The policy does not afford coverage for repatriation expenses unless a specific limit of liability for each covered employee and accident appears in Item 2 of the Schedule of this endorsement.

## Section 7. Employers Liability

This endorsement amends Section B of Part Two - Employers Liability of this policy by adding the following coverage:

We will also pay on your behalf all sums which you become legally obligated to pay as damages because of bodily injury by accident or disease, including resulting death, sustained in any state or country or subdivision of a country other than

WC 99 04 22
(Ed. 10/05)

COMP 0125

the United States of America, its territories or possessions, or Canada by any of your employees arising out of and in the course of employment by you.

The following provisions apply to Section 7 of this endorsement:

A.  We will reimburse you for all reasonable expenses you incur including attorneys' fees in defending any suit against you alleging injury and seeking damages on account of any insurance this section of this endorsement affords. We assume no obligation to defend any suit or any proceeding brought against you outside of the United States of America, its territories or possessions or Canada.

B.  The limit of our liability under Part Two will be in accordance with the following provisions.

The words "damages because of bodily injury by accident or disease, including death at any time resulting therefrom," in Part Two include damages for care and loss of services. These words also include damages for which you are liable because of suits or claims others bring against you to recover the damages obtained from such others because of bodily injury your employees sustain arising out of and in the course of their employment.

The limit of liability in Item 3 of the Schedule of this endorsement which applies to bodily injury by accident is the total limit of our liability for all damages because of bodily injury by accident including resulting death that one or more employees sustain.

The limit of liability in Item 3 of the Schedule of this endorsement which applies to bodily injury by disease is the total limit of our liability for all damages because of bodily injury by disease including resulting death that one or more employees sustain in any one state, country or subdivision of a country outside the United States, its territories or possessions or Canada listed in Item 1 of the Schedule of this endorsement.

The limits of liability designated in this endorsement supersede and are not cumulative with any limit(s) of liability elsewhere in the policy. The inclusion of more than one insured does not increase the limits of our liability.

### Section 8.  Premium

In addition to the provisions of Part V of the policy, the following provisions will apply to this endorsement:

A.  We will compute the premium for this coverage in accordance with Part V of the policy, upon all remuneration paid to employees while traveling or temporarily residing outside the United States of America, its territories or possessions or Canada for the period no longer than ninety days. Remuneration includes overtime, bonuses and cash allowances for cost of living and board and lodging.

B.  We will determine the premium for this coverage on the basis of the workers compensation rules, classifications and rates in accordance with the manuals we use for the state workers compensation law designated in Item 1 of the Schedule of this endorsement.

C.  You must maintain payroll records for any employees covered by the provisions of this endorsement.

### Section 9.  Other Insurance

The following provision replaces Section E of Part One and Section F of Part Two of the policy with respect to the coverage this endorsement provides.

This insurance for a loss covered by this endorsement will be excess insurance over and above any other insurance except with respect to insurance provided under Section 5. The limits of liability for this insurance will be reduced by an amount equal to the limits of liability other insurance affords.

**WC 99 04 22**
**(Ed. 10/05)**

Page 3 of 4

COMP 0126

Schedule

1. Name(s) of
   Employee

   ALL OFFICERS AND EMPLOYEES
   WHILE STATIONED OR TRAVELING
   OUTSIDE OF THE USA, ITS TERRI-
   TORIES AND POSSESSIONS, EXCEPT
   MASTERS AND MEMBERS OF THE
   CREW OF ANY VESSEL.

   State or Country
   of Operations

   ANYWHERE IN THE
   WORLD, INCLUDING
   INTERNATIONAL WATERS
   OR AIRSPACE, BUT
   EXCLUDING THE USA
   (INCLUDING ITS
   TERRITORIES AND
   POSSESSIONS) AND
   PUERTO RICO AND
   THOSE COUNTRIES

   Designated Workers
   Compensation Law

   CALIFORNIA

2. Limits of Liability For Excess Repatriation Expenses

   $ 25,000    each employee
   $ 25,000    each accident

3. Limits of Liability for Part Two-Employers Liability

   Bodily Injury
   By Accident

   $ 1,000,000

   Bodily Injury
   By Disease

   $ 1,000,000    policy limit
   $ 1,000,000    each employee

4. Premium

   | State of Designated Workers Compensation Law | Premium Basis Estimated Total Annual Remuneration | Rates Per $100 of Remuneration | Advance Premiums |
   |---|---|---|---|
   | CALIFORNIA | INCLUDED WITH REMUNERATION IN THE STATE OF REGULAR EMPLOYMENT. | INCLUDED IN THE STATE OF REGULAR EMPLOY- MENT. | INCLUDED IN THE STATE OF REGULAR EMPLOYMENT. |

   Total Advance Premium INCLUDED

   CONTINUED NEXT PAGE

WC 99 04 22
(Ed. 10/05)

Countersigned by _____

Page 4 of 4                                Authorized Representative

**BROAD FORM VOLUNTARY FOREIGN COVERAGE ENDORSEMENT**

**CALIFORNIA ONLY**

This endorsement, effective 12:01 AM 01/01/2006

Forms a part of policy no.: WC    124-14-96

Issued to: ALTMAN SPECIALTY PLANTS, INC.

By: AMERICAN HOME ASSURANCE COMPANY

**Schedule (continued)**

1.  Name(s) of Employee

State or Country of Operations

AGAINST WHICH THE OFFICE OF FOREIGN ASSETS CONTROL OF THE U.S. DEPARTMENT OF THE TREASURY ADMINISTERS AND ENFORCES ECONOMIC AND TRADE SANCTIONS.

Designated Workers Compensation Law

4.  Premium

| State of Designated Workers Compensation Law | Premium Basis Estimated Total Annual Remuneration | Rates Per $100 of Remuneration | Advance Premiums |
|---|---|---|---|
| | | | |

WC 99 04 22CONT
(Ed. 10/05)

Countersigned by _____

Authorized Representative

COMP 0128

PAGE 1

## ENDORSEMENT

This endorsement, effective 12:01 AM 01/01/2006

Forms a part of policy no.: WC    124-14-96

Issued to: ALTMAN SPECIALTY PLANTS, INC.

By: AMERICAN HOME ASSURANCE COMPANY

| LOC NO. | NAME AND ADDRESS SCHEDULE | FEIN | UI # |
|---|---|---|---|
| 0001 | ALTMAN SPECIALTY PLANTS, INC.<br>2372 TAMARA LANE<br>SAN MARCOS, CA 92069-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0002 | ALTMAN SPECIALTY PLANTS, INC.<br>3361 VALLEY PASEO<br>SAN MARCOS, CA 92069-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0003 | ALTMAN SPECIALTY PLANTS, INC.<br>553 BUENA CREEK ROAD<br>SAN MARCOS, CA 92069-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0004 | ALTMAN SPECIALTY PLANTS, INC.<br>3742 BLUE BIRD CANYON RD.<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0005 | ALTMAN SPECIALTY PLANTS, INC.<br>2124 EDGEHILL ROAD<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0006 | ALTMAN SPECIALTY PLANTS, INC.<br>949 LA RUEDA<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0007 | ALTMAN SPECIALTY PLANTS, INC.<br>1974 FRIENDLY DRIVE<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0008 | ALTMAN SPECIALTY PLANTS, INC.<br>2020 EDGEHILL ROAD<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0009 | ALTMAN SPECIALTY PLANTS, INC.<br>20460 SPENCE ROAD<br>SALINAS, CA 93908-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |

CONTINUED NEXT PAGE

Issue Date: 05/12/06

WC990610 (Ed. 1-97)

## LARGE RISK RATING PLAN ENDORSEMENT

### Section 2. Schedule of Premium Adjustments

A. The estimated *Final Premium* is shown in Section 9, Item C of PART II. We will recalculate the estimated *Final Premium* as soon as practicable after the First Valuation Date shown in Section 5 of PART II. We will recalculate the estimated *Final Premium* annually thereafter until you and we agree in writing that no more recalculations will be done.

B. Additional premium due us, or return premium due you, resulting from the calculation or recalculation of the *Final Premium*, will be payable in its entirety promptly unless otherwise specified in a premium finance agreement between you and us.

### Section 3. Expected Total Cost

In addition to *Final Premium*, you may be liable under the terms of the policies for reimbursements of certain losses and *Allocated Loss Adjustment Expenses* we pay, subject to any *Minimum Cost* and *Maximum Cost* as described below, and surcharges. Our estimated amounts for such additional costs, if any, are shown in Section 9, Item C of PART II.

A. *Minimum Cost:* If a *Minimum Cost* is applicable, that amount is the minimum you must pay for the *Subject Premium* and, if applicable, *Non-Subject Premium, Reimbursable Losses, Deductible Losses, Self-Insured Losses* and *ALAE* itemized in Section 6 Item A. c. of PART II. Component items not itemized in Section 6, Item A. c. of Part II are not included in the *Minimum Cost.* If an *Adjustment Rate* and a *Basis* of Adjustment are shown in Section 6, Item A. a. of PART II, the *Minimum Cost* will be determined by multiplying the *Adjustment Rate* by the actual *Basis* of Adjustment as determined by our final audit of your books and records.

B. *Maximum Cost:* If a *Maximum Cost* is applicable, that amount is the maximum you must pay for *Subject Premium* and, if applicable, *Non-Subject Premium, Reimbursable Losses, Deductible Losses, Self-Insured Losses* and *ALAE* itemized in Section 6 Item B. c. of PART II. Component items not itemized in Section 6, Item B. c. of Part II are not included in the *Maximum Cost.* If an *Adjustment Rate* and a *Basis* of Adjustment are shown in Section 6, Item B. a. of PART II, the *Maximum Cost* will be determined by multiplying the *Adjustment Rate* by the actual *Basis* of Adjustment as determined by our final audit of your books and records.

### Section 4. Definitions

A. *"Aggregate Stop Amount"* means the maximum amount of benefits, damages and *ALAE* payable by you for losses under the policies described in Section I of PART II, subject to any *Aggregate Stop Limit.*

B. *"Aggregate Stop Limit"* means the maximum amount of benefits, damages and *ALAE* above the *Aggregate Stop Amount* that we will not require you to reimburse us for under any Loss Reimbursement or Deductible terms of the policies described in Section I of PART II.

C. *"Allocated Loss Adjustment Expenses"* or *"ALAE"* will include all fees for service of process and court costs and court expenses; pre- and post-judgement interest; attorneys' fees; cost of undercover operative and detective services; costs of employing experts; costs for legal transcripts, copies of any public records, and costs of depositions and court-reported or recorded statements; costs and expenses of subrogation; and any similar fee, cost or expense reasonably chargeable to the investigation, negotiation, settlement or defense of a loss or a claim or suit against you, or to the protection and perfection of your or our subrogation rights.

*ALAE* will not include loss adjustment expenses explicitly included in the premium calculation formula of Section 1, Paragraph A, Item 2 of this PART I or otherwise explicitly included in the rating values shown in PART II; nor the salary, employee benefits, or overhead of any of our employees, nor the fees of any attorney who is our employee or under our permanent retainer; nor the fees of any attorney we retain to provide counsel to us about our obligations, if any, under any policy issued by us or our affiliated companies, with respect to a claim or suit against you.

*ALAE* Option selected and shown in Section 3 of PART II is described below.

a. Option A: *Subject Loss* includes all or a part of all *ALAE* such that the *Subject Loss* will not exceed the applicable *Retained Amount.*

b. Option B: *Subject Loss* includes 100% of all *ALAE.*

c. Option C: *Subject Loss* includes all or a part of *ALAE* calculated according to the following formula:

   i. If we incur NO obligation under the policies to pay damages, benefits or indemnity resulting from a claim, *Subject Loss* under that claim will include all *ALAE* up to the applicable *Retained Amount* and a percentage of all *ALAE* in excess thereof. That percentage is shown in Section 3 of PART II under "Option C Excess %"; or

---

00000000 000/02 9456069

COMP 0130

## LARGE RISK RATING PLAN ENDORSEMENT

    ii.  if we DO incur an obligation to pay damages, benefits or indemnity under the policies because of a claim, *Subject Loss* under that claim will include all *ALAE* incurred under that claim, multiplied by the amount of our obligation to pay damages or benefits up to the applicable *Retained Amount*, divided by the total amount of our obligation to pay damages or benefits.

   d.  Option D: *Subject Loss* includes none of the *ALAE*.

D.  "*Basis*" will have the meaning(s) shown in Section 10 of PART II.

E.  "*Deductible Loss*" means any amount that you must reimburse us under a Deductible Endorsement of the policies described in Section I of PART II.

F.  "*Final Premium*" means the premium for the insurance afforded under the policies described in Section 1 of PART II and others as may be added by endorsement thereto, upon its final recalculation according to the terms of the policies and this endorsement. Prior to such final recalculation, the premium for such insurance is only the estimated premium.

G.  "*Incurred Loss*" means the total amount we have paid and have reserved for payment as damages or benefits because of an occurrence, accident, claim or suit, and all the *Allocated Loss Adjustment Expenses* we incur in connection therewith under a policy described in PART II, including reserves for occurrences, accidents, claims or suits that have happened but have not been reported to us and for statistically expected loss development on claims that have been reported to us.

H.  "*Minimum Cost*" means the minimum amount payable by you for the Schedule of *Subject Premium* and *Reimbursable Losses* and *Deductible Losses* and *Self-Insured Losses* and *ALAE*, if applicable, described in Section 6 of PART II.

I.  "*Maximum Cost*" means the maximum amount payable by you for the Schedule of *Subject Premium* and *Reimbursable Losses* and *Deductible Losses* and *Self-Insured Losses* and *ALAE*, if applicable, described in Section 6 of PART II.

J.  "*Non-Subject Premium*" means the premium not subject to the premium calculation of this endorsement.

K.  "*Reimbursable Loss*" means any amount that you must reimburse us under a Loss Reimbursement Endorsement of the policies described in Section I of Part II.

L.  "*Retained Amount*" means:

   1.  the amount that is specified as your Self-Insured Retention or as the Loss Reimbursement amount or Deductible amount applicable to an *Incurred Loss* in the applicable policy; or

   2.  if the foregoing does not apply, the largest part of any damages or benefits paid or payable under a policy because of any single accident, occurrence, claim or suit, that we will include in the computation of the *Subject Premium*.

Such amount is shown in Section 4 of PART II for each type of insurance afforded under the policies described in Section 1 of PART II.

M.  "*Self-Insured Loss*" or "*SIR*" means any loss you incur under a Self-Insured Retention of the policies described in Section I of PART II.

N.  "*Standard Premium*" means the premium as calculated according to the terms of each applicable policy, without application of this Endorsement, subject to the following:

   1.  For Workers Compensation and Employers Liability Insurance, *Standard Premium* means the premium determined on the basis of our rates as approved by regulatory authority, the remuneration of your employees in the coverage period, your Experience Modifications and Schedule Modifications, Loss Constant, and Minimum Premiums. Determination of *Standard Premium* will exclude:

      a.  any discount that recognizes any reduction in our expense ratio based on premium size or other factors; or

      b.  any discount for a Loss Reimbursement or Deductible.

      c.  Expense Constant.

   2.  For all other insurance, *Standard Premium* is the premium as calculated according to the terms of each applicable policy for insurance within the *Retained Amounts*, but without the application of this Endorsement, and without reduction for:

---

Copyright 2004 American International Group, Inc.

COMP 0131

## LARGE RISK RATING PLAN ENDORSEMENT

   a. any discount that recognizes any reduction in our expense ratio based on premium size or other factors; or

   b. any discount for a Loss Reimbursement or Deductible.

O. *"Subject Loss"* means the entire *Incurred Loss* (including any reimbursable or deductible portion of it) up to the sum of:

   1. the damages or benefits we must pay or have paid up to the *Retained Amount*, and

   2. all or a part of the *Allocated Loss Adjustment Expenses* we incur in accordance with the *ALAE* Option shown in Section 3 of PART II and defined in Item C of this section.

P. *"Subject Premium"* means the premium subject to retrospective adjustment on the basis described in Section 1, Paragraph A of this PART I.

### Section 5. Exceptions and Changes

All exceptions and changes, if any, to the provisions of PART I , PART II or PART III of this endorsement are set forth in Section 11 of PART II or in a written addendum hereto.

Copyright 2004 American International Group, Inc.
00/00/0000 00/00 9456069

COMP 0132

## LARGE RISK RATING PLAN ENDORSEMENT

### PART II. *SCHEDULE* of POLICIES and RATING VALUES

**Section 1. APPLICATION of this Endorsement**

**RATING PERIOD:** This Endorsement applies to the period beginning **01/01/2006** and ending **01/01/2007**.

The *Basis* of Premium, *Subject Losses, Self-Insured Losses, Minimum Cost, Maximum Cost,* Minimum Premiums and Estimated Premiums shown in Section 5, Section 6, Section 7 and Section 9 of this PART II are estimated amounts for:

☐ the first year of the Rating Period, or ☒ the entire Rating Period.

**POLICIES:**

☒ This Endorsement applies to the policies described below, and to their replacements and renewals effective during the Rating Period, or

☐ This Endorsement applies to the policies described below, and to their replacements and renewals, and all subcontractor policies issued under a **Construction Project.** The Construction Project is described as follows:

N/A

a. Workers Compensation and Employers Liability Insurance policies:

WC 1241496 , WC 1241497 , WC 5728746.

b. Commercial General Liability Insurance policies:

c. Automobile Liability Insurance policies:

d. Other Insurance policies (described):

**Section 2. Premiums for insurance on risks in states described below will be determined in accordance with the terms of the applicable policy other than this endorsement.**

| Kinds of Insurance | States |
|---|---|
| WC | FL |

**Section 3. *Allocated Loss Adjustment Expenses* Options**

| ALAE Option (enter ALAE Option A, B, C or D as applicable) | If ALAE Option C, enter Excess % | Applies to |
|---|---|---|
| C | 100% | WC 1241496 , WC 5728746 , WC 1241497 . |

Copyright 2004 American International Group, Inc.
🌐 00000000 00602 9456069

COMP 0133

## LARGE RISK RATING PLAN ENDORSEMENT

**Section 4.** *Retained Amounts:* ☒ applicable to all insureds; or ☐ refer to Extension Schedule

| Kind of Insurance | Retained Amount | Applicable to | Limitations or Descriptions |
|---|---|---|---|
| **Workers Compensation** | | | |
| Workers Compensation and Employers Liability under State Law - Insured States | $500,000 | Each Accident or each Person for Disease | |
| Workers Compensation and Employers Liability under Federal Law - Insured States | $500,000 | Each Accident or each Person for Disease | |
| Workers Compensation and Employers Liability - Self-Insured States | $0 | Each Accident or each Person for Disease | |
| Employers Liability - Monopolistic States | $0 | Each Accident or each Person for Disease | |
| | $0 | Each Accident or each Person for Disease | |
| **Commercial General Liability** | | | |
| Premises, Operations, Personal and Advertising Injury, Medical Payments, or Damage to Property Liability | $0 | Each Occurrence | |
| Products or Completed Operations Liability | $0 | Each Occurrence | |
| [Other] | $0 | Each Occurrence | |
| **Commercial Automobile Liability, including UM/UIM and PIP/No Fault, if any** | | | |
| Automobile Liability | $0 | Each Accident | |
| Garage Liability | $0 | Each Accident | |
| [Other] | $0 | Each Accident | |
| **Combined Kinds Retention** | | | |
| | $0 | Each Occurrence | |

## Section 5. Forecast of *Subject Losses*

We have shown our forecast of your *Subject Losses* below:

a.  Reimbursable and deductible portion of covered *Incurred Losses* (except amounts insured under "Deductible Liability Protection" policies, if any, subject to this Endorsement)     $0

b.  All other covered *Subject Losses* (including amounts insured under "Deductible Liability Protection" policies, if any, subject to this Endorsement)     $1,300,000

**First Loss Valuation Date:** 07/31/2007 and annually thereafter until all claims are closed or mutually agreed upon as to value.

## Section 6. *Minimum Cost* and *Maximum Cost*

The *Minimum Cost* and *Maximum Cost*, if any, will be applied as explained below.

**Item A. *Minimum Cost:*** ☐ applicable, or ☒ not applicable

Line of Insurance:     None

a.  *Minimum Cost*, adjustable on the *Basis* and rate shown below:     $0
   Basis of Adjustment:     None     Per     0
   Estimated *Basis* amount:     $0     **Adjustment Rate:**     0.0000

COMP 0134

PAGE 2

**ENDORSEMENT**

This endorsement, effective 12:01 AM 01/01/2006

Forms a part of policy no.: WC    124-14-96

Issued to: ALTMAN SPECIALTY PLANTS, INC.

By: AMERICAN HOME ASSURANCE COMPANY

| LOC NO. | NAME AND ADDRESS SCHEDULE | FEIN | UI # |
|---------|---------------------------|------|------|
| 0010 | ALTMAN SPECIALTY PLANTS, INC.<br>1516 MONTE VISTA DRIVE<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0011 | ALTMAN SPECIALTY PLANTS, INC.<br>712 BUENA CREEK ROAD<br>SAN MARCOS, CA 92079-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0012 | ALTMAN SPECIALTY PLANTS, INC.<br>787 CASSOU ROAD<br>SAN MARCOS, CA 92069-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0013 | ALTMAN SPECIALTY PLANTS, INC.<br>517 CASSOU ROAD<br>SAN MARCOS, CA 92069-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0014 | ALTMAN SPECIALTY PLANTS, INC.<br>718 CASSOU ROAD<br>SAN MARCOS, CA 92079-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0015 | ALTMAN SPECIALTY PLANTS, INC.<br>3744 BLUEBIRD CANYON RD.<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0016 | ALTMAN SPECIALTY PLANTS, INC.<br>2008 EDGEHILL ROAD<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPDRATION | 330494942 | |
| 0017 | ALTMAN SPECIALTY PLANTS, INC.<br>2056 EDGEHILL ROAD<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0018 | ALTMAN SPECIALTY PLANTS, INC.<br>1021 WEST MISSION AVENUE "C"<br>ESCONDIDO, CA 92029-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |

CONTINUED NEXT PAGE

Issue Date: 05/12/06

WC990810 (Ed. 1-97)

PAGE 3

## ENDORSEMENT

This endorsement, effective 12:01 AM 01/01/2006

Forms a part of policy no.: WC  124-14-96

Issued to: ALTMAN SPECIALTY PLANTS, INC.

By: AMERICAN HOME ASSURANCE COMPANY

| LOC NO. | NAME AND ADDRESS SCHEDULE | FEIN | UI # |
|---------|---------------------------|------|------|
| 0019 | ALTMAN SPECIALTY PLANTS, INC.<br>SKYLINE DR. AND RUDD RD.<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0020 | ALTMAN SPECIALTY PLANTS, INC.<br>PARCEL 5 OF MAP 10950<br>PERRIS, CA 92570-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0021 | ALTMAN SPECIALTY PLANTS, INC.<br>PARCEL 7 OF MAP 16956<br>PERRIS, CA 92570-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0022 | ALTMAN SPECIALTY PLANTS, INC.<br>20140 SPENCE ROAD<br>SALINAS, CA 93908-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0023 | ALTMAN SPECIALTY PLANTS, INC.<br>20260 SPENCE ROAD<br>SALINAS, CA 93908-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0024 | ALTMAN SPECIALTY PLANTS, INC.<br>20200 SPENCE ROAD<br>SALINAS, CA 93908-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0025 | ALTMAN SPECIALTY PLANTS, INC.<br>20400 SPENCE ROAD<br>SALINAS, CA 93908-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0026 | ALTMAN SPECIALTY PLANTS, INC.<br>20500 SPENCE ROAD<br>SALINAS, CA 93908-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0027 | ALTMAN SPECIALTY PLANTS, INC.<br>20510 SPENCE ROAD<br>SALINAS, CA 93908-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |

CONTINUED NEXT PAGE

Issue Date: 05/12/06

WC990610 (Ed. 1-97)

COMP 0136

PAGE 4

## ENDORSEMENT

This endorsement, effective 12:01 AM 01/01/2006

Forms a part of policy no.: WC    124-14-96

Issued to: ALTMAN SPECIALTY PLANTS, INC.

By: AMERICAN HOME ASSURANCE COMPANY

| LOC NO. | NAME AND ADDRESS SCHEDULE | FEIN | UI # |
|---------|---------------------------|------|------|
| 0028 | ALTMAN SPECIALTY PLANTS, INC.<br>2380 ALISAL ROAD<br>SALINAS, CA 93901-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0029 | ALTMAN SPECIALTY PLANTS, INC.<br>23940 POTTER ROAD<br>SALINAS, CA 93908-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0030 | ALTMAN SPECIALTY PLANTS, INC.<br>22750 FUJI LANE<br>SALINAS, CA 98908-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |
| 0031 | ALTMAN SPECIALTY PLANTS, INC.<br>2038 EDGEHILL ROAD<br>VISTA, CA 92084-0000<br>BUSINESS TYPE: CORPORATION | 330494942 | |

Issue Date: 05/12/06

WC990610 (Ed. 1-97)

Authorized Representative

## LARGE RISK RATING PLAN ENDORSEMENT

### PLAN TYPE ONE YEAR

This endorsement changes the policy to which it is attached effective on th inception date of the policy unless a different date is indicated below.

(The following "attaching clause" needs to be completed only when this endorsement is  sued subsequent to the preparation of the policy.)

This Endorsement, effective 12:01 AM **01/01/2006** forms a part of Policy  Jumber WC 1241496

Issued to **ALTMAN SPECIALTY PLANTS INC**

By American Home Assurance Company

### PART I. GENERAL TERMS and C  IDITIONS

This endorsement determines the *Final Premium* for the Insurance pro  led during the Rating Period by this policy, any other policy described in this endorsement in Section 1 of PART II  nd the renewals and replacements of each (the "policies"). The Rating Period begins and ends at 12:01 AM on the  pective dates shown in Section 1 of PART II. If the Plan Type of this endorsement states Construction Project, this en  rsement applies only to, and for the duration of, the construction project described in Section 1 of PART II.

The rates and the basis types described in PART II will remain fixed for  duration of the Rating Period, except (if applicable) Section 7 "Claims Service Charges on Fee Basis", Section 8 "  xes, Assessments and Surcharges", and any applicable items set forth in Section 11 "Exceptions". These exceptions v  be subject to change at each anniversary of the beginning of the Rating Period.

### Section 1. Premium Calculation

The *Final Premium* for the policies will be the sum of the total *Subject Premiun* and the total *Non-Subject Premium*. The way that the total *Subject Premium* will be determined is described below and is shown in Section 9, Item A of PART II. The way that the total *Non-Subject Premium* will be determined is described below and is shown in Section 9, Item B of PART II.

A. **Total *Subject Premium*:** The total *Subject Premium* for the policies will be determined separately by state and kind of insurance. For each state and kind of insurance, the *Subject Premium* shall be the sum of *Subject Losses* and the Charges for the Insurance Charge, Expenses and Profit divided by the Tax/Assessment Divisor as determined below.

1. *Subject Losses:* The first part of the *Subject Premium* will be the sum of all *Subject Losses* under any applicable terms of the policies described in Section 1 of PART II and as identified in Section 5, Item A of PART II.

2. *Charges for Insurance Charge, Expenses and Profit:* The second part of the *Subject Premium* will be the component parts of the *Subject Premium* other than *Subject Losses* that are identified as line items in Section 9, Item A of PART II.

   The entire estimated amount of each such charge can be found in Section 9, Item A of PART II subject to any applicable Minimum Premium shown for it.

   We will apportion the entire amount of each such charge to each kind of insurance and state covered under the policies in proportion to the respective *Standard Premium* of each, except that:

   a. Charges for claims service expenses will be allocated in proportion to respective *Subject Losses*, and

   b. Charges for administrative expenses and profit for the kinds of insurance in the states described in Section 2 of PART II will be the difference between:

      i. the *Final Premium* for such kinds of insurance and states determined as provided for in the policy other than by this Endorsement, and

      ii. the sum of *Subject Losses*, all other charges for the Insurance Charge, Expenses and Profit included in this item 2, taxes and assessments determined through the application of the Tax/Assessment Divisor, and *Non-Subject Premiums* for such states.

3. *Tax/Assessment Divisor:* One (1.000) less the Tax/Assessment Rate as shown in Section 9 Item A of PART II. The rate is calculated as indicated in Section 8 of PART II.

B. **Total *Non-Subject Premium*:** The part of the *Final Premium* for the kinds or layers of insurance described in Section 9, Item B of PART II will be calculated as shown therein. If no *Basis* of premium determination for *Non-Subject Premium* is shown in Section 9, Item B of PART II, the *Non-Subject Premium* will be determined as set forth in the policy under which such insurance is provided.

COMP 0138

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State bar number, and address): |  |
|---|---|

NICHOLAS P. ROXBOROUGH, ESQ. (SBN 113540
ERIN M. LaBRACHE, ESQ. (SBN 195655)
ROXBOROUGH, POMERANCE & NYE LLP
5820 Canoga Avenue, Suite 250
Woodland Hills, CA 91367
TELEPHONE NO: (818) 992-9999  FAX NO: (818) 992-9991
ATTORNEY FOR (Name): Plaintiff ALTMAN SPECIALTY PLANTS, INC
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: same as above
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: CENTRAL JUSTICE CENTER

CASE NAME: Altman Specialty Plants, Inc. v. American
Home Assurance Company

**FOR COURT USE ONLY**

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

FEB 14 2008

ALAN SLATER, Clerk of the Court

BY: D. DUNNING , DEPUTY

30-2008

CASE NUMBER: 00102696

JUDGE:
JUDGE KIRK H. NAKAMURA
DEPT. C56

| CIVIL CASE COVER SHEET | | Complex Case Designation | |
|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder   Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | |

Items 1-6 below must be completed (see instructions on page 2).

**1. Check one box below for the case type that best describes this case:**

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[X] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [X] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [X] Substantial amount of documentary evidence
d. [X] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [X] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action (specify):
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. (You may use form CM-015.)
Date: February 13, 2008

ERIN M. LaBRACHE, ESQ.
(TYPE OR PRINT NAME)

*Erin LaBrache*
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of

COMP 0139

# SUPERIOR COURT OF CALIFORNIA
## ORANGE COUNTY – CENTRAL JUSTICE CENTER
### CIVIL DEPARTMENT CALENDAR SCHEDULING CHART
Ex Parte applications must comply with California Rules of Court, rules 3.1200 – 3.1207
Court Local Rules are located at www.occourts.org

| Dept. | Judicial Officer | Motion Days and Time | Ex Parte Days and Time | Notice to Courtroom the day before the hearing but no later than: | Application and Proposed Order presented to the court the day before the hearing but no later than: | Rulings posted on Internet? | Other Call for available dates. |
|---|---|---|---|---|---|---|---|
| C56 | NAKAMURA 714-834-4752 | Thursday 9:00 a.m. Effective 02/01/08: Motions will be heard on Thur. at 2:00 p.m. | M, T, W, Th 1:30 p.m. | 24 hours, the day before the hearing | M, T, W, Th, 10:00 a.m. day of ex parte | Yes - by 4:00 p.m. the day before | Counsel must reserve a motion date with the courtroom, prior to setting the motion. |
| C32 | PERK 714-834-2351 | Friday 11:00 a.m. | M, T, W, Th 9:00 a.m. | 4:00 p.m. | 10:00 a.m. the day of hearing | Yes - by 3:00 p.m. the day before | Teleconference appearances are voluntary and do not require consent by court or other parties. However, the court reserves to right to reject any request. Teleconference appearances are conducted in conformity with the guidelines, which are available by calling CourtCall, LLC at (310)914-7884 or (888) 88-COURT   If there is no appearance for argument, the court will order the tentative ruling to become effective and final the date of the hearing |
| C27 | POLOS 714-834-2287 | Thursday 1:30 p.m. | Daily 9:00 a.m. | Not required | Noon | Yes | Counsel may submit on law and motion tentative without appearance if all parties agree to ruling. |
| W11 | SCHULTE 714-896-7161 | Friday 9:30 a.m. | None | None | None | Yes - by noon day before | Law and motion matters must be reserved with the court clerk. |
| C13 | SIEGEL 714-834-4592 | Monday 10:30 a.m. | Daily 8:30 a.m. | Notice to the Dept prior to noticing opposing parties pursuant to CRC Rule 3.1200-3.1207 | 11:00 a.m. | Yes, by 1:30 p.m. the day before | |
| C25 | WILKINSON 714-834-3720 | Wednesday 1:30 p.m. | M, T, Th 4:00 p.m. Wed. 3:30 p.m. Friday 11:30 a.m. | 4:00 p.m. | 9:30 a.m. | No | The moving party shall submit on ex parte's moving papers, unless the Court invites oral argument. |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

### NOTICE TO PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S):

**Rule 3.221(c) of the California Rules of Court requires you to serve a copy of the ADR information package along with the complaint and/or cross-complaint.**

California Rules of Court - Rule 3.221
Information about ADR

(a)    Each court shall make available to the plaintiff, at the time of filing of the complaint, an ADR information package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes.

(2) Information about the ADR programs available in that court, including citations to any applicable local court rules and directions for contacting any court staff responsible for providing parties with assistance regarding ADR.

(3) In counties that are participating in the Dispute Resolution Programs Act (DRPA), information about the availability of local dispute resolution programs funded under the DRPA. This information may take the form of a list of the applicable programs or directions for contacting the county's DRPA coordinator.

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b)    A court may make the ADR information package available on its Web site as long as paper copies are also made available in the clerk's office.

(c)    The plaintiff must serve a copy of the ADR information package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR information package on any new parties to the action along with the cross-complaint.

Form No. L1200 (Rev. January 1, 2007)

COMP 0141

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
## Did you know that most civil lawsuits settle without a trial?

### Introduction

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody? These alternatives to a lawsuit are known as alternative dispute resolution (ADR). The most common forms of ADR are mediation, arbitration, and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court. ADR is not new. ADR is available in many communities, through dispute resolution programs and private neutrals.

### Advantages of ADR

ADR can have a number of advantages over a lawsuit. ADR can be speedier. A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years. ADR can save money. Court costs, attorney's fees, and expert fees can be saved. ADR can permit more participation. The parties may have more chances to tell their side of the story than in court and may have more control over the outcome. ADR can be flexible. The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

ADR can be cooperative. This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other. ADR can reduce stress. There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

ADR can be more satisfying. For all the above reasons, many people have reported a high degree of satisfaction with ADR. Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' positions harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

### Disadvantages of ADR

ADR may not be suitable for every dispute. If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court. There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute. The neutral may charge a fee for his or her services. If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

### Three Common Types of ADR

This pamphlet describes the forms of ADR most often found in the California state courts and discusses when each may be right for a dispute.

### MEDIATION

In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the mediator does not decide how the dispute is to be resolved. The parties do.

Mediation is a cooperative process, in which the parties work together toward a resolution that tries to meet everyone's interests, instead of working against each other, where at least one party loses. Mediation normally leads to better relations between the parties and to resolutions that hold up. For example, mediation has been very successful in family disputes, particularly with child custody and visitation.

Mediation is particularly effective when the parties have a continuing relationship, like neighbors or business people. Mediation also is very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to let out their feelings and find out how each other sees things. Mediation may not be a good idea when one party is unwilling to discuss a resolution or when one party has been a victim of the other or cannot have enough bargaining power in the mediation. However, mediation can be successful for victims seeking restitution from offenders. A mediator can meet with the parties separately when there has been violence between them.

Form No. L1200 (Rev. January 1, 2007)                                    Page 2 of 4

**ARBITRATION**

In arbitration, a neutral (the arbitrator) reviews evidence, hears arguments, and makes a decision (award) to resolve the dispute. This is very different from mediation, where the mediator helps the parties reach their own resolution. Arbitration normally is more informal and much speedier and less expensive than a lawsuit. Because of the large number of cases awaiting trial in many courts, a dispute normally can be heard much more quickly by an arbitrator than by a judge.

Often a case that may take a week to try in court can be heard by an arbitrator in a matter of hours, because evidence can be submitted by documents (like medical reports and bills and business records), rather than by testimony.

There are two kinds of arbitration in California. Private arbitration, by agreement of the parties involved in the dispute, takes place outside of the courts and, normally, is binding. In most cases "binding" means that the arbitrator's decision (award) is final and there will not be a trial or an appeal of that decision. By contrast, a decision by an arbitrator in a case referred by the courts, known as "judicial arbitration," is not binding, unless the parties agree to be bound. A party who does not like the award may file a request for trial with the court within a specified time. However, if that party does not do better in the trial than in arbitration, he or she may have to pay a penalty.

Arbitration is best for cases where the parties want a decision without the expense of a trial. Arbitration may be better than mediation when the parties have no relationship except for the dispute.

Arbitration may not be a good idea when the parties want to resolve their dispute by themselves, or with the aid of a neutral.

**CASE EVALUATION**

In case evaluation, a neutral (the evaluator) gives an opinion on the strengths and weaknesses of each party's evidence and arguments, and makes an evaluation of the case. Each party gets a chance to present the case and hear the other side. This may lead to a settlement, or at least help the parties prepare to resolve the dispute later on.

Case evaluation, like mediation, can come early in the dispute and save time and money.

Case evaluation is most effective when someone has an unrealistic view of the dispute or when the only real issue is what the case is worth, or when there are technical or scientific questions to be worked out.

Case evaluation may not be a good idea when it is too soon to tell what the case is worth or when the dispute is about something besides money, like a neighbor playing loud music late at night.

**Additional Information**

There are several other types of ADR beside mediation, arbitration, and case evaluation. Some of these are conciliation, settlement conferences, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR types. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

The selection of a neutral is an important decision. There is no legal requirement that the neutral be licensed or hold any particular certificate. However, some programs have established qualification requirements for neutrals. You may wish to inquire about the qualifications of any neutral you are considering. Agreements reached through ADR normally are put in writing by the neutral and, if the parties wish, may become binding contracts that can be enforced by a judge. You may wish to seek the advice of an attorney as to your legal rights and other matters relating to the dispute.

**Whom Do You Call?**

To locate a dispute resolution program or neutral in your community:
Contact the California Department of Consumer Affairs, Consumer Information Center, toll free, 1-800-952-5210, or contact the local bar association, or look in the Yellow Pages under "Arbitrators" or "Mediators."

For more information on local Arbitration Programs, please phone 714/834-3774 (for court ordered arbitration only) or refer to Superior Court of California, County of Orange, Local Rules 360 and 446.

Free mediation services are provided under the Orange County Dispute Resolution Program Act (DRPA). For information regarding DRPA, phone: Institute for Conflict Management (714) 288-5600; Community Service Programs, Inc. (949) 851-3168; Orange County Human Relations (714) 834-7198; or Fair Housing Council of Orange County (714) 569-0827.

**There may be a charge for services provided by private arbitrators and mediators.**
*Presented by the Judicial Council of California and the State Bar of California - March 1998*

COMP 0143

| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE** | *FOR COURT USE ONLY* |
|---|---|
| JUSTICE CENTER:<br>☐ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045<br>☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512<br>☐ Harbor-Laguna Hills Facility - 23141 Moulton Pkwy., Laguna Hills, CA 92653-1251<br>☐ Harbor-Newport Beach Facility - 4601 Jamboree Rd., Newport Beach, CA 92660-2595<br>☐ North - 1275 N. Berkeley Ave., P. O. Box 5000, Fullerton, CA 92838-0500<br>☐ West - 8141 13th Street, Westminster, CA 92683-4593 | |
| PLAINTIFF:<br><br>DEFENDANT: | |
| **ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION** | CASE NUMBER: |

Plaintiff(s),_____

_____

and defendant(s),_____

_____

agree to the following dispute resolution process:

☐ Mediation

☐ Arbitration (must specify code)
      ☐ Under Section 1141.11 of the Code of Civil Procedure
      ☐ Under Section 1280 of the Code of Civil Procedure

☐ Neutral Case Evaluation

☐ Other (specify):_____

☐ Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

_____

_____

_____

_____

_____

We understand that there may be a charge for services provided by private arbitrators and mediators.

Date:_____

           _____      _____
           (SIGNATURE OF PLAINTIFF OR ATTORNEY)     (SIGNATURE OF PLAINTIFF OR ATTORNEY)

Date:_____

           _____      _____
           (SIGNATURE OF DEFENDANT OR ATTORNEY)   (SIGNATURE OF DEFENDANT OR ATTORNEY)

**ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION**

Approved for Optional Use
L1270 (Rev. January 1, 2007)

California Rules of Court, rule 3.221

COMP 0144