Michael S. Davis
Anthony I. Giacobbe
Greg M. Bernhard
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
(212) 223-0400

*Attorneys for Petitioners*
*American Home Assurance Company and*
*National Union Fire Insurance Company of Pittsburgh, Pa.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN HOME ASSURANCE COMPANY and
NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA.,

                                        Petitioners,

                      - and -

ALTMAN SPECIALTY PLANTS, INC.,

                                        Respondent.

---

Case No.: 08 civ 7504 (CM)

## MEMORANDUM OF LAW IN SUPPORT OF PETITION
## OF THE AIG COMPANIES TO COMPEL ARBITRATION

### PRELIMINARY STATEMENT

American Home Assurance Company ("American Home") and National Union

Fire Insurance Company of Pittsburgh, Pa. ("National Union") (collectively, the "AIG

Companies"), on behalf of themselves and each of the related insurers that provided coverage to

respondent Altman Specialty Plants, Inc. ("Respondent"), submit this Memorandum of Law in

support of their petition to compel arbitration (the "Petition").  Respondent, an employer who obtained workers compensation coverage from the AIG Companies, filed a Complaint with the Superior Court of California, County of Orange, (the "Complaint," attached as Exhibit B to the Petition) in which it alleged that American Home did not properly set reserves and mishandled certain claims.  However, each claim in Respondent's Complaint is subject to the clear and unambiguous requirement in the contract between the parties that any dispute "arising out of" the agreement between the parties – which the disputes underlying Respondent's Complaint clearly are – must be resolved through arbitration.  This Motion seeks to remedy Respondent's improper attempt to circumvent its contractual obligations and resolve its dispute in court, and requests that the Court refer this matter to arbitration, the proper forum as required by the parties' agreement and applicable law.

## BACKGROUND

The AIG Companies and Respondent have a business relationship that goes back a number of years.  In the course of this business relationship, the AIG Companies provided Respondent with, among other things, a loss sensitive, high deductible workers' compensation program.  The AIG Companies initially issued workers compensation policy # 124-14-96 to Respondent for the January 1, 2003 to January 1, 2004 policy period.

The parties also entered into a Payment Agreement between National Union and Respondent effective as of January 1, 2003 (the "2003 Payment Agreement"), a 2004 addendum to the Payment Agreement (the "2004 Addendum"), and certain addenda and schedules to the

Payment Agreement (together with the policy, these documents establish the "Insurance Program" and these documents are referred to as the "Insurance Program Agreements"). By their terms, the Insurance Program Agreements govern Respondent's payment obligations and collateral requirements under the Insurance Program. Fully executed copies of the 2003 Payment Agreement and the 2004 Addendum are attached as Exhibit A to the accompanying Petition. *See* Exhibit A at A 0001 to A 0010 and A 0025 to A 0028.

The 2003 Payment Agreement contains a broad arbitration clause (the "Arbitration Clause") by which the parties agreed that all unresolved disputes, including the dispute underlying Respondent's Complaint, "must . . . be submitted to arbitration." Exhibit A at A 0008. Found under a bolded and capitalized heading which reads "**HOW WILL DISAGREEMENTS BE RESOLVED?,**" the Arbitration Clause is extremely expansive. It encompasses the instant dispute because it governs disputes related specifically to payment obligations, as well as "[a]ny other unresolved disputes arising out of this Agreement . . ." Id. Even though Respondent filed its Complaint in the Superior Court of California, County of Orange, the AIG Companies bring this motion to this Court pursuant to the agreed upon terms of the 2004 Addendum, which provides that "any action or proceeding concerning arbitrability, including motions to compel or to stay arbitration, may be brought only in a court . . . of competent jurisdiction in the City, County, and State of New York." Exhibit A at A 0027.

## FACTS

### A.    The Parties

Respondent initially obtained workers' compensation coverage from the AIG Companies for the January 1, 2003 to January 1, 2004 policy period.  The AIG Companies subsequently issued workers' compensation policies to Respondent for the three subsequent policy periods of January 1, 2004 to January 1, 2005, January 1, 2005 to January 1, 2006, and January 1, 2006 to January 1, 2007.  In the Complaint, Respondent claims that American Home did not properly set reserves and that it mishandled claims during the aggregate four year policy period, causing the Respondents to provide more collateral than necessary and pay higher policy premiums than it otherwise would have been required to pay.  See, Exhibit B at COMP 0007, ¶ 23.

### B.    The Insurance Program

The Insurance Program is governed by the Insurance Program Agreements, including the 2003 Payment Agreement.  The 2003 Payment Agreement expressly provides that it governs the policies and schedules, including any renewals thereof, as follows:

> This Agreement begins on the Effective Date shown in the first page (the title page) of this Agreement.  Unless otherwise agreed in writing, this Agreement will also apply to any *Policies* and *Schedules* that we may issue as renewals, revisions, replacements or additions to the attached *Schedule* and the *Policies* listed there.

Exhibit A at A 0003.  The 2003 Payment Agreement governs, among other things, the obligations of Respondent (defined as "You, our Client" on page 1 of the 2003 Payment Agreement) to pay premium and collateral to the AIG Companies.

More specifically, the section of the Payment Agreement titled "WHAT HAVE YOU AND WE AGREED TO" states:

**We have agreed** to the following:

- to provide *You* insurance and services according to the *Policies* and other agreements; and

- to extend credit to You by deferring our demand for full payment of the entire amount of *Your Payment Obligation* if *You* make partial payments according to this Agreement;

To induce us to agree as above,

**You have agreed** to the following:

- **to pay us all Your Payment Obligation and to perform all Your other obligations according to this Agreement and Schedule for all entities covered by the Policies;**

- **to provide us with collateral according to this Agreement and Schedule;**

Exhibit A at A 0003 (emphasis added).  The term "Your Payment Obligation" includes not only the amounts Respondent must pay for the Insurance Program, but also includes amounts due under "any similar primary casualty Insurance Policies and agreements with us incurred before the inception date hereof." *See*, Exhibit A at A 0004.  This expansive definition of the phrase "Your Payment Obligation" set forth in the 2003 Payment Agreement thus further broadens the parties' obligation to arbitrate.

**C.**    **The Agreement to Arbitrate**

As discussed above, the 2003 Payment Agreement contains the Arbitration Clause, which is a broad arbitration clause that expressly gives the arbitrators jurisdiction over "the entire matter in dispute, including any question as to its arbitrability." The Arbitration Clause provides as follows:

**HOW WILL DISAGREEMENTS BE RESOLVED?**

…

**What about disputes other than disputes about payment due?**

**Any other unresolved dispute arising out of this Agreement must be submitted to arbitration.** *You* must notify us in writing as soon as *You* have submitted a dispute to arbitration. We must notify *You* in writing as soon as we have submitted a dispute to arbitration.

**Arbitration Procedures**

**Qualifications of arbitrators:** Unless *You* and we agree otherwise, all arbitrators must be executive officers or former executive officers of property or casualty insurance or reinsurance companies or insurance brokerage companies, or risk management officials in an industry similar to *Yours*, domiciled in the United States of America not under the control of either party to this Agreement.

**How the arbitration must proceed:** The arbitrators shall determine where the arbitration shall take place. The arbitration must be governed by the United States Arbitration Act, Title 9 U.S.C. Section 1, et seq. Judgment upon the award rendered by the arbitrators may be entered by a court having jurisdiction thereof.

*You* and we must both submit our respective cases to the arbitrators within 30 days of the appointment of the third arbitrator. The arbitrators must make their decision within 60 days following the termination of the hearing, unless *You* and we consent to an

extension. The majority decision of any two arbitrators, when file with *You* and us will be final and binding on *You* and on us.

The arbitrators must interpret this Agreement as an honorable engagement and not merely a legal obligation. They are relieved of all judicial formalities. They may abstain from following the strict rules of law. They must make their award to effect the general purpose of this Agreement in a reasonable manner.

The arbitrators must render their decision in writing, based upon a hearing in which evidence may be introduced without following strict rules of evidence, but in which cross-examination and rebuttal must be allowed.

The arbitrators may award compensatory money damages and interest thereupon. They may order *You* to provide collateral to the extent required by this Agreement. **They will have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability.** However, they will not have the power to award exemplary damages or punitive damages, however denominated, whether or not multiplied, whether imposed by law or otherwise.

**Expenses of Arbitration:** *You* and we must each bear the expense of our respective arbitrator and must jointly and equally bear with each other the expense of the third arbitrator and of the arbitration.

This Section will apply whether that dispute arises before or after termination of this Agreement.

Exhibit A at A 0008 to A 0009.

The terms of the Arbitration Clause are augmented by the 2004 Addendum which specifically provides that:

**How arbitrators must be chosen:** You must choose one arbitrator and we must choose another. They will choose the third. If you or we refuse or neglect to appoint an arbitrator within 30 days after written notice from the other party requesting it to do so, or if the two arbitrators fail to agree on a third arbitrator within 30 days of their appointment, either party may make application only to a

court of competent jurisdiction in the City, County, and State of New York.  **Similarly, any action or proceeding concerning arbitrability, including motions to compel or to stay arbitration, may be brought only in a court of competent jurisdiction in the City, County, and State of New York.**

Exhibit A at A 0027 (emphasis added).  The allegations in Respondents' Complaint clearly fall under this broad Arbitration Clause, as discussed more fully below.

## D.     The Complaint

The allegations in the Complaint relate entirely to Respondent's claims that American Home has breached its agreement with Respondent with respect to setting reserves, investigating claims, and failing or refusing to adjust collateral.  In Count I, Respondent seeks damages for breach of Contract. In Count II, Respondent seeks damages for tortious breach of the implied covenant of good faith and fair dealing.  Count III seeks declaratory relief regarding the parties' obligations and rights under the terms of the parties' agreement and Respondent's ability to review and/or audit claims.  Count IV asserts a claim of unfair business practices and seeks to enjoin American Home from limiting Respondent's review and/or audit of claim files. The disputes alleged in the Complaint are all subject to the broad Arbitration Clause.

## ARGUMENT

### I.

### BY AGREEMENT THIS PROCEEDING TO COMPEL ARBITRATION MUST BE HEARD IN NEW YORK

Under the Insurance Program Agreements, the parties explicitly agreed that:

> [A]**ny** action or proceeding **concerning arbitrability,** including motions to compel or to stay arbitration, may be brought **only** in a court of competent jurisdiction **in the City, County, and State of New York.**

Exhibit A at A 0027 (emphasis added).  Respondent nonetheless filed its action in California. Respondent's unauthorized filing of the Complaint in California, however, cannot usurp this Court's jurisdiction to decide "motions to compel or to stay arbitration" as expressly set forth in the Arbitration Clause.  The AIG Companies time to respond to the Complaint expires on or about August 28, 2008.  Thus, this Court should enforce the Arbitration Clause as written and agreed upon by the parties and decide this motion to compel arbitration before any substantive proceedings take place in the California action concerning the disputes alleged in the Complaint.  Accordingly, the AIG Companies respectfully request that this Court decide the motion to compel arbitration on an expedited basis.

## II.

## THE FEDERAL ARBITRATION ACT REQUIRES ARBITRATION

**A.**    **The Arbitration Clause Is a Broad Clause and Must Be Enforced**

The 2003 Payment Agreement provides for arbitration of all payment disputes and "any other unresolved dispute arising out of this Agreement," and further provides that "the arbitrators shall have exclusive jurisdiction over the entire matter in dispute, including the issue of arbitrability." See Exhibit A at A 0009. This is a broad arbitration agreement, and the Federal Arbitration Act ("FAA") and controlling case law require that this Court enforce this arbitration agreement.

Section 2 of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, **shall be valid, irrevocable, and enforceable**, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added.)  The Supreme Court has unambiguously held that this provision of the FAA is to be followed.  Shearson/American Express v. McMahon, 482 U.S. 220, 226-27, 1907 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 220, 105 S.Ct. 1238, 1241 (1985).

Fifteen times since its 1983 decision in <u>Moses H. Cone,</u> the Supreme Court has addressed the duty to arbitrate with a party to an arbitration agreement.[1]  Each time, the Court required arbitration to proceed, even when confronted with a federal statute providing "exclusive" federal court jurisdiction.[2]

Similarly, the Second Circuit has consistently enforced arbitration agreements:

> The FAA, codified at 9 U.S.C. §§ 1-14, provides that written provisions to arbitrate controversies in any contract involving interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' Id. § 2.  'There is a strong federal policy favoring arbitration as an alternative means of dispute resolution.'  In accordance with that policy, where, as here, the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability.

---

[1]  <u>Southland Corp. v. Keating</u>, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); <u>Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.</u>, 469 U.S. 1155, 105 S.Ct. 897 (Mem), 83 L.Ed.2d 914 (1985); <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); <u>Shearson/American Exp., Inc. v. McMahon</u>, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); <u>Perry v. Thomas</u>, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426, (1987); <u>Rodriguez de Quijas v. Shearson/American Exp., Inc.</u>, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); <u>Allied-Bruce Terminix Companies, Inc. v. Dobson</u>, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); <u>Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER</u>, 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995); <u>Doctor's Associates, Inc. v. Casarotto</u>, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); <u>Green Tree Financial Corp.-Alabama v. Randolph</u>, 529 U.S. 1052, 120 S.Ct. 1552 (Mem), 146 L.Ed.2d 458 (2000); <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001); <u>Citizens Bank v. Alafabco, Inc.</u>, 539 U.S. 52, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003); <u>Green Tree Financial Corp. v. Bazzle</u>, 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003). <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 2006 U.S. Lexis 1814, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (U.S. 2006). There has been only one case since 1983 where the Supreme Court did not order arbitration.  In <u>E.E.O.C. v. Waffle House, Inc.</u>, 534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002), the Court held that a government agency with enforcement authority would not be required to arbitrate under a contract to which it was not a party.

[2]  <u>Mitsubishi Motors Corp.</u>, 469 U.S. at 628-40 (exclusive jurisdiction of the Sherman Act); <u>Dean Witter</u>, 470 U.S. at 215217 (exclusive jurisdiction of the Securities Exchange Act of 1934); <u>Shearson/American Exp.</u>, 482 U.S. at 227 (exclusive jurisdiction of the Securities Exchange Act and the Racketeer Influenced and Corrupt Organizations Act); <u>Rodriguez de Quijas</u>, 490 U.S. at 482-86 (exclusive jurisdiction of the Securities Exchange Act of 1934).

<u>Ace Capital Re Overseas Ltd. v. Central United Life Ins. Co.</u>, 307 F.3d 24, 29 (2d Cir. 1994) (<u>citing</u>,

<u>Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.</u>, 246 F.3d 219, 226 (2d Cir. 2001)

and <u>Moses H. Cone Memo. Hosp. v. Mercury Const. Corp.</u>, 460 U.S. 1, 24-25 (1983) (any doubts

should be resolved in favor of arbitration)).  <u>See also</u> <u>Garten v. Kurth</u>, 265 F.3d 136, 142 (2d Cir.

2001) ("Under the FAA, courts are required generally to resolve questions of arbitrability in favor of

arbitration."); <u>Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.</u>, 252 F.3d 218, 223

(2d Cir. 2001) ("It is familiar law that the Federal Arbitration Act, 9 U.S.C. § 1 et seq.  (1994)

(Arbitration Act), expresses 'a liberal federal policy favoring arbitration agreements' and that 'any

doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" <u>citing</u>

<u>Moses H. Cone Mem'l Hosp.</u>, <u>supra</u>, at 24-25.)

The Second Circuit in <u>Louis Dreyfus Negoce S.A.</u> established that when

determining whether a particular dispute falls within the scope of an arbitration agreement, this

Court must first classify the arbitration clause as broad or narrow. <u>Louis Dreyfus Negoce S.A.</u>,

252 F.3d at 224; <u>Ace Capital Re Overseas Ltd.</u>, 307 F.3d at 30-34.  Specifically, this Court must

determine "whether, on the one hand, the language of the clause, taken as a whole, evidences the

parties' intent to have arbitration serve as the primary recourse for disputes connected to the

agreement containing the clause, or if, on the other hand, arbitration was designed to play a more

limited role in any future dispute." <u>Louis Dreyfus Negoce S.A.</u>, 252 F.3d at 225.

The Arbitration Clause at issue here must be classified as broad.  In fact, three

other courts in this District have granted similar motions to compel arbitration involving similar

insurance programs that contained broad arbitration agreements where the Respondent had filed

actions in other states concerning arbitrable disputes. See Raytheon v. Nat'l Union Fire Ins. Co. of Pittsburgh PA, 306 F. Supp. 2d 346 (S.D.N.Y. 2004); American Home Assurance Company v. Circle L Roofing, Inc., 2008 U.S. Dist. Lexis 18313 (S.D.N.Y. February 15, 2008); and Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Champps Entm't, Inc., 2004 U.S. Dist. Lexis 25052 (S.D.N.Y. Dec. 13, 2004). The AIG Companies submit that these decisions are persuasive and that the reasoning of these decisions compels arbitration of the disputes asserted in the Complaint.

The AIG Companies dispute the claims asserted in the Complaint, but those claims are plainly subject to the broad Arbitration Clause and the strong federal policy favoring arbitration. As set forth above, all of the Respondent's allegations in the Complaint relate entirely to Respondent's claims with respect to setting of reserves and claims handling. Thus, the claims asserted in the Complaint are all subject to the broad Arbitration Clause contained within the 2003 Payment Agreement and modified by the 2004 Addendum. Moreover, to the extent there is any doubt concerning arbitrability, the United States Supreme Court has directed that any doubt be resolved in favor of arbitration. Moses H. Cone Memo. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).

### III.

### A HEARING ON SHORT NOTICE IS WARRANTED

As discussed above, the disputes asserted in the Complaint indisputably fall within the broad Arbitration Clause. Nevertheless, by filing its Complaint, Respondent has refused to consent to arbitration. Even if Respondent disputes arbitrability of the disputes

asserted in the Complaint, it was still required by the Arbitration Clause to commence arbitration, as the Arbitration Clause expressly states that: "They [the arbitrators] shall have jurisdiction over the entire matter in dispute, including any question as to its arbitrability." See Exhibit A at A 0009.

Section 4 of the FAA states, in part, that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. **Five days**' notice in writing of such application shall be served upon the party in default. (Emphasis added).

9 U.S.C. § 4.    In enacting this provision, the United States Congress expressed its intent that enforcement of the strong federal policy of arbitration be expedient and supersede court proceedings filed in derogation of arbitration clauses, as is the case here. Given that the AIG Companies must respond to the Complaint filed in California by on or about August 28, 2008, this Court should hear this motion to compel arbitration before any proceedings take place in California.

Accordingly, the AIG Companies seek a hearing on five days' notice pursuant to 9 U.S.C. § 4 determining that the disputes asserted in the Complaint be submitted to arbitration.

## **CONCLUSION**

The AIG Companies respectfully request that this Court schedule a hearing on five days' notice and compel Respondent to arbitrate the disputes asserted in the Complaint.

Dated:    New York, New York
          August 25, 2008


                                        ZEICHNER ELLMAN & KRAUSE LLP

                                        By
                                           _____
                                           Michael S. Davis
                                           Anthony I. Giacobbe
                                           Greg M. Bernhard
                                            Attorneys for Petitioners
                                           575 Lexington Avenue
                                           New York, New York 10022
                                           (212) 223-0400


530564.v3/10670-029/GB